IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE SOLUTIONS, INC., <br>  a Florida Corporation, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS J. REILLY <br><br> And <br><br> WILDLIFE SOLUTIONS, INC., <br>   a Massachusetts Corporation, <br><br> Defendants. | Civil Action No. 1:05-cv-10180-FDS |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THOMAS J. FRAIN
<u>TO COMPLY WITH SUBPOENA DUCES TECUM</u>**

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

Of Counsel

Michael Leetzow, Esq. (admitted *pro hac vice*)

Counsel for Wildlife Solutions, Inc., of Florida

# **TABLE OF CONTENTS**

I. Background ........................................................................................................................ 1

    A. The Parties ................................................................................................................ 1

    B. Wildlife Florida's Awareness of Defendants' Unauthorized Use of Its Mark and Attempts to Resolve the Dispute Prior to Filing Suit .......................................... 2

    C. Defendants' Alleged Reliance on Advice of Counsel and Their Dispute With Mr. Frain ........................................................................................................................ 3

    D. Wildlife Florida's Attempt to Obtain Documents from Defendants and Subsequent Subpoena Duces Tecum to Mr. Frain ...................................................................... 4

    E. Mr. Frain's Refusal to Produce Documents and Defendants' Equivocation on a Statement of Waiver ................................................................................................ 6

II. Argument .......................................................................................................................... 8

    A. The Materials Sought Are Within the Scope of Discovery Under the Federal Rules. ........ 8

    B. Defendants Have Waived Any Claim of Attorney-Client Privilege or Work Product Protection For the Materials in Question ................................................................ 8

        1. The Privilege is Waived Because Defendants Have Produced Several Otherwise Privileged Documents Relating to Their Relationship With Mr. Frain. ................... 9

        2. The Privilege is Waived Because Defendants Claim Reliance on Advice of Counsel ................................................................................................................. 10

        3. Mr. Frain Cannot Assert a Privilege that Has Been Waived By a Client. ............. 11

III. Conclusion ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

Dorr-Oliver Inc. v. Fluid-Quip, Inc.,
  834 F. Supp. 1008 (N.D. Ill. 1993) .................................................................................. 11

Glenmede Trust Co. v. Thomson,
  56 F.3d 476 (3rd Cir. 1995) ............................................................................................ 10

Hansen v. Allen Memorial Hosp.,
  141 F.R.D. 115 (D.C. Iowa 1992) .................................................................................... 8

In re Grand Jury Subpoena (Zerendow),
  925 F. Supp. 849 (D. Mass. 1995) ............................................................................ 10, 11

In re Sealed Case,
  877 F.2d 976 (D.C. Cir. 1989) ........................................................................................ 10

Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,
  895 F. Supp. 88 (E.D. Pa. 1995) ...................................................................................... 9

Micron Separations, Inc. v. Pall Corp.,
  159 F.R.D. 361 (D. Mass. 1995) .................................................................................... 10

State of Maine v. U.S. Dept. of Interior,
  298 F.3d 60 (1st Cir. 2002) ........................................................................................ 8, 11

Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,
  60 F.3d 867 (1st Cir. 1995) .............................................................................................. 9

Unger v. Cohen,
  125 F.R.D. 67 (S.D.N.Y. 1989) ........................................................................................ 8

United States v. Jacobs,
  117 F.3d 82 (2d Cir. 1997) ............................................................................................. 11

Weil v. Investment/Indicators, Research and Management, Inc.,
  647 F.2d 18 (9th Cir. 1981) .......................................................................................... 8, 9

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 8, 11

Fed. R. Civ. P. 45 ....................................................................................................................... 8

Fed. R. Evid. 501 ....................................................................................................................... 8

**Treatises**

Wright & Miller, Federal Practice and Procedure: Civil 2d ........................................................ 8

971153.3

Plaintiff Wildlife Solutions, Inc., a Florida Corporation ("Wildlife Florida") moves to compel Thomas J. Frain, Esq. to comply with a subpoena duces tecum served on November 18, 2005. Mr. Frain, former counsel to Thomas J. Reilly ("Reilly") and Wildlife Solutions, Inc., a Massachusetts Corporation ("Wildlife Massachusetts") (collectively "Defendants"), has objected to the production of the subpoenaed documents on the basis of attorney-client privilege and work product protection. Defendants have waived any privilege or work product protection, and thus the Court should compel Mr. Frain to produce the subpoenaed documents.

I.      **BACKGROUND**

   A.      **The Parties**

This is a trademark infringement action. Plaintiff, Wildlife Florida, has been using the mark WILDLIFE SOLUTIONS since 1997. Wildlife Florida provides various services to resolve conflicts with wildlife. Wildlife Florida currently provides these services in Florida, Tennessee, South Carolina, and Kentucky, and is continuing to expand. Wildlife Florida owns two federally registered trademarks for WILDLIFE SOLUTIONS as well as the domain names wildlifesolutions.com, wildlifesolutions.net, and wildlifesolutions.org. Wildlife Florida invests hundreds of thousands of dollars each year in promoting its mark and developing goodwill associated with the mark.

In April 2003, Defendant Reilly incorporated Wildlife Solutions, Inc. of Massachusetts. Prior to April 2003, Reilly had been doing business as "PAC of Hudson" or "Problem Animal Control of Hudson." Wildlife Massachusetts has admitted that it offers the same services as Wildlife Florida, including the removal, relocation, and prevention of nuisance animals. Ex. 1 (Def.'s Resp. to Pl.'s First Set of Req. for Admission to Def. Wildlife Massachusetts) at 4.[1] In

---

[1] All exhibits refer to the attached Declaration of Adam J. Kessel.

December 2003, Defendants registered the domain name wildlifesolutions.biz, which they began to use for marketing purposes after this suit was filed. In November 2004, Wildlife Massachusetts filed an application for a federal trademark registration for the mark MASSACHUSETTS WILDLIFE SOLUTIONS.[2]

### B. Wildlife Florida's Awareness of Defendants' Unauthorized Use of Its Mark and Attempts to Resolve the Dispute Prior to Filing Suit

In August 2004, Wildlife Florida learned of Defendants' use of the mark WILDLIFE SOLUTIONS when a third party inquired about the affiliation of Wildlife Massachusetts with Wildlife Florida. After investigation of Defendants' use of the mark, Wildlife Florida wrote to Defendants in November 2004 and demanded that they cease and desist from their use of the identical mark. Ex. 3. Defendants did not respond to that letter.

Wildlife Florida subsequently called Defendants to follow up on its letter. Defendants indicated that they had spent money changing from PAC of Hudson to Wildlife Solutions, Inc., and requested a license to use the mark. Wildlife Florida denied the license, and wrote another letter, again demanding that Defendants cease and desist use of the infringing mark and assign the domain name wildlifesolutions.biz to it. Ex. 4. Defendants did not respond to that letter either, although shortly thereafter Reilly filed the abovementioned federal trademark registration for the mark MASSACHUSETTS WILDLIFE SOLUTIONS.

Despite several more letters and phone calls, Defendants refused to cease use of Wildlife Florida's mark. In January 2005, Wildlife Florida filed this suit for, *inter alia*, trademark infringement, counterfeiting, cybersquatting, and unfair trade practices under Mass. Gen. Laws Ch. 93A. (D.I. 1). Wildlife Florida seeks injunctive relief and damages.

---

[2] The Trademark Office recently issued a preliminary rejection of Wildlife Massachusetts' application, finding the mark confusingly similar to, and likely to cause confusion with, Plaintiff's prior registrations. Ex. 2 (Trademark Office office action dated December 22, 2005).

### C. Defendants' Alleged Reliance on Advice of Counsel and Their Dispute With Mr. Frain

Defendants have repeatedly blamed their infringing activity, at least in part, on prior counsel, Thomas J. Frain. Mr. Frain incorporated Wildlife Massachusetts for Defendants in April 2003. Ex. 5 (Articles of Organization of Wildlife Massachusetts). For example, in their Amended Answer, Defendants set out eleven affirmative defenses. (D.I. 21 at 24-25.) Defendants' eleventh affirmative defense is that "Defendant REILLY relied upon the advice of counsel in incorporating the defendant WILDLIFE SOLUTIONS, INC." Moreover, in a phone conversation with Wildlife Florida's counsel on November 16, 2004, prior to the filing of this suit, Reilly defended his use of the mark by indicating that he had relied upon the advice of counsel.

In March 2005, Reilly received a letter from Mr. Frain discussing a third party in Massachusetts also operating under the name Wildlife Solutions.[3] (Ex. 7). Reilly responded to Mr. Frain, accusing him of failing to disclose Wildlife Florida's existence. In a letter dated March 27, 2005, Reilly wrote:

> Attorny [*sic*] Fraine [*sic*],
>
> I have received your letter and I am quite confused by the timing of it, it would seem way to councidental [*sic*] that you happen to write on this subject while I am imbroiled [*sic*] in a federal lawsuit for trademark infringement
>
> Regarding the service mark you inquire about held by Dedham police detecive [*sic*] Robert Walsh, which you failed to disclose to me when you organized my company and your advice that I engage in conversation with him.
>
> I have been engaged with him and he is will to "sell" me the mark.

---

[3] Defendants have produced other correspondence from Mr. Frain to Reilly, relating to incorporation issues and apparently unpaid legal bills. See Ex. 6.

> Unfortanatly [*sic*] it is not worth the paper it is written on at this point because of a federal service mark which you also failed to disclose to me when you organised [*sic*] my company.
>
> This issue is not closed at all and you will hear from my Attorny [*sic*] as to your responsibilty [*sic*] in this matter when it is determined.

Exs. 8 (draft letter to Mr. Frain as emailed to Defendants' counsel in this action), 9 (final letter as sent to Mr. Frain).

Defendants also produced a redacted copy of the minutes of Wildlife Massachusetts' annual meeting, dated May 1, 2005. Ex. 10. In those notes, Mr. Frain is accused of "malpractice":

> 10:15 AM Drafting and accepting the following narrative into the company minutes outlining the legal issue's [*sic*] that have plagued this company due to the neglect of duties, and malpractice of Attorney Fraine [*sic*] and the decisions that were made as the issue progressed. …

Ex. 10 at 44. The minutes subsequently recount a "narrative" describing Wildlife Florida's demands to Defendants to cease and desist from infringing its mark, and Defendants' refusal to do so. Finally, on October 5, Defendants' counsel wrote to Wildlife Florida's counsel, indicating that he "intend[ed] to send a 'claim letter' to Attorney Frain at some point soon," relating to the dispute between Defendants and Mr. Frain concerning Defendants' company name. Ex. 11.

    **D.    Wildlife Florida's Attempt to Obtain Documents from Defendants and Subsequent Subpoena Duces Tecum to Mr. Frain**

On August 9, 2005, Wildlife Florida served document requests on Defendants directed to Defendants' alleged advice of counsel defense and the dispute between Defendants and Mr. Frain that Defendants had put at issue in this case. E.g., Ex. 12 (Pl.'s Doc. Req. to Def. Reilly) #11 ("All documents and things comprising or relating to any opinion of counsel on which Reilly intends to rely in this lawsuit") and #12 ("All documents and things relating to any complaint, litigation, mediation, or other claim or process against any attorney with respect to Reilly's

971153.3
- 4 -

decision to change marks from PAC OF HUDSON and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS."). On September 14, after the responses to Wildlife Florida's discovery requests were due, Defendants' counsel indicated that he had never received those discovery requests although they had been properly mailed more than a month earlier. Ex. 13. Wildlife Florida granted Defendants a one week extension to complete the responses. Id. One day before the end of that extension, Defendants requested another twenty day extension. Ex. 14. Wildlife Florida granted Defendants an additional extension of ten days. Ex. 15.

On September 30, Defendants finally responded to Wildlife Florida's discovery requests. Ex. 16. With respect to the request for documents relating to an opinion of counsel (Ex. 12 #11), Defendants stated that "[t]here are no such documents." With respect to the request relating to any dispute with any attorney regarding Defendants' adoption of the infringing marks (Ex. 12 #12), Defendants stated that "[t]here are no such documents **within the defendant's custody or control**." Ex. 16 at 4-5 (emphasis supplied). Wildlife Florida responded to Defendants' document production on November 1, noting that it was clear from Defendants' production that they had not included Mr. Frain's files in their search, but that documents in Mr. Frain's possession are under Defendants' "control," and thus should have been produced. Ex. 17.

Wildlife Massachusetts responded on November 11, admitting that Mr. Frain's files had not been searched, and stating that "Wildlife Solutions, by Thomas Reilly, requested his file from Attorney Frain. As of this date, Attorney Frain has not produced same. I will send a formal request and/or subpoena to get the contents of his file, and copy you on any such correspondence." Ex. 18. On November 16, Defendants wrote again to Wildlife Florida, stating that Reilly had visited Mr. Frain's office to request his file and that he was given three pages of

documents. Ex. 19. Defendants indicated that they were enclosing "the totality" of what Mr. Frain had given to Reilly. Although Defendants stated that they were producing three pages, only two pages were actually produced. Those two pages were Mr. Frain's 3/23/05 letter to Reilly (Ex. 7) and Reilly's response (Ex. 9).

Defendants had put their prior dealings with Mr. Frain at issue in this case on several occasions, including in their pleadings. It seemed implausible, given Mr. Frain's history of representation of Defendants, including his incorporation of Wildlife Solutions, Inc. of Massachusetts, that his entire file consisted of one recent letter to Reilly and Reilly's response. Accordingly, Wildlife Florida served a subpoena duces tecum on Mr. Frain on November 21. (Ex. 20). The subpoena ordered production of several categories of documents relevant to this case by December 5.

E.  **Mr. Frain's Refusal to Produce Documents and Defendants' Equivocation on a Statement of Waiver**

On December 2, Mr. Frain's law partner sent a letter to Wildlife Florida, refusing to produce any documents because "most, if not all, of the documents [Wildlife Florida is] seeking are subject to attorney client privilege and/or attorney work product." Ex. 21. The letter indicated that Mr. Frain had not received any "definitive" statement of waiver from Mr. Reilly and thus he would be "unable to comply with the subpoena request."

On several occasions, Defendants' counsel, both in email and during phone conversations, stated that Defendants had waived any attorney-client privilege so that documents in Mr. Frain's possession could be produced. For example, in an email dated December 5, Defendants' counsel wrote: "I told you that my client would waive privilege there, since he already produced all documents from Frain. **I also do not object to your subpoena**. … Attorney Frain sent me a release for my client to sign. **I will do so and forward it to**

971153.3

- 6 -

**everyone.**" Ex. 22 (emphasis supplied). Two days later, Defendants' counsel indicated that the form of the waiver was still being "hashed out." Ex. 23. Defendants' counsel also stated in several phone conversations during this time period that Defendants had waived any claims of privilege.

Wildlife Florida believed that a formal statement of waiver was unnecessary because Defendants had already waived any privilege by producing correspondence between Reilly and Mr. Frain and by asserting an advice of counsel defense in pleadings, but rather than involve the Court unnecessarily in discovery matters, Wildlife Florida waited for the promised statement of waiver. That statement of waiver never came. Instead, nearly a month after the original subpoena was served on Mr. Frain, Defendants' counsel indicated in a phone conversation with Wildlife Massachusetts' counsel that they would not provide the promised statement of waiver. Defendants would only provide a waiver regarding the "number" of documents in Mr. Frain's possession and nothing more.

Wildlife Florida has thus spent several months attempting to obtain relevant documents as to which there has been an unequivocal waiver of privilege, incurring substantial legal costs as well as delay in assembling the evidence it needs to present its case.[4] Wildlife Florida's only option remaining is to seek relief from this Court.

---

[4] This motion presents just one of several outstanding discovery issues. Defendants have consistently failed to produce documents which are discoverable, within their possession, and responsive to Plaintiff's document requests, to respond fully to Plaintiff's interrogatories, and to follow through on promises relating to their discovery responses. See Ex. 24.

971153.3

- 7 -

## II. ARGUMENT

### A. The Materials Sought Are Within the Scope of Discovery Under the Federal Rules.

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The scope of discovery under Fed. R. Civ. P. 45 "is not limited to matters that are admissible or relevant to the issues formulated in the case but extends to any nonprivileged matter that is relevant to the subject matter involved in the pending action." 7 Wright & Miller, Federal Practice and Procedure: Civil 2d § 2459. It is beyond question that the documents sought in Wildlife Florida's subpoena (Ex. 20) are relevant and within the scope of permissible discovery. Mr. Frain is likely to have documents in his possession that shed light on the circumstances under which Defendants chose to use the infringing mark. Moreover, Defendants have repeatedly put their communications with Mr. Frain at issue in this case.

### B. Defendants Have Waived Any Claim of Attorney-Client Privilege or Work Product Protection For the Materials in Question

Mr. Frain raised only one objection in his letter responding to the subpoena (Ex. 21), namely, that the documents sought were privileged or attorney work product. As the facts of this case make clear, however, any privilege has been waived.

Fed. R. Evid. 501 provides that questions of privilege in cases involving federal claims are governed by federal law. Unger v. Cohen, 125 F.R.D. 67, 68 (S.D.N.Y. 1989); Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981). Where, as here, there are also pendent state law claims, the federal law of privilege still controls. Hansen v. Allen Memorial Hosp., 141 F.R.D. 115, 121 (D.C. Iowa 1992). The party invoking the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived. State of Maine v. U.S. Dept. of Interior, 298 F.3d 60, 67 (1st Cir. 2002).

Under the federal law of privilege, Defendants in this case have waived any privilege relating to documents in Mr. Frain's possession for two independent reasons. **First**, Defendants waived the privilege by producing selective documents reflecting communications between Mr. Frain and Defendants, and thus have effected a broad subject matter waiver. **Second**, Defendants specifically put their communications with Mr. Frain at issue by pleading an "advice of counsel" affirmative defense in their Amended Answer. For either of these reasons, the Court should order production of the requested documents.

### 1. The Privilege is Waived Because Defendants Have Produced Several Otherwise Privileged Documents Relating to Their Relationship With Mr. Frain.

It is black letter law that selective waiver is forbidden. In other words, Courts will not allow the attorney-client privilege to be used "as both a shield and a sword." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 895 F. Supp. 88, 92 (E.D. Pa. 1995). As the Weil court explained:

> [I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. […string cite omitted…] Professor Wigmore explains:
>
>> (W)hen (the privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final.

647 F.2d at 24 accord Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) (affirming district court's finding of subject matter waiver where some but not all privileged documents were inadvertently disclosed).

In this case, Defendants have already produced several documents that might have constituted privileged communications. E.g., Exs. 5 (three letters), 6, and 8. Defendants have

also produced documents disclosing the details of the dispute between Defendants and Mr. Frain. E.g., Exs. 7 and 8.[5]  "Waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter." In re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849, 855 (D. Mass. 1995) (citing In re Sealed Case, 877 F.2d 976, 980-81 (D.C. Cir. 1989)).  Accordingly, any privilege that might have attached to documents in Mr. Frain's possession relating to Defendants and their adoption and use of the infringing mark has been waived.

### 2. The Privilege is Waived Because Defendants Claim Reliance on Advice of Counsel.

It is also well established that when a party pleads reliance on the advice of counsel as a defense to infringement, "there is a waiver of the attorney-client privilege and work product protection[.]" Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361, 362 (D. Mass. 1995) (ordering production of documents in a patent infringement case where defendant pleaded reliance on advice of counsel).  See also Glenmede Trust Co. v. Thomson, 56 F.3d 476, 486 (3rd Cir. 1995) ("The attorney-client privilege may be waived by a client who asserts reliance on the advice of counsel as an affirmative defense. Under such circumstances, the client has made a conscious decision to inject the advice of counsel as an issue in the litigation.") (affirming district court's conclusion that waiver extended to "to all communications, whether written or oral, to or from counsel concerning the" transaction at issue in that case.)

Moreover, waiver under an "reliance on advice of counsel" defense cannot be avoided by claiming that advice was sought, but not relied upon.  E.g., Dorr-Oliver Inc. v. Fluid-Quip, Inc.,

---

[5] Ex. 8 is actually a communication to Defendants' present counsel in this matter, discussing Defendants' dispute with Mr. Frain. As such, it also constitutes a waiver of any attorney-client privilege with Defendants' present counsel relating to that dispute. In this motion, however, Wildlife Florida seeks only communications and documents from Defendants' former counsel, not their present counsel. Wildlife Florida reserves its right to challenge other claims of privilege.

834 F. Supp. 1008 (N.D. Ill. 1993). It is also irrelevant to the waiver whether the party asserting the defense has accurately characterized the privileged communication. For example, in <u>United States v. Jacobs</u>, where the client had represented that his attorney had told him a certain course of action was legal, when, in fact, the attorney had expressed the opposite view, the court held that "[a]n inaccurate statement of a privileged communication waives the privilege with respect to that communication." 117 F.3d 82, 90 (2d Cir. 1997).

Defendants have pleaded reliance on advice of counsel as an affirmative defense. (D.I. 21 at 24-25). They also have represented to Plaintiff on several occasions, both before and after this suit was filed, that they had been advised by counsel that their adoption and use of the mark WILDLIFE SOLUTIONS was lawful. Accordingly, they have waived the attorney-client privilege as to communications with Mr. Frain.

Finally, it is worth noting that work-product protection applies only to materials prepared by attorneys "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); <u>State of Maine</u>, 298 F.3d at 66. The burden of establishing that protection is on the party asserting it. <u>Id.</u> at 66-67. Here, Defendants and Mr. Frain have made no showing that any of the documents were prepared in anticipation of litigation. Thus, it is not even necessary to find a waiver for the Court to compel Mr. Frain to produce documents over which work product protection has been claimed.

### 3. Mr. Frain Cannot Assert a Privilege that Has Been Waived By a Client.

"The attorney-client privilege belongs to the client, not to the attorney." <u>In re Grand Jury Subpoena (Zerendow)</u>, 925 F.Supp. 849, 855 (D.Mass.1995) (citing cases). As discussed above, Defendants unequivocally waived any privilege with respect to the documents sought. Mr. Frain cannot refuse to produce the documents once his former clients have waived privilege. Accordingly, he should be ordered to produce all responsive documents.

## III.  CONCLUSION

For the above-stated reasons, the Court should grant Wildlife Florida's motion and order Mr. Frain to produce the subpoenaed documents immediately.  In addition, the Court should award Wildlife Florida's its attorney's fees and costs in preparing this motion pursuant to Fed. R. Civ. P. 37(a)(4).  Defendants have forced Wildlife Florida to spend several months and incur substantial costs to obtain documents that should have been produced long ago.

                    WILDLIFE SOLUTIONS, INC.

                    By its attorneys,

Dated: December 23, 2005

/s/ Adam J. Kessel_____
Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

Of Counsel

Michael Leetzow, Esq. (admitted *pro hac vice*)