IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILDLIFE SOLUTIONS, INC.,
  a Florida Corporation,

      Plaintiff,

v.

THOMAS J. REILLY

And

WILDLIFE SOLUTIONS, INC.,
   a Massachusetts Corporation,

      Defendants.

Civil Action No. 1:05-cv-10180-FDS

**DECLARATION OF ADAM J. KESSEL IN SUPPORT
OF MOTION TO COMPEL THOMAS J. FRAIN
TO COMPLY WITH SUBPOENA DUCES TECUM**

As counsel for Wildlife Solutions, Inc., a Florida Corporation ("Wildlife Florida"), I

submit this declaration under penalty of perjury in support of Wildlife Florida's Motion to

Compel Thomas J. Frain to Comply With Subpoena Duces Tecum:

1. Attached as Exhibit 1 is a copy of Defendant Wildlife Massachusetts' Response to Plaintiff's

   First Set of Requests for Admission to Defendant Wildlife Massachusetts, served on

   December 9, 2005.

2. Attached as Exhibit 2 is a copy of an Office Action dated 12/22/05 from the United States

   Patent and Trademark Office regarding Application Ser. No. 78/518184 for

   MASSACHUSETTS WILDLIFE SOLUTIONS.

3. Attached as Exhibit 3 is a copy of a letter dated 11/2/04 from Wildlife Florida to Thomas J.

   Reilly.

4.  Attached as Exhibit 4 is a copy of a letter dated 11/17/04 from Wildlife Florida to Thomas J. Reilly.

5.  Attached as Exhibit 5 is a copy of the Articles of Organization for Wildlife Massachusetts and a cover letter signed by Thomas J. Frain, Esq.  These documents were produced by Wildlife Massachusetts in this action bearing the production numbers 000020, 000000, 000001, 000002, and 000003.

6.  Attached as Exhibit 6 is a copy of correspondence between Thomas J. Reilly and Thomas J. Frain, Esq.  These documents were produced by Wildlife Massachusetts in this action bearing the production numbers 000020, 000021, 000022, 000023, and 000024.

7.  Attached as Exhibit 7 is a copy of correspondence between Thomas J. Reilly and Thomas J. Frain, Esq. dated 3/23/05.  This documents was produced by Wildlife Massachusetts in this action bearing the production number 000073.

8.  Attached as Exhibit 8 is a copy of email correspondence between Thomas J. Reilly and Richard Farrell, dated 3/27/05.  This documents was produced by Wildlife Massachusetts in this action bearing the production number 000025.

9.  Attached as Exhibit 9 is a copy of correspondence between Thomas J. Reilly and Thomas J. Frain, Esq. dated 3/27/05.  This documents was produced by Wildlife Massachusetts in this action bearing the production number 000074.

10. Attached as Exhibit 10 is a copy of the minutes and agenda of the annual meeting of the Board of Directors of Wildlife Massachusetts.  This documents was produced by Wildlife Massachusetts in this action bearing the production numbers 000043 - 000045.

11. Attached as Exhibit 11 is a copy of a letter from Wildlife Massachusetts' counsel, Richard Farrell, to me, dated 10/5/05.

12. Attached as Exhibit 12 is a copy of Plaintiff's First Set of Requests for Production of Documents and Things to Defendant Reilly, served on 8/9/05.

13. Attached as Exhibit 13 is a copy of an email message from me to Wildlife Massachusetts' counsel, Richard Farrell, dated 9/15/05.

14. Attached as Exhibit 14 is a copy of a letter from Wildlife Massachusetts' counsel, Richard Farrell, to me, dated 9/20/05.

15. Attached as Exhibit 15 is a copy of an email message from me to Wildlife Massachusetts' counsel, Richard Farrell, dated 9/20/05.

16. Attached as Exhibit 16 is a copy of Defendant Thomas J. Reilly's Response to Plaintiff's First Request for Production of Documents, served on September 30, 2005.

17. Attached as Exhibit 17 is a copy of a letter from Wildlife Florida's counsel, Michael Leetzow, to Wildlife Massachusetts' counsel, Richard Farrell, dated 11/1/05.

18. Attached as Exhibit 18 is a copy of a letter that was sent by FAX from Wildlife Massachusetts' counsel, Richard Farrell, to Wildlife Florida's counsel, Michael Leetzow, dated 11/10/05.

19. Attached as Exhibit 19 is a copy of a letter that was sent by FAX from Wildlife Massachusetts' counsel, Richard Farrell, to Wildlife Florida's counsel, Michael Leetzow, dated 11/16/05.

20. Attached as Exhibit 20 is a copy of a subpoena to Thomas J. Frain, Esq., dated 11/18/05. Also attached is a proof of service indicating that the subpoena was hand served on 11/21/05.

21. Attached as Exhibit 21 is a copy of a letter from Walter J. Hayes, Esq. to me, dated 12/2/05.

22. Attached as Exhibit 22 is a copy of an email from Wildlife Massachusetts' counsel, Richard Farrell, to me, dated 12/5/05.

23. Attached as Exhibit 23 is a copy of an email from Wildlife Massachusetts' counsel, Richard

Farrell, to me, dated 12/7/05.

24. Attached as Exhibit 24 is a copy of several letters between counsel for Wildlife

Massachusetts and counsel for Wildlife Florida relating to discovery matters, dated between

10/3/05 and 12/22/05.


Dated: December 23, 2005                                    /s/ Adam J. Kessel
                                                           Adam J. Kessel

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILDLIFE SOLUTIONS, INC.,
A Florida Corporation,
Plaintiff,

v.                                                    Civil Action No. 05-CV-108180-FDS

THOMAS J. REILLY
and
WILDLIFE SOLUTIONS, INC.,
a Massachusetts Corporation,
Defendants.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WILDLIFE MASSACHUSETTS

The defendant Wildlife Solutions, Inc. of Massachusetts (Wildlife Massachusetts) hereby responds, pursuant to Rule 36 of the Federal Rules of Procedure, to the plaintiff's first set of requests for admission to defendant Wildlife Massachusetts. Wildlife Massachusetts specifically responds using the term "Wildlife Massachusetts" or "Defendant" to mean itself.

## INSTRUCTIONS AND DEFINITIONS

1.     The term "person" or "persons" as used in these requests includes, without limitation, any person or juristic person, as those terms are defined in Section 45 of the Lanham Act, 15 U.S.C. § 1127.

2.     As used herein, "Wildlife Florida s Mark" refers to Wildlife Florida s Mark WILDLIFE SOLUTIONS in any stylization.

3.     As used herein, "Wildlife Massachusetts Marks" refers to Wildlife Massachusetts marks WILDLIFE SOLUTIONS and MASSACHUSETTS WILDLIFE SOLUTIONS in any stylization.

4.     As used herein, "Wildlife Massachusetts Trademark Application" refers to Wildlife Massachusetts U.S. Trademark application for the mark MASSACHUSETTS WILDLIFE SOLUTIONS, filed with the U.S. Trademark Office as Application No.

-1-

78/518,184.

5.      As used herein, "Wildlife Massachusetts  Services" refers to each and every product or
service which Wildlife Massachusetts has ever sold, offered for sale, promoted, or
rendered under or in connection with Wildlife Massachusetts  Marks.


REQUEST FOR ADMISSION NO. 1

Admit that Defendant became aware of Plaintiff's website at www.wildlifesolutions.com before
or during the process of obtaining a domain name registration for Defendant s domain name,
wildlifesolutions.biz.

Response:      Defendant denies the fact as stated above.  Defendant became aware of a website
at www.wildlifesolutions.com during the process of registering a domain name for
Wildlife Solutions, Inc., however, the defendant denies that it had any specific
knowledge of who the owner of the site or sites were, or any details about the
owners.

REQUEST FOR ADMISSION NO. 2

Admit that Defendant became aware of Plaintiffs domain name wildlifesolutions.com before or
during the process of obtaining a domain name registration for Defendant s domain name,
wildlifesolutions.biz.

Response:      Defendant admits that it became aware that another entity owned the domain
name wildlifesolutions.com during the process of registering wildlifesolutions.biz,
but denies that it had specific knowledge of who owned the domain or domains.

REQUEST FOR ADMISSION NO. 3

Admit that Defendant has never used the Mark MASSACHUSETTS WILDLIFE SOLUTIONS
in commerce (as defined in 15 USC § 1127).

Response:      Admitted.

REQUEST FOR ADMISSION NO. 4

Admit that Defendant continues to advertise under the name PAC of Hudson.

Response:      Denied.

REQUEST FOR ADMISSION NO. 5

Admit that Defendant put content on the website www.wildlifesolutions.biz only after learning about Plaintiff.

Response:    Denied.  Content was not added to the website www.wildlifesolutions.biz after defendant learned about Plaintiff.

REQUEST FOR ADMISSION NO. 6

Admit that Defendant put content on the website www.wildlifesolutions.biz only after the complaint in this litigation was filed.

Response:    Denied.

REQUEST FOR ADMISSION NO. 7

Admit that the federal trademark application for MASSACHUSETTS WILDLIFE SOLUTIONS identifies an individual as the applicant.

Response:    Admitted, but denied that the intent of the applicant was to apply in an individual capacity.

REQUEST FOR ADMISSION NO. 8

Admit that the federal trademark application for MASSACHUSETTS WILDLIFE SOLUTIONS identifies Mr. Thomas Reilly as the applicant.

Response:    Denied that the application was on behalf of Mr. Thomas Reilly.  The application was returned to him specifically because it was in the name of WILDLIFE SOLUTIONS but he incorrectly filled out the application with him as the applicant.  Admitted that the application identifies Mr. Thomas Reilly as the applicant.

REQUEST FOR ADMISSION NO. 9

Admit that Plaintiff owns U.S. Reg. No. 2,383,071 for the Mark WILDLIFE SOLUTIONS, which covers, among other things, pest control, namely, removal, relocation and prevention of nuisance animals.

Response:    Admitted that the plaintiff owns the U.S. Reg. No. 2,383,071 for the Mark WILDLIFE SOLUTIONS, but denied that the Mark Wildlife Solutions is legally entitled to trademark protection.

REQUEST FOR ADMISSION NO. 10

Admit that Defendant does not have a federal trademark application pending in its own name.

Response:    Admitted.

REQUEST FOR ADMISSION NO.11

Admit that Defendant has used the Mark WILDLIFE SOLUTIONS without Plaintiffs permission.

Response:    Admitted, but the defendant denies that it was required to seek or obtain Plaintiff's permission.

REQUEST FOR ADMISSION NO.12

Admit that the document attached to these requests as Exhibit A is a true copy of the website at www.wildlifesolutions.biz showing use of the Mark WILDLIFE SOLUTIONS.

Response:    Admitted.

REQUEST FOR ADMISSION NO. 13

Admit that the Mark WILDLIFE SOLUTIONS as used by Defendant is exactly the same Mark as WILDLIFE SOLUTIONS used by the Plaintiff.

Response:    Denied.  Admitted that the words used in the mark are identical, but stylizations of the mark are not identical.

REQUEST FOR ADMISSION NO. 14

Admit that the services provided by Defendant and Plaintiff include the removal, relocation and prevention of nuisance animals.

Response:    Admitted.

REQUEST FOR ADME5SION NO.15

Admit that Plaintiff and Defendant both advertise on the internet.

Response:    Admitted.

REQUEST FOR ADMISSION NO. 16

Admit that Plaintiff and Defendant both advertise in yellow pages.

Response:    Defendant is without sufficient knowledge to admit or deny this allegation.

REQUEST FOR ADMISSION NO. 17

Admit that the classes of prospective purchasers of Plaintiff's and Defendant's services are of normal intelligence and are not discerning consumers.

Response:    Defendant is without sufficient knowledge to admit or deny this allegation, because it is unaware of the plaintiff's "classes of prospective purchasers."

REQUEST FOR ADMISSION NO. 18

Admit that Defendant adopted the Mark WILDLIFE SOLUTIONS knowing of Plaintiff's "Wildlife Florida's Mark."

Response:    Denied.

REQUEST FOR ADMISSION NO.19

Admit that Defendant has, since learning of "Wildlife Florida s Mark," increased the use of "Wildlife Massachusetts  Marks."

Response:    Denied.

Thomas Reilly,
By his attorney:

Dated:        December 9, 2005

Richard J. Farrell, Jr.
MA BBO# 638017
197M Boston Post Road West #177
Marlborough, MA 01752
508-358-5411

-5-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by mail on counsel for the defendant, Adam Kessel, at Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, Massachusetts, 02210 on this date.

# EXHIBIT 2

| To: | Reilly Thomas J (pacofhudson@aol.com) |
|---|---|
| Subject: | TRADEMARK APPLICATION NO. 78518184 - MASSACHUSETTS WILDLIFE SOLUTIONS - N/A |
| Sent: | 12/22/2005 12:12:44 PM |
| Sent As: | ECOM112@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**:    78/518184

**APPLICANT**:    Reilly Thomas J

# *78518184*

**CORRESPONDENT ADDRESS**:
  REILLY THOMAS J
  16 HIGH ST
  WEST BOYLSTON, MA 01583-1518

**RETURN ADDRESS**:
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK**:    MASSACHUSETTS WILDLIFE SOLUTIONS

**CORRESPONDENT'S REFERENCE/DOCKET NO**:  N/A

**CORRESPONDENT EMAIL ADDRESS**:
      pacofhudson@aol.com

Please provide in all correspondence:

1. Filing date, serial number, mark and
   applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and
   Law Office number.
4. Your telephone number and e-mail address.

## OFFICE ACTION

**RESPONSE TIME LIMIT**:  TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE MAILING OR E-MAILING DATE.

**MAILING/E-MAILING DATE INFORMATION**: If the mailing or e-mailing date of this Office action does not appear above, this information can be obtained by visiting the USPTO website at http://tarr.uspto.gov/, inserting the application serial number, and viewing the prosecution history for the mailing date of the most recently issued Office communication.

Serial Number 78/518184

This Office action supersedes any previous Office action issued in connection with this application.

The assigned examining attorney has reviewed the referenced application and determined the following.

## LIKELIHOOD OF CONFUSION – SECTION 2(d)

The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), because the applicant's mark, when used on or in connection with the identified services, so resembles the marks in U.S. Registration Nos. 2383071 and 2383072 as to be likely to cause confusion, to cause mistake, or to deceive. TMEP section 1207. See the enclosed registrations.

The examining attorney must analyze each case in two steps to determine whether there is a likelihood of confusion. First, the examining attorney must look at the marks themselves for similarities in appearance, sound, connotation and commercial impression. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Second, the examining attorney must compare the goods or services to determine if they are related or if the activities surrounding their marketing are such that confusion as to origin is likely. *In re August Storck KG*, 218 USPQ 823 (TTAB 1983); *In re International Telephone and Telegraph Corp.*, 197 USPQ 910 (TTAB 1978); *Guardian Products Co., v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978).

The applicant's mark is MASSACHUSETTS WILDLIFE SOLUTIONS for "Solutions to wildlife issue's including trapping, repair, exclusion, pest control." The registrant's marks are WILDLIFE SOLUTIONS and WILDLIFE SOLUTIONS and design for "pest control, namely, removal, relocation and prevention of nuisance animals."

When the applicant's mark is compared to a registered mark, "the points of similarity are of greater importance than the points of difference." *Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 108 USPQ 161 (D.C. Cir.), *cert. denied*, 351 U.S. 973, 109 USPQ 517 (1956).

The marks share the identical dominant wording WILDLIFE SOLUTIONS. If the marks of the respective parties are identical or highly similar, the examining attorney must consider the commercial relationship between the goods or services of the respective parties carefully to determine whether there is a likelihood of confusion. *In re Concordia International Forwarding Corp.*, 222 USPQ 355 (TTAB 1983).

The services of the parties need not be identical or directly competitive to find a likelihood of confusion. They need only be related in some manner, or the conditions surrounding their marketing be such, that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the services come from a common source. *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Products Co., Inc. v. Scott*

*Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978). The services of the parties are identical and/or highly related, namely, pest control and other services related to wildlife and animals.

The marks are virtually identical. The services are very highly related. The similarities among the marks and the services are so great as to create a likelihood of confusion among consumers. The examining attorney must resolve any doubt regarding a likelihood of confusion in favor of the prior registrant. *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir., 1988).

## **GEOGRAPHICALLY DESCRIPTIVE**

Registration is refused because the mark is primarily geographically descriptive of the origin of applicant's goods and/or services. Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); TMEP §§1210.01(a) and 1210.04 *et seq.*

A three-part test is applied to determine whether a mark is primarily geographically descriptive of the goods and/or services within the meaning of Trademark Act Section 2(e)(2):

(1) the primary significance of the mark must be geographic, i.e., the mark names a particular geographic place or location;

(2) purchasers would be likely to make a goods-place or services-place association, i.e., purchasers are likely to believe the goods or services originate in the geographic location identified in the mark; and

(3) the goods and/or services originate in the place identified in the mark.

TMEP §1210.01(a); *See In re MCO Properties, Inc.*, 38 USPQ2d 1154 (TTAB 1995); *In re California Pizza Kitchen*, 10 USPQ2d 1704 (TTAB 1989).

The applicant has applied to register the mark MASSACHUSETTS WILDLIFE SOLUTIONS for "Solutions to wildlife issue's including trapping, repair, exclusion, pest control." The primary significance of the term "MASSACHUSETTS" is geographic, and applicant's services provide solutions to wildlife problems in the nature of pest control and related animal control services. See attached registration that demonstrates a disclaimer for the term WILDLIFE and SOLUTIONS. The terms MASSACHUSETTS, WILDLIFE and SOLUTIONS are defined as follows:

## **Mas·sa·chu·sett**

**Mas·sa·chu·sett** also **Mas·sa·chu·set** (màs´e-chǐ¡'sǐt, -zǐt) *noun*

*plural* **Massachusett** or **Mas·sa·chu·setts** also **Massachuset** or **Mas·sa·chu·sets**

1.  **a.** A Native American people formerly located along Massachusetts Bay from Plymouth north to Salem. Reduced by epidemics, the Massachusett ceased to exist as a people during the 17th century. **b.** A member of this people.

2.  The Algonquian language of the Massachusett.

[From the Massachusett name of Great Blue Hill south of Boston.][1]

# wild·life

wild·life (wīld'līf´) *noun*

Wild animals and vegetation, especially animals living in a natural, undomesticated state.[2]

# so·lu·tion

so·lu·tion (sə-lı̄'shən) *noun*

*Abbr.* **sol., soln.**

1.  **a.** A homogeneous mixture of two or more substances, which may be solids, liquids, gases, or a combination of these. **b.** The process of forming such a mixture.

2.  The state of being dissolved.

3.  **a.** The method or process of solving a problem. **b.** The answer to or disposition of a problem.

4.  *Law.* Payment or satisfaction of a claim or debt.

5.  The act of separating or breaking up; dissolution.

[Middle English, from Old French, from Latin *solútio, solútion-*, from *solútus*, past participle of *solvere*, to loosen. See solute.][3]

The attached evidence from the examining attorney's search on the Internet shows that the primary significance of the term "MASSACHUSETTS" in the mark is the name of a geographic location.  Purchasers are likely to believe the goods and/or services originate in that geographic location because applicant is located there and/or services are provided there.  Thus there is a presumed services-place association in this case.  *In re JT Tobacconists,* 59 USPQ2d 1080 (TTAB 2001); *In re U.S. Cargo, Inc.,* 49 USPQ2d 1702 (TTAB 1998); *In re Carolina Apparel,* 48 USPQ2d 1542 (TTAB 1998); *In re Chalk's International Airlines Inc.,* 21 USPQ2d 1637 (TTAB 1991); *In re California Pizza Kitchen,* 10 USPQ2d 1704 (TTAB

1989); *In re Handler Fenton Westerns, Inc.*, 214 USPQ 848 (TTAB 1982); TMEP §1210.04.

The mark immediately names the exact nature and purpose of the services and the place from which the services emanate. Accordingly, the mark is refused registration on the Principal Register under Section 2(e)(2). Please note that a disclaimer of the term WILDLIFE will not overcome the Section 2(e)(2) refusal.

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

## INFORMALITIES

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following informalities.

## RECITATION OF SERVICES

The recitation of services is unacceptable as indefinite because the precise nature of the services is unclear from the present wording. The applicant must amend the recitation to specify the common commercial name of the services. If there is no common commercial name for the services, the applicant must describe the services and indicate their nature. TMEP §1402.11. Specifically, the applicant must specify the services intended by the wording "solutions to wildlife issue's including trapping, repair, exclusion, pest control" using common commercial terms.

The applicant may adopt the following recitation, if accurate:

> Class 37
>
> Repair of _____ [applicant must specify what is being repaired using common commercial terms]; animal control services, namely wildlife control, capturing, and trapping;  pest control, in International Class 37.

TMEP section 1402.11.

Applicant may wish to refer to the on-line identification manual on the PTO homepage for acceptable names of goods and services. The web page address is:

> http://www.uspto.gov/web/office/tac/doc/gsmanual/

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06. Therefore, the applicant may not amend to include any services that are not within the scope of the services recited in the present identification.

If applicant prosecutes this application as a combined, or multiple#class application, then applicant must comply with each of the requirements below for those goods and/or services based on actual use in commerce under Trademark Act Section 1(a):

(1)  Applicant must list the goods/services by international class with the classes listed in ascending numerical order;

(2)  Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov); and

(3)  For each additional class of goods and/or services, applicant must submit:

(a)  dates of first use of the mark anywhere and dates of first use of the mark in commerce, or a statement that the dates of use in the initial application apply to that class; the dates of use, both anywhere and in commerce, must be at least as early as the filing date of the application;

(b)  one specimen showing use of the mark for each class of goods and/or services; the specimen must have been in use in commerce at least as early as the filing date of the application;

(c)  a statement that "the specimen was in use in commerce on or in connection with the goods and/or services listed in the application at least as early as the filing date of the application;" and

(d)  verification of the statements in 3(a) and 3(c) in an affidavit or a signed declaration under 37 C.F.R. §2.20.  (NOTE: Verification is *not* required where (1) the dates of use for the added class are stated to be the same as the dates of use specified in the initial application, or (2) the original specimens are acceptable for the added class.)

37 C.F.R. §§2.6, 2.34(a), 2.59, 2.71(c), and 2.86(a); TMEP §§810, 904.09, 1403.01 and 1403.02(c).


## SPECIMEN OF USE REQUIRED

Applicant must submit (1) a specimen (i.e., an example of how applicant actually uses its mark in the sale or advertising of its services) showing the mark as it is used in commerce, and, (2) a statement that "the specimen was in use in commerce at least as early as the filing date of the application," verified with a notarized affidavit or signed declaration under 37 C.F.R. §2.20.  37 C.F.R. §2.59(a); TMEP §904.09.

A specimen showing use of the mark in the sale or advertising of the identified services is required for an application based on use of the mark in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a).  TMEP §904.  The instant application does not include a specimen.

Examples of acceptable specimens for services are signs, photographs, brochures, website printouts or advertisements that show the mark used in the sale or advertising of the services.  TMEP §§1301.04 *et seq.*

If applicant cannot comply with the requirement for a specimen of use for the Section 1(a) basis asserted, then applicant may substitute a different basis for filing if applicant can meet the requirements for the new basis. *See* TMEP §§806.03 *et seq.*

In this case, applicant may wish to amend the application to assert a 1(b) basis.

Where an application is based on a bona fide intention to use the mark in commerce, applicant must submit the following statement:

Applicant has had a bona fide intention to use the mark in commerce on or in connection with the goods or services listed in the application since the filing date of the application.

This statement must be verified with a notarized affidavit or a signed declaration under 37 C.F.R. §§2.20 and 2.33. Trademark Act Section 1(b), 15 U.S.C. §1051(b); 37 C.F.R. §2.34(a)(2); TMEP §806.01(b).

## NAME OF INDIVIDUAL

The applicant has submitted the following claim: "The name(s), portrait(s), and/or signature(s) shown in the mark identifies Thomas Reilly , whose consent(s) to register is submitted." However, the mark is MASSACHUSETTS WILDLIFE SOLUTIONS, the name Thomas Reilly is not a part of the mark. Accordingly, the applicant must expressly delete the claim related to the name of an individual.

## Electronic Responses

Applicant may respond to this Office action using the Office's Trademark Electronic Application System (TEAS) at <http://www.uspto.gov/teas/index.html>. When using TEAS the data the applicant submits is directly uploaded into the Office's database, which reduces processing time and eliminates the possibility of data entry errors by the Office. Applicants are strongly encouraged to use TEAS to respond to Office actions. Applicants using TEAS should not submit a duplicate paper copy of the response.

## Status of Application

The Trademark Applications and Registrations Retrieval (TARR) database on the USPTO website at http://tarr.uspto.gov provides detailed, up to the minute information about the status and prosecution history of trademark applications and registrations. The TARR database is available 24 hours a day, 7 days a week. Status and status date information is also available via push-button telephone at (703) 305#8747 from 6:30 a.m. until midnight, Eastern Time, Monday through Friday.

## Change In USPTO Trademark Contact Information

The USPTO Trademark Operations will be moving to the new Alexandria, Virginia campus in October and November 2004. During that time, you are strongly encouraged to communicate with the USPTO through the Trademark Electronic Application System (TEAS) which can be found at www.uspto.gov.

Effective October 4, 2004, all Trademark-related paper mail must be sent to:

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451

My Law Office will move on October 18, 2004.  To reach me by phone after that date call (571) 272-9195.

To submit a **fax** response to this Office action after that date, send your response to the Law Office fax number, namely (571) 273-9116.

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.

/Sharon A. Meier/

_____

Sharon A. Meier

Trademark Attorney, Law Office 112

571-272-9195  phone

571-273-9112  fax

**HOW TO RESPOND TO THIS OFFICE ACTION:**
- ONLINE RESPONSE:  You may respond formally using the Office's Trademark Electronic Application System (TEAS) Response to Office Action form (visit http://www.uspto.gov/teas/index.html and follow the instructions, but if the Office Action has been issued via email, you must wait 72 hours after receipt of the Office Action to respond via TEAS).
- REGULAR MAIL RESPONSE:  To respond by regular mail, your response should be sent to the mailing return address above and include the serial number, law office number and examining attorney's name in your response.

**STATUS OF APPLICATION:** To check the status of your application, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov.

**VIEW APPLICATION DOCUMENTS ONLINE:** Documents in the electronic file for pending applications can be viewed and downloaded online at http://portal.uspto.gov/external/portal/tow.

**GENERAL TRADEMARK INFORMATION:** For general information about trademarks, please visit the Office's website at http://www.uspto.gov/main/trademarks.htm

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY SPECIFIED ABOVE.**

---

[1] *The American Heritage® Dictionary of the English Language, Third Edition* copyright © 1992 by Houghton Mifflin Company. Electronic version licensed from INSO Corporation; further reproduction and distribution restricted in accordance with the Copyright Law of the United States. All rights reserved.

[2] *Id.*

[3] *Id.*

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861678445
12/22/2005 12:03:47 PM



MSN Home   My MSN   Hotmail   Shopping   Money   People & Chat   Sign In      Web Search: [          ] [Search]

**msn** Encarta®

> > Subscriber Sign In   |   Help

Home   Encyclopedia   **Dictionary**   Thesaurus   Atlas   Multimedia   Quizzes   **Upgrade your Encarta Experience**

> > Click here to search all of MSN Encarta

## Dictionary                                          Encarta ✔

| School Success | College & Grad | Adult Learning |
| Homework Help | Admissions | Online Degrees |
| Online Tutoring | 2006 Rankings | Career Training |
| Test Prep | College Life | Graduate School |

**Find:** [Massachusetts]  in  [Dictionary]   Click here to search all of MSN Encarta

Advertisement

**PAYING TOO MUCH FOR AUTO INSURANCE?**

**Dictionary**  | Thesaurus | Translations *

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

mass production
mass society
mass sociogenic illness
mass spectrometer
mass spectrum
mass transit
mass wasting
Massachusett
▸ **Massachusetts**
Massachusetts Bay

## Massachusetts

🔊 Massachusetts

**Mas·sa·chu·setts** [ măssə choo ssĕts ] state in the northeastern United States, bordered by Vermont, New Hampshire, the Atlantic Ocean, Rhode Island, Connecticut, and New York. Capital: Boston. Population: 6,427,801 (2002 estimate). Area: 23,934 sq km (9,241 sq mi.) *Official name* Commonwealth of Massachusetts

ZIP code where you park at night: [          ]
Do you currently have auto insurance?  ○ Yes  ○ No
Have you had a U.S. drivers license for more than 3 years?  ○ Yes  ○ No
Has any driver in your household had 2 or more accidents or moving violations in the last 3 years?  ○ Yes  ● No

⇒ iNSWEB   [ Get Quotes! ]

**Also on Encarta**

• Today in history.
• Brain-teasing quizzes.
• Compare online degrees

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861678445
12/22/2005 12:03:47 PM

massacre

massage

massage parlor

massage
therapy

Massapequa

massasauga

masscult

↓

Print Preview

See pronunciation
key

Search for
**"Massachu..."** in all
of MSN Encarta

Download the MSN
Encarta Right-Click
Dictionary

• Compare online degrees

• College prep & admissions

• Train for a better career

• Top 10 lists

**Our Partners**

• Book bargains on MSN Shopping

• ClassesUSA.com: Compare online degrees

• CollegeBound Teen magazine: Free issue

• hq|education: Career education

• Kaplan Test Prep and Admissions

• The Princeton Review

**Also on MSN**

• Meet the baby panda on Animal Planet

• MSN Shopping: The best in holiday gifts, all
online

• MSN Careers: Nail that job interview

**MSN Shopping**

MSN Shopping

Encarta® World English Dictionary [North American Edition] © & (P)2005
Microsoft Corporation. All rights reserved. Developed for Microsoft by
Bloomsbury Publishing Plc.

 
Upgrade your
Encarta Experience   Learn More →

© 2005 Microsoft   MSN Privacy   Legal   Advertise     Feedback   Help

http://dictionary.reference.com/search?q=Massachusetts&r=66    12/22/2005 12:04:42 PM

≋○ Dictionary.com

Massachusetts    Search

○ Dictionary   ● Thesaurus   ● Encyclopedia   ● Web

Home

Premium: Sign up | Login

NAVY

ADVERTISEMENT

Dictionary - Thesaurus - Encyclopedia - Web

Top Web Results for "Massachusetts"

## 3 entries found for *Massachusetts*.



**Mas·sa·chu·setts** ◁) P **Pronunciation Key** (măs′ə-chōō′sĭts) *Abbr.* **MA** or **Mass.**

A state of the northeast United States. It was admitted as one of the original Thirteen Colonies in 1788. The first European settlement was made by the Pilgrims of the *Mayflower* in 1620. Governed by the Massachusetts Bay Company from 1629 until 1684, the colony was a leader in the move for independence from Great Britain and the site of the first battles of the Revolutionary War in 1775. Boston is the capital and the largest city. Population: 6,029,051.

[Download Now or Buy the Book]
Source: *The American Heritage® Dictionary of the English Language, Fourth Edition*
Copyright © 2000 by Houghton Mifflin Company.
Published by Houghton Mifflin Company. All rights reserved.

**Mas·sa·chu·sett** also **Mas·sa·chu·set** P **Pronunciation Key** (măs′ə-chōō′sĭt, -zĭt)
*n. pl.* **Massachusett** or **Mas·sa·chu·setts** also **Massachuset** or **Mas·sa·chu·sets**

1.
   a. A Native American people formerly located along Massachusetts Bay from Plymouth north to Salem. Reduced by epidemics, the Massachusett ceased to exist as a people during the 17th century.
   b. A member of this people.
2. The Algonquian language of the Massachusett.

ADVERTISEMENT

🛡 STRAYER
UNIVERSITY

27,000
Adult
Students.

Ready to
Get Started?

Click Here ▶

LEARN MORE ABOUT

http://dictionary.reference.com/search?q=Massachusetts&r=66    12/22/2005 12:04:42 PM

2. The Algonquian language of the Massachusett.

———————————

[*From the Massachusett name of Great Blue Hill south of Boston.*]

[Download Now or Buy the Book]
Source: *The American Heritage® Dictionary of the English Language, Fourth Edition*
*Copyright © 2000 by Houghton Mifflin Company.*
*Published by Houghton Mifflin Company. All rights reserved.*

## Massachusetts

n 1: a state in New England; one of the original 13 colonies [syn: Massachusetts, Bay State, Old Colony, MA] 2: a member of the Algonquian people who formerly lived around Massachusetts Bay [syn: Massachuset, Massachusetts] 3: one of the British colonies that formed the United States [syn: Massachusetts, Massachusetts Bay Colony] 4: the Algonquian language of the Massachuset people [syn: Massachuset, Massachusetts]

Source: *WordNet ® 2.0, © 2003 Princeton University.*

**Perform a new search, or try your search for "Massachusetts" at:**

- Amazon.com - Shop for books, music and more
- HighBeam Research - 32 million documents from leading publications
- Merriam-Webster - Search for definitions
- Reference.com - Encyclopedia Search
- Reference.com - Web Search powered by Google
- Thesaurus.com - Search for synonyms and antonyms



**Related ads:**

- Norwood Massachusetts
- Boston Massachusetts
- Woburn Massachusetts Hotels
- Framingham Massachusetts
- Lexington Massachusetts



$39.99 A MONTH
PLUS TAXES AND FEES

T··Mobile·  GET MORE MINUTES

ADVERTISEMENT

Refi Rates at Record Lows

Copyright © 2005, Lexico Publishing Group, LLC. All rights reserved.
About Dictionary.com | Privacy Policy | Terms of Use | Link to Us | Help | Contact Us

# EXHIBIT 3

# MICHAEL L. LEETZOW, P.A.
## ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE:  407-489-0606 - MOBILE
          407-302-9970 - OFFICE
FAX:    407-302-9973
E-MAIL:  MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

November 2, 2004

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA  01583-1518

**Via Registered Mail**
**Return Receipt Requested**

      RE:   Unauthorized Use of WILDLIFE SOLUTIONS

Dear Mr. Reilly:

      My law firm represents Wildlife Solutions, Inc. of Orlando, Florida in all intellectual property issues. It has come to our attention through inquires on my client's website (www.wildlifesolutions.com) that you too are using this very same name for wildlife management services. However, my client has been using this name in interstate commerce since 1997 and also has a federally registered trademark (Reg. No. 2383071) for WILDLIFE SOLUTIONS. Any unauthorized use of any trade name, trademark or service mark belonging to my client Wildlife Solutions, Inc. constitutes a violation of federal and state law. Wildlife Solutions must take every step in order to ensure protection and proper use of its trademarks both in the U.S. and abroad. Therefore, we must respectfully request that you stop using the Wildlife Solutions trade name and trademark.

      Please contact me in writing, via email at *michael@leetzow.com*, or by telephone (407) 302-9970 within ten (10) business days to confirm your receipt of this letter and to explain what steps are being taken to halt the use of the Wildlife Solutions trade name and trademark.

Sincerely,

Michael L. Leetzow, Esq.

Cc: Mr. Steve DeMoor,
      Wildlife Solutions, Inc.

000027

# EXHIBIT 4

# MICHAEL L. LEETZOW, P.A.
### ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE:  407-489-0606 - MOBILE
           407-302-9970 - OFFICE
FAX:    407-302-9973
E-MAIL:  MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

November 17, 2004

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA  01583-1518

Via First Class Mail
and Email

RE:   Unauthorized Use of WILDLIFE SOLUTIONS

Dear Mr. Reilly:

Pursuant to our telephone conversation yesterday, I asked my client if they would be willing to license the mark WILDLIFE SOLUTIONS to you.  My client is not willing to license the use of the mark WILDLIFE SOLUTIONS.  While we understand your predicament of having spent money changing your name and for advertising of your new name, it was your duty to ensure that your new corporate name did not use a name already in use, including one that incorporates a federally registered trademark.  A simple search in the United States Trademark Office trademark database would have found my client's registered mark.  Furthermore, a simple internet search would have found my client's presence on the internet as well.

Moreover, I also understand that in December 2003 you registered the domain name www.wildlifesolutions.biz.  When you were searching for and registering that name, you would have seen that the mark WILDLIFE SOLUTIONS was already in use by my client and that my client owns the other high level domain names that include the mark WILDLIFE SOLUTIONS (including .com, .net, and .org).  At that point in time, you should have inquired about the availability of the name, rather than simply moving forward and now pleading ignorance.

As a result, we must require that you to stop using the mark WILDLIFE SOLUTIONS immediately.  The mark must be removed from your website, your voicemail, your corporate name (and all accounts associated therewith and the department of state), any

000028

and all advertising, and any other uses of the mark WILDLIFE SOLUTIONS. Furthermore, you will need to transfer the domain name www.wildlifesolutions.biz to my client as well. Please let me know when you will begin this process.

Sincerely,

Michael L. Leetzow, Esq.

Cc: Mr. Steve DeMoor,
    Wildlife Solutions, Inc.

000029

# EXHIBIT 5

THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740

TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

April 24, 2003

VIA FIRST CLASS MAIL

Secretary of the Commonwealth
Corporations Division
Room 1717
One Ashburton Place
Boston, MA  02108

Re:    Wildlife Solutions, Inc.

Dear Sir or Madam,

Enclosed herewith please find (1) Articles of Organization (one original copy and one copy for time stamp purposes) as well as (2) a check in the amount of $275.00 sent so that the above referenced corporation may be approved and filed by your office as soon as possible. I have also enclosed a self addressed and stamped envelope so that the time stamped copy of the articles may be returned to me at your earliest convenience.

Thank you for your time and attention to this matter. Please call me with any comments or questions.

Sincerely yours,

Thomas J. Frain, Esq.

TJF/nc

Enclosures

cc:    Wildlife Solutions, Inc.

000020

# THE COMMONWEALTH OF MASSACHUSETTS

# ARTICLES OF ORGANIZATION
### (General Laws, Chapter 156B)

I hereby certify that, upon examination of these Articles of Organization, duly submitted to me, it appears that the provisions of the General Laws relative to the organization of corporations have been complied with, and I hereby approve said articles; and the filing fee in the amount of $ _____ having been paid, said articles are deemed to have been filed with me this _____ day of _____ 20 _____ .

*Effective date:* _____

## WILLIAM FRANCIS GALVIN
*Secretary of the Commonwealth*

**FILING FEE:** One tenth of one percent of the total authorized capital stock, but not less than **$200.00**. For the purpose of filing, shares of stock with a par value less than $1.00, or no par stock, shall be deemed to have a par value of $1.00 per share.

## TO BE FILLED IN BY CORPORATION
### Photocopy of document to be sent to:

_____ Thomas J. Frain, Esq. _____

_____ 563 Main Street _____

_____ Bolton, MA 01740 _____

Telephone: 978-779-0749 _____

000000

D

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

## ARTICLES OF ORGANIZATION
(General Laws, Chapter 156B)

Examiner

Name
Approved

### ARTICLE I
The exact name of the corporation is:

Wildlife Solutions, Inc.

### ARTICLE II
The purpose of the corporation is to engage in the following business activities:

(a) To solve conflicts between human beings and animals. Solutions include, but are not limited to, trapping and other types of animal and pest control tactics as well as making repairs to damage caused by wildlife.

(b) To carry on any business or other activity which may lawfully be carried on by a corporation under the Business Corporation Law of the Commonwealth of Massachusetts, whether or not related to the purposes in the preceding paragraph.

C ☐
P ☐
M ☐
R.A. ☐

*Note: If the space provided under any article or item on this form is insufficient, additions shall be set forth on one side only of separate 8 1/2 x 11 sheets of paper with a left margin of at least 1 inch. Additions to more than one article may be made on a single sheet so long as each article requiring each addition is clearly indicated.*

P.C.

000001    156bart 4/5:00

## ARTICLE III

State the total number of shares and par value, if any, of each class of stock which the corporation is authorized to issue.

| WITHOUT PAR VALUE | | WITH PAR VALUE | | |
|---|---|---|---|---|
| TYPE | NUMBER OF SHARES | TYPE | NUMBER OF SHARES | PAR VALUE |
| Common: | | Common: | 275,000.00 | .01 |
| | | | | |
| Preferred: | | Preferred: | | |
| | | | | |

## ARTICLE IV

If more than one class of stock is authorized, state a distinguishing designation for each class. Prior to the issuance of any shares of a class, if shares of another class are outstanding, the corporation must provide a description of the preferences, voting powers, qualifications, and special or relative rights or privileges of that class and of each other class of which shares are outstanding and of each series then established within any class.

## ARTICLE V

The restrictions, if any, imposed by the Articles of Organization upon the transfer of shares of stock of any class are:

See Attachment V

## ARTICLE VI

**Other lawful provisions, if any, for the conduct and regulation of the business and affairs of the corporation, for its voluntary dissolution, or for limiting, defining, or regulating the powers of the corporation, or of its directors or stockholders, or of any class of stockholders:

See Attachment VI

**If there are no provisions state "None".
Note: The preceding six (6) articles are considered to be permanent and may ONLY be changed by filing appropriate Articles of Amendment.

000002

## ARTICLE VII

The effective date of organization of the corporation shall be the date approved and filed by the Secretary of the Commonwealth. If a *later* effective date is desired, specify such date which shall not be more than *thirty days* after the date of filing.

## ARTICLE VIII

**The information contained in Article VIII is not a permanent part of the Articles of Organization.**

a. The street address (*post office boxes are not acceptable*) of the principal office of the corporation *in Massachusetts* is:

### 16 High Street, West Boylston, Worcester County, MA 01721

b. The name, residential address and post office address of each director and officer of the corporation is as follows:

|  | NAME | RESIDENTIAL ADDRESS | POST OFFICE ADDRESS |
|---|---|---|---|
| President: | Thomas J. Reilly | 16 High Street West Boylston, MA 01583 | Same |
| Treasurer: | Thomas J. Reilly | 16 High Street, West Boylston, MA 01583 | Same |
| Clerk: | Thomas J. Reilly | 16 High Street West Boylston, MA 01583 | Same |
| Directors: | Thomas J. Reilly | 16 High Street, West Boylston, MA 01583 | Same |

c. The fiscal year (i.e., tax year) of the corporation shall end on the last day of the month of: December

d. The name and business address of the resident agent, if any, of the corporation is:

## ARTICLE IX

By-laws of the corporation have been duly adopted and the president, treasurer, clerk and directors whose names are set forth above, have been duly elected.

IN WITNESS WHEREOF AND UNDER THE PAINS AND PENALTIES OF PERJURY, I/we, whose signature(s) appear below as incorporator(s) and whose name(s) and business or residential address(es) *are clearly typed or printed* beneath each signature do hereby associate with the intention of forming this corporation under the provisions of General Laws, Chapter 156B and do hereby sign these Articles of Organization as incorporator(s) this 24th day of April , 20 03 .

Thomas J. Frain, Esq., Incorporator

563 Main Street

Bolton, MA 01740

*Note: If an existing corporation is acting as incorporator, type in the exact name of the corporation, the state or other jurisdiction where it was incorporated, the name of the person signing on behalf of said corporation and the title he/she holds or other authority by which such action is taken.*

000003

# EXHIBIT 6

THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740

TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

April 24, 2003

VIA FIRST CLASS MAIL

Secretary of the Commonwealth
Corporations Division
Room 1717
One Ashburton Place
Boston, MA  02108

    Re:   Wildlife Solutions, Inc.

Dear Sir or Madam,

    Enclosed herewith please find (1) Articles of Organization (one original copy and one copy for time stamp purposes) as well as (2) a check in the amount of $275.00 sent so that the above referenced corporation may be approved and filed by your office as soon as possible. I have also enclosed a self addressed and stamped envelope so that the time stamped copy of the articles may be returned to me at your earliest convenience.

    Thank you for your time and attention to this matter. Please call me with any comments or questions.

Sincerely yours,

Thomas J. Frain, Esq.

TJF/nc

Enclosures

cc:   Wildlife Solutions, Inc.

000020

THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740
TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

Thomas J. Frain, Esq.
Julie A. Warshafsky, Esq.

June 1, 2004

Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA  01583

Re:    Statement of Account

Dear Mr. Reilly,

Please find enclosed the above referenced bill, which is due upon receipt.

Thank you for your time and attention in this matter.  Please feel free to call me with any comments or questions.

Sincerely yours,

Thomas J. Frain, Esq.

TJF/nc

Enclosure

000021

May 01, 2003

Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston MA 01583

Re:  Statement of Account

For professional services rendered including the following:

Description

| | | Hours |
|---|---|---|
| 4/22/2003 Office conference with client | | |
| Draft corporate Articles of Organization and associated documents | | 0.50 |
| Review and revise corporate formation documents | | 2.00 |
| 4/23/2003 Revise formation documents | | 0.10 |
| | | 0.10 |

| | Amount |
|---|---|
| 2.70 | $472.50 |

Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Thomas J. Frain | 2.70 | 175.00 | $472.50 |

Additional Charges :

| | | |
|---|---|---|
| 4/24/2003 Corporate Minute Book | | |
| Filing fee to Secretary of State's office for Articles of Organization | | 68.45 |
| Total costs | | 275.00 |
| | | $343.45 |

| | |
|---|---|
| Total amount of this bill | |
| | $815.95 |
| 5/1/2003 Payment from account | |
| | ($345.00) |
| Total payments and adjustments | |
| | ($345.00) |

000022

See next page
for Balance due

Thomas J. Reilly

Page    2

Amount

Balance due

$470.95

Previous Retainer Balance
4/22/2003 Payment to account. Check No. 1361
5/1/2003 Payment from account

$0.00
$345.00
($345.00)

Retainer Balance Remaining

$0.00

000023

# THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740

TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

May 6, 2003

VIA FIRST CLASS MAIL

Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA  01583

     Re:   Wildlife Solutions, Inc.

Dear Mr. Reilly,

    Please find enclosed the Stock Certificate for Wildlife Solutions.  Please date, sign as both President and Treasurer and return to me for incorporation into the Minute Book.

    Thank you for your time and attention to this matter.  Please call me with any comments or questions.

                    Sincerely yours,

                    Thomas J. Frain, Esq.

TJF/nc

Enclosure

000024

# EXHIBIT 7

THOMAS J. FRAIN
ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740
TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

Thomas J. Frain, Esq.
Francisco C. Melon, Esq.
Erin E. Ryan, Esq.

March 23, 2005

VIA FIRST CLASS MAIL

Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA 01583

Re:   Wildlife Solutions, Inc.; Service Mark

Dear Mr. Reilly,

When we last spoke regarding the above referenced issue almost a year ago, it was decided that you would wait for the other Wildlife Solutions to call you back and if you did not hear from them within a few weeks you were going to call me to discuss strategy. I have not heard from you since that time and will consider this matter closed if I do not hear from you. Please advise the status of this matter.

Thank you for your time and attention to this matter. Please call me with any comments or questions.

Sincerely yours,

Thomas J. Frain, Esq.

TJF/nc

000073

# EXHIBIT 8

**Rich**

**From:** Thomas J Reilly [wildlifesolutions@charter.net]
**Sent:** Sunday, March 27, 2005 11:06 AM
**To:** Rich
**Subject:** RE: RE: Servicemark

new letter

Attorny Fraine,
I have received your letter and I am quite confused by the timing of it, it would seem way
to councidental that you happen to write me on this subject while I am imbroiled in a
federal lawsuit for a trademark infringement

Regarding the service mark you inquire about held by Dedham police detecive Robert
Walsh,which you failed to disclose to me when you organized my company and your advice
that I engage in conversation with him.

I have been engaged with him and he is willing to ?sell? me the mark.
Unfortanatly it is not worth the paper it is written on at this point because of a federal
service mark which you also failed to disclose to me when you organised my company.

This issue is not closed at all and you will hear from my Attorny as to your responsibilty
in this matter when it is determined.

000025

1

# EXHIBIT 9

*Thomas J Reilly*

William solutions Inc.
508-XXX-XXXX
william.solutions@...



*March 27, 2005*

Attorny Fraine,

*I have received your letter and I am quite confused by the timing of it, it would seem way to councidental that you happen to write me on this subject while I am imbroiled in a federal lawsuit for a trademark infringement*

*Regarding the service mark you inquire about held by Dedham police detecive Robert Walsh, which you failed to disclose to me when you organized my company and your advice that I engage in conversation with him.*

*I have been engaged with him and he is willing to "sell" me the mark.*

*Unfortanatly it is not worth the paper it is written on at this point because of a federal service mark which you also failed to disclose to me when you organised my company.*

*This issue is not closed at all and you will hear from my Attorny as to your responsibilty in this matter when it is determined*

*Sincerely*

*Signature*

000074

# EXHIBIT 10



**Wildlife Solutions Inc.**

**45 Sterling St  #27**

**West Boylston Ma 01583**

*May 1st 2005*

**Minutes and agenda of the annual meeting of the Board of Directors for Wildlife Solutions Inc. in accordance with MGL chapter 156B**

9:00 AM. Reading, correction and acceptance of minutes from previous meeting dated may 1st 2004

9:15 AM      Review of conversation with Michele Fafara regarding her "notice" to move on sometime in the upcoming summer months and review of application for employment and decision to move forward with the decision to hire Kevin Coyne to replace Michele.

9:30 AM      Review of conversations with Tommy Reilly regarding his future with the company.

9:35 AM  review of decision to move the office to 45 Sterling St. in West Boylston and decision to file new address with the secretary of state without the use of Attorney Fraine if possible

9:45 AM  Review of Michele Fafara's persistent tardiness and constant call backs on her jobs , balanced against  her ability to sell work and client skills, decision to speak to Michele about being Thorough on jobs, and more respectful of company equipment, review of conversation regarding lack of enthusiasm and general "not caring"

10:00 AM    Review of conversation with  Diane Reilly, regarding her decision to work for an outside company and to not be involved full time with the company, but to work occasionally as part time data entry,.

000043

**10:15 AM** Drafting and accepting the following narrative into the company minutes outlining the legal issue's that have plagued this company due to the neglect of duties, and malpractice of Attorney Fraine and the decisions that were made as the issue progressed.

Narrative

1. During the first week of November, Received a letter from Florida attorney Michael Leetzow Informing Wildlife Solutions Director Thomas Reilly of a Federal trademark violation and giving us ten days to halt the use of the name Wildlife Solutions

2. During the 3rd week of November received a phone call of a extremely threatening and confrontational nature from said Attorney assuring us of his intention to file a federal lawsuit, and unreasonable demands to cease and desist doing business as wildlife solutions immediately or face the impending federal suit and a personal lawsuit to cover the costs of the suit.

3. During the 3rd week of November received a letter from said attorney implying that we knew about his client and somehow that we attempted to obtain a license, from them and were denied and the letter went on to insist that we immediately cease all use of the name and in fact turn over a registered domain.

4. A decision was reached that Attorney Leetzow was completely unreasonable during his conversations and that his demands to stop doing business were also completely unreasonable ███████████████████████████████████

5. During the 3rd week of November after having been confronted by said Attorney regarding confusion between the companies and acting as Director of the corporation and in good faith with the sole purpose of eliminating any possibility of confusion between the 2 companies, one being based in Florida and one being based in Massachusetts the Director did attempt to file for trademark protection including the word "Massachusetts". which in fact would have ended any implication of wrong doing, and further that the director ordered to website posted under the domain wildlifesolutions.biz be removed by the host as an act of good faith to further eliminate any chance of confusion.

6. ███████████████████████████████████

000044



7. During the week of Christmas vacation that Attorney Leetzow bombarded Wildlife Solutions Director Thomas Reilly with threatening phone calls.

8. During the first week of Jan. 05 that Wildlife Solutions Director Thomas Reilly asked for time for advice of counsel and name consideration be granted and Attorney Leetzow verbally agreed to April 1st.

9. 

10. That this matter remains active and decisions continue to be made by Wildlife Solutions Director Thomas Reilly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and in the best interest of this company and that further narratives are impending

11:15 AM   Review of company finances

11:30 AM Review of Accountants tax preparation, extension, corporate report, and decision to accept of Tim Harrington of John E. Graham & associates as the new Accountant for this company

11:45 AM Adjournment

# EXHIBIT 11

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Rich@Farrelllaw.com
Marlborough, MA 01752
(508) 358-5411
Fax: (508) 358-7787

October 5, 2005

By Email and First Class Mail

Adam Kessel, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

RE:     Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
        United States District Court (MA) No. 05-CV-10180 FDS

Dear Mr. Kessel:

I received your letter dated October 3, 2005. I expressly consent to the filing of the Joint Protective Order.

With regard to the production of documents, there are a few separate issues to address. I will provide that which Wildlife Massachusetts actually has in its possession by this Friday. However, with regard to any profit/loss or other cost statements for 2005, they have not been started at this point, so any such reports will not be done until the accounting work is done. I have instructed my client that it is important that the data be produced as soon as possible, but I am informed it cannot be completed by Friday. For that matter, the reports detailing profit/loss for 2003 and 2004 have not been done yet, but I will send them to you as soon as they are generated. Mr. Reilly is also in the process of obtaining the S Corp documentation for his tax returns.

With regard to Response 12 to your Request for (Wildlife) Documents, there are actually not any such documents at this time. I responded as I did because I intend to send a "claim letter" to Attorney Frain at some point soon, and consistent with my continuing obligation to produce documents, I will be forwarding a copy of that to you.

My client is currently assembling those invoices and "tear sheets" from Verizon that are within the possession of Wildlife Solutions, Inc., and I hope to send them along by Friday. I will confirm what he has obtained on that date.

I believe that I have sent most of the rest of the documents requested last Friday. The only remaining production issue would be inspection of the Truck and Shirts used by Wildlife employees. It seems that it would be convenient for you to inspect these items at the same time that you depose Mr. Reilly, assuming you intend to do so.

-1-

Kindly contact me at your earliest opportunity if I have omitted anything or you have any questions. Thank you for your anticipated cooperation.

Very truly yours,

Richard Farrell

cc:     Client

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILDLIFE SOLUTIONS, INC.,
   a Florida Corporation,

        Plaintiff,

v.

THOMAS J. REILLY

and

WILDLIFE SOLUTIONS, INC.,
   a Massachusetts Corporation,

        Defendants.

Civil Action No. 1:05-cv-10180-FDS

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF
## DOCUMENTS AND THINGS TO DEFENDANT REILLY

Plaintiff, Wildlife Solutions, Inc. of Florida, ("Wildlife Florida" or "Plaintiff"), pursuant

to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant, Thomas J.

Reilly, ("Reilly" or "Defendant"), produce for inspection and copying the documents and things

enumerated below, within thirty days after service hereof, at the offices of Wolf, Greenfield &

Sacks, P.C., 600 Atlantic Avenue, Boston, MA, 02210.

### INSTRUCTIONS AND DEFINITIONS

1.      Documents should be produced as they are kept in the usual course of business or

organized and labeled to correspond with the numbered categories of this request.

2.      Whenever the terms "documents" or "all documents" are used herein, these terms

are meant to include all documents available to Reilly and further to include, without limitation,

any written, recorded, graphic, or printed matter, in whatever form, whether printed and/or

produced by hand or any other process, specifically including (1) all originals, copies or drafts,

and (2) originals, copies or drafts on which appear any notes or writings placed thereon after the document was first printed, typed, recorded, or made into graphic matter, however produced or reproduced, in the actual or constructive possession of Reilly, including, without limitation, any letters, telegrams, memoranda, writings, circulars, monograph, bulletins, manuals, speeches, audio and video tapes, drawings, blueprints, recordings, computer discs or tapes, computer electronic or optical memory devices in readable form, computer printouts, computer electronic messages, notes, correspondence, communications of any nature, summaries of records of conversations or conferences, information which can be retrieved by any process, test and/or analysis, reports and data sheets, specifications, sketches, minutes or reports and/or summaries or interviews, reports and/or summaries of investigations, agreements and contracts, brochures, pamphlets, advertisements, letters to the trade, and including any tangible things within the scope of Rule 34(a)(1), Federal Rules of Civil Procedure.

3.      With respect to any document withheld from production upon a claim of privilege, state for each such document:

> (A)    the type of document;
>
> (B)    the date of the document;
>
> (C)    the name, address and job title of the author of the document;
>
> (D)    the name, address and job title of each person who received a copy of the document;
>
> (E)    a summary of the subject matter and the circumstances surrounding the creation of the document in sufficient detail as to enable Wildlife Florida to evaluate the privilege claimed; and

     (F)    the present whereabouts of the document together with the name, address and title of the custodian thereof.

    4.    This request for production of documents shall deemed to be continuing; if, after producing documents, Reilly becomes aware of documents responsive to this request, such documents shall be produced whether such documents were newly discovered, newly created or otherwise.

    5.    As used herein, "Wildlife Florida's Mark" refers to Wildlife Florida's mark WILDLIFE SOLUTIONS in any stylization.

    6.    As used herein, "Reilly's Marks" refers to Reilly's marks WILDLIFE SOLUTIONS and MASSACHUSETTS WILDLIFE SOLUTIONS in any stylization.

    7.    As used herein, "Reilly's Trademark Application" refers to Reilly's U.S. Trademark application for the mark MASSACHUSETTS WILDLIFE SOLUTIONS, filed with the U.S. Trademark Office as Application No. 78/518,184.

    8.    As used herein, "Reilly's Services" refers to each and every product or service that Reilly has ever sold, offered for sale, promoted, or rendered under or in connection with Reilly's Marks, including proof of use in interstate commerce.

## DOCUMENTS AND THINGS REQUESTED

REQUEST NO. 1

All documents and things the identity of which are requested in Plaintiff's Interrogatories to Defendant served contemporaneously herewith, segregated by interrogatory number.

REQUEST NO. 2

All documents and things reviewed and/or relied upon by Reilly to respond to Plaintiff's Interrogatories to Defendant, segregated by interrogatory number.

REQUEST NO. 3

All documents and things relating to the creation, selection, development, modification, earliest use, searching, clearance, or evaluation of Reilly's Marks, including the results of any investigation or search.

REQUEST NO. 4

All documents and things relating to the adoption, use, and application for registration by Reilly of Reilly's Marks, including federal and state registrations.

REQUEST NO. 5

All documents and things relating to any other opposition, inter partes proceeding, or litigation involving Reilly's Marks, including agreements resolving same.

REQUEST NO. 6

All documents and things relating to any objection or complaint by a third party regarding Reilly's Marks, including agreements resolving same.

REQUEST NO. 7

All documents and things relating to, or constituting, any plans, market studies, consumer research, evaluations or studies relating to the actual or proposed use of Reilly's Marks from date of conception to present.

REQUEST NO. 8

All documents and things relating to Reilly's Trademark Application.

REQUEST NO. 9

All documents and things relating to Reilly's decision to change from the mark PAC OF HUDSON and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.

REQUEST NO. 10

All documents and things, including, but not limited to, any search reports or opinions, relating to any trademark or service mark search conducted by or for Reilly with respect to Wildlife Florida's Mark, Reilly's Marks, or marks similar thereto containing the words WILDLIFE or SOLUTIONS.

REQUEST NO. 11

All documents and things comprising or relating to any opinion of counsel on which Reilly intends to rely in this lawsuit.

REQUEST NO. 12

All documents and things relating to any complaint, litigation, mediation, or other claim or process against any attorney with respect to Reilly's decision to change marks from PAC OF HUDSON and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.

876720.1

REQUEST NO. 13

All documents and things relating to any surveys or polls that were conducted by or for Reilly to determine actual confusion or likelihood of confusion between Wildlife Florida's Mark and Reilly's Marks.

REQUEST NO. 14

All documents and things relating to the actual and projected sales, number of units and dollar volume of Reilly's Services.

REQUEST NO. 15

All documents and things relating to any use and/or proposed use of Reilly's Marks on or in connection with Reilly's Services.

REQUEST NO. 16

Representative samples of all advertisements, including, but not limited to, advertisements in newspapers, magazines, radio, television, catalogs and brochures produced by or on behalf of Reilly, featuring and/or relating to Reilly's Marks.

REQUEST NO. 17

All documents and things relating to the actual and projected expenditures for advertising Reilly's Services.

REQUEST NO. 18

All documents and things relating to Reilly's first awareness of Wildlife Florida's Mark.

REQUEST NO. 19

All documents and things relating to Wildlife Florida or Wildlife Florida's Mark.

REQUEST NO. 20

All documents and things relating to the subject matter, facts or circumstances as to which each expert employed by Reilly in connection with this litigation is expected to testify.

REQUEST NO. 21

All documents and things relating to any instance of a person having been confused, mistaken or deceived as to whether any product or service offered for sale or sold by Wildlife Florida under Wildlife Florida's Mark were those of Reilly and/or related to Reilly's Marks, or vice-versa.

REQUEST NO. 22

A sample of each different label, package, container, brochure, stationery, price list, advertisement, article and promotional item relating to or bearing Reilly's Marks.

REQUEST NO. 23

All documents and things relating to the sales price or projected sales price of each of Reilly's Services.

REQUEST NO. 24

All documents and things relating to the channels of trade through which Reilly's Services have been and will be marketed or distributed.

REQUEST NO. 25

All documents and things relating to the class of purchasers to which Reilly's Services have been and will be marketed or sold.

REQUEST NO. 26

All documents and things relating to all advertising media which was used or may be used to promote Reilly's Services.

REQUEST NO. 27

All documents and things relating to projected or budgeted annual expenditures for advertising or promoting Reilly's Services during the past three years and each of the next three years and the advertising media in which such promotion is anticipated to take place.

REQUEST NO. 28

All documents and things relating to all surveys, polls, tests, focus group studies, or other market studies that Reilly has conducted, or plans to conduct, for possible use in this Litigation or for purposes of promoting or selling Reilly's Services.

REQUEST NO. 29

All documents and things relating to any communication, whether oral or written, that suggests, implies or infers any connection or association between Reilly and Wildlife Florida, and/or Reilly's Mark and Wildlife Florida's Mark, or that inquires as to whether there is or may be such a connection or association.

REQUEST NO. 30

Documents sufficient to determine Reilly's gross sales in dollars of Reilly's Services since the beginning of Reilly's use of Reilly's Marks to the present.

REQUEST NO. 31

Documents sufficient to determine Reilly's costs in providing Reilly's Services since the beginning of Reilly's use of Reilly's Marks to the present.

REQUEST NO. 32

Documents sufficient to determine Reilly's profits from Reilly's Products from the beginning of Reilly's use of Reilly's Marks to the present.

REQUEST NO. 33

All documents and things Reilly intends to rely on in this lawsuit.

WILDLIFE SOLUTIONS, INC.,
A Florida Corporation

By its attorneys,

Date: August 9, 2005

_____
Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
Wolf, Greenfield & Sacks, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
FAX: (617) 646-8646

Michael Leetzow (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing PLAINTIFF'S FIRST SET OF

REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT

REILLY was served by mail on counsel for Defendant, this 9th day of August, 2005 to:

> Mr. Richard J. Farrell, Jr.
> Farrell Law
> 197M Boston Post Road
> West 177
> Marlborough, MA  01752

Adam J. Kessel

# EXHIBIT 13

**Kessel, Adam**

---

| | |
|---|---|
| **From:** | Kessel, Adam |
| **Sent:** | Thursday, September 15, 2005 10:26 AM |
| **To:** | 'rich@farrelllaw.com'; 'malawyer@yahoo.com' |
| **Cc:** | 'Michael L. Leetzow' |
| **Subject:** | Wildlife v. Reilly - Discovery |

Richard:

I'm writing to memorialize our telephone conference from yesterday afternoon. In our discussion, you indicated that you had not received the discovery requests we served on August 9, 2005, and that you would check with your post office box to see if there was any problem there.  You also agreed to provide us with your responses to all of our outstanding discovery requests by no later than Wednesday, September 21, 2005, and that you would serve your responses both by mail and FAX on or before that day.

We re-sent our discovery requests and initial disclosures by FAX yesterday afternoon (a total of 34 pages). Please let us know if for some reason you did not receive this second transmission; otherwise, we will expect your responses by September 21.

Regards,

Adam Kessel
akessel@wolfgreenfield.com
direct dial 617.646.8360
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax

This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.

# EXHIBIT 14

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Marlborough, MA 01752
Fax: (508) 358-7787

Rich@Farrelllaw.com
(508) 358-5411

September 20, 2005

Michael Leetzow, Esq.
5213 Shoreline Drive
Sanford, FL 32771

Adam Kessel, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

RE:    Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
       United States District Court (MA) No. 05-CV-10180 FDS

Dear Sirs:

I have reviewed your discovery requests, and I have gone over them with my client. Unfortunately, as I mentioned last week, my client was hospitalized and I was unable to actually meet with him until last evening. We reviewed the interrogatories and requests, but he needs additional time to complete both the Answers and Document Production.

I am hereby requesting an additional extension of 20 days to complete the Answers to Interrogatories and Responses to Requests for Documents. I apologize for the inconvenience.

On another matter, you forwarded to me a Proposed Stipulated Protective Order. At the time, I was saw no reason why such an order would be necessary. However, since you have requested financial information from my client, I would be agreeable to some type of Protective Order. However, I will not stipulate to the Proposed Order as written, since there should not be any documentation in this case that would need "Attorneys Only" designation, and I will not stipulate to an Order that withholds information from my client.

Kindly contact me at your earliest opportunity so that we can resolve these matters. Thank you for your anticipated cooperation.

Very truly yours,

Richard Farrell

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Marlborough, MA 01752
Fax: (508) 358-7787

Rich@Farrelllaw.com
(508) 358-5411

## FACSIMILE TRANSMITTAL

Recipient:          Adam J. Kessel

Fax Number:         617-646-8646

From:               Richard Farrell, Jr.

Date:               September 20, 2005

RE:                 Wildlife Solutions, Inc.

Pages:              2

Comments:

    I am requesting an additional extension for time to answer, and I also would like to speak with you and/or Atty. Leetzow at your convenience about the "definitions" in your requests.

    If you have any questions, please contact me.

If you do not receive all pages, please call (508) 358-5411

ATTN: The page(s) comprising this facsimile transmission contain confidential information from Richard J. Farrell, Jr. and/or Farrell Law.  This information is intended solely for the use by the individual or entity named as the recipient.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this transmission is prohibited.  If you have received this transmission in error, please notify us by telephone so we may arrange to retrieve this transmission at no cost to you.

# EXHIBIT 15

**Kessel, Adam**

| | |
|---|---|
| **From:** | Kessel, Adam |
| **Sent:** | Tuesday, September 20, 2005 4:20 PM |
| **To:** | 'rich@farrelllaw.com'; malawyer@yahoo.com |
| **Cc:** | 'Michael L. Leetzow' |
| **Subject:** | Wildlife Solutions Discovery |

Richard:

I'm writing to memorialize our telephone conference from this afternoon. You requested a
further extension on discovery responses, and we agreed to extend your time to respond to
our First Set of Interrogatories and First Set of Document Requests to next Friday,
September 30.  We expect you will serve your responses by FAX and mail before the close of
business on that date.

We also discussed the proposed protective order, and you agreed to review the protective
order language again in light of our conversation and get back to us today or tomorrow. We
hope that you will agree to the order as currently proposed since it will protect the
confidential business information of both parties, who are competitors. If there is any
dispute about the designation of a particular document, it would make more sense to
resolve that dispute in the context of an actual document, rather than in the abstract.

I look forward to hearing back from you on the protective order and receiving your
discovery responses by next Friday.

Adam Kessel
akessel@wolfgreenfield.com
direct dial 617.646.8360
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax

This e-mail message and any attachments may contain confidential or privileged
information. If you are not the intended recipient, please notify me immediately by
replying to this message. Please destroy all copies of this message and any attachments.
Thank you.

# EXHIBIT 16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILDLIFE SOLUTIONS, Inc. (of Florida)

v.

Civ. No.  05-CV-10180 FDS

WILDLIFE SOLUTIONS, Inc. and
THOMAS J. REILLY

## DEFENDANT THOMAS J. REILLY'S RESPONSE
## TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed.R.Civ.P. 34, the defendant Thomas J. Reilly of Massachusetts (hereafter "Mr. Reilly") hereby responds to Plaintiff's First Request for Production of Documents as follows:

### GENERAL OBJECTIONS

Each document request is responded to subject to the general objections set forth below.

i.    Mr. Reilly objects to the document requests to the extent that they call for the production of documents or disclosure of information protected by the attorney-client privilege, or the work-product privilege, or information which is otherwise not discoverable under Fed.R.Civ.P. 26 and 34.

ii.   Mr. Reilly objects to the instructions set forth in the document requests to the extent that the requirements they seek to impose are overly broad, unduly burdensome and oppressive.

These responses are based on the present knowledge of Mr. Reilly.  Mr. Reilly reserves the right to supplement, amend or otherwise change these responses in the event that discovery reveals facts that would justify such supplementation, amendment or change.

## INDIVIDUAL RESPONSES AND OBJECTIONS

Subject to its General Objections, Mr. Reilly specifically responds to plaintiff's enumerated document requests as follows:

### REQUEST NO. 1

All documents and things the identity of which are requested in Plaintiff's Interrogatories to Defendant served contemporaneously herewith, segregated by interrogatory number.

**Response**:    There are no such documents or things.  The Articles of Incorporation for Wildlife Solutions, Inc. shall be provided.

### REQUEST NO. 2

All documents and things reviewed and/or relied upon by Reilly to respond to Plaintiff's Interrogatories to Defendant, segregated by interrogatory number.

Response:    There are no such documents.

### REQUEST NO. 3

All documents and things relating to the creation, selection, development, modification, earliest use, searching, clearance, or evaluation of Reilly's Marks, including the results of any investigation or search.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no "Reilly's Marks" as defined by the plaintiff.

### REQUEST NO. 4

All documents and things relating to the adoption, use, application for registration by Reilly of Reilly's Marks, including federal and state registrations.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

## REQUEST NO. 5

All documents and things relating to any other opposition, inter partes proceeding, or litigation involving Reilly's Marks, including agreement resolving same.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

## REQUEST NO. 6

All documents and things relating to any objection or complaint by a third party regarding Reilly's Marks, including agreements resolving same.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

## REQUEST NO. 7

All documents and things relating to, or constituting, any plans, market studies, consumer research, evaluation or studies relating to actual or proposed use of Reilly's Marks from date of conception to present.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

## REQUEST NO. 8

All documents and things relating to Reilly's Trademark Application.

Objection:    Mr. Reilly has not made a Trademark Application on behalf of himself personally,

but made application on behalf of Wildlife Solutions, Inc.  Mr. Reilly shall

provide the request by the Trademark Commission to properly remove his name

from the application on behalf of Wildlife Solutions, Inc.

REQUEST NO. 9

All documents and things relating to Reilly's decision to change from the mark PAC of Hudson and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.

Objection:    Mr. Reilly has never used the marks Wildlife Solutions or Massachusetts Wildlife Solutions. This request is overly vague. The only document responsive to this request would be the Articles of Incorporation for Wildlife Solutions, Inc.

REQUEST NO. 10

All documents and things, including, but not limited to, any search reports or opinions, relating to any trademark or service mark search conducted by Reilly with respect to Wildlife Florida's Mark, Reilly's Marks, or marks similar thereto containing the words Wildlife or Solutions.

Objection:    There are no "Reilly's Services" as defined by the plaintiff. There are no "Reilly's Marks" as defined by the plaintiff. Notwithstanding this objection, the defendant responds as follows:

Response:    There are no such documents within the defendant's custody or control.

REQUEST NO. 11

All documents and things comprising or relating to any opinion of counsel on which Reilly intends to rely in this lawsuit.

Response:    There are no such documents.

REQUEST NO.12

All documents and things relating to any complaint, litigation, mediation, or other claim or process against any attorney with respect to Reilly's decision to change marks from  PAC of

Hudson and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS

and/or MASSACHUSETTS WILDLIFE SOLUTIONS.


Objection:      Mr. Reilly has never "changed marks" from PAC of Hudson and/or Problem

Animal Control of Hudson, because he does not use the marks Wildlife Solutions

and/or Massachusetts Wildlife Solutions, which are used by Wildlife Solutions,

Inc. Notwithstanding this objection, the defendant responds as follows:

Response:      There are no such documents within the defendant's custody or control.


## REQUEST NO. 13

All documents and things relating to any surveys or polls that were conducted by or for

Reilly to determine actual confusion or likelihood of confusion between Wildlife Florida's Mark

and Reilly's Marks.

Objection:      There are no "Reilly's Marks" as defined by the plaintiff.


## REQUEST NO. 14

All documents and things relating to the actual and projected sales, number of units and

dollar volume of Reilly's Services.

Objection:      There are no "Reilly's Services" as defined by the plaintiff.


## REQUEST NO. 15

All documents and things relating to any use and/or proposed use of Reilly's Marks on ir

in connection with Reilly's Services.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO. 16

Representative samples of all advertisements, including but not limited to, advertisements

in newspapers, magazines, radio, television, catalogs and brochures produced by or on behalf of

Reilly, featuring and/or relating to Reilly's Marks.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.17

All documents and things relating to the actual and projected expenditures for advertising

Reilly's services.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.18

All documents and things relating to Reilly's first awareness if Wildlife Florida's Mark.

Response:     A copy of Attorney Michael Leetzow's letter to Mr. Reilly shall be provided.

REQUEST NO.19

All documents and things relating to Wildlife Florida or Wildlife Florida's Mark.

Response:     There are no such documents within the defendant's custody or control which

have not been produced in response to Request No. 18.

REQUEST NO.20

All documents and things relating to the subject matter, facts or circumstances as to

which each expert employed by Reilly in connection with this litigation is expected to testify.

**Response**:     Mr. Reilly has not yet determined whether to retain an expert for this litigation.

REQUEST NO.21

All documents and things relating to any instance of a person having been confused, mistaken or deceived as to whether any product or services offered for sale or sold by Wildlife Florida under Wildlife Florida's Mark were those of Reilly and/or related to Reilly's Marks, or vice-versa.

Objection:     There are no "Reilly's Services" as defined by the plaintiff. There are no

               "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.22

A sample of each different label, package, container, brochure, stationary, price list, advertisement, article, and promotional item relating to or bearing Reilly's Marks.

Objection:     There are no "Reilly's Services" as defined by the plaintiff. There are no

               "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.23

All documents and things relating to the sales price or projected sales price of each of Reilly's Services.

Objection:     There are no "Reilly's Services" as defined by the plaintiff. There are no

               "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.24

All documents and things relating to the channels of trade through which Reilly's Services have been and will be marketed or distributed.

Objection:     There are no "Reilly's Services" as defined by the plaintiff. There are no

               "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.25

All documents and things relating to the class of purchasers to which Reilly's Services have been marketed or sold.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no "Reilly's Marks" as defined by the plaintiff.

REQUEST NO. 26

All documents and things relating to all advertising media which was used or may be used to promote Reilly's Services.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.27

All documents and things relating to projected or budgeted annual expenditures for advertising or promoting Reilly's Services during the past three years and of the next three years and the advertising media in which such promotion is anticipated to take place.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.28

All documents and things relating to all surveys, polls, tests, focus group studies, or other market studies that Reilly has conducted, or plans to conduct, for possible use un litigation or for purposes of promoting or selling Reilly's Services.

Objection:     There are no "Reilly's Services" as defined by the plaintiff.  There are no "Reilly's Marks" as defined by the plaintiff.

REQUEST NO.29

All documents and things relating to any communication, whether oral or written, that suggests, implies or infers any connection or association between Reilly and Wildlife Florida, and/ or Reilly's Mark and Wildlife Florida's Mark, or that inquires as to where there may be such a connection or association.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.30

Documents sufficient to determine Reilly's gross sales in dollars of Reilly's Services since the beginning of Reilly's use of Reilly's Marks to present.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.31

Documents sufficient to determine Reilly's costs in providing Reilly's Services since the beginning of Reilly's use of Reilly's Marks to present.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.32

Documents sufficient to determine Reilly's profits from Reilly's Products from the beginning of Reilly's use of Reilly's Marks to present.

Objection:    There are no "Reilly's Services" as defined by the plaintiff.  There are no

"Reilly's Marks" as defined by the plaintiff.

REQUEST NO.33

    All documents and things Reilly intends to rely on in this lawsuit.

Response:    All such documents shall be produced, including corporate minutes and Articles

of Incorporation as to Wildlife Solutions, Inc.

Objections by:

Richard J. Farrell, Jr.
MA BBO# 638017
197M Boston Post Road West #177
Marlborough, MA 01752
508-358-5411

Signed under the pains and penalties of perjury this 30 day of September, 2005.

Thomas J. Reilly,
President,
Wildlife Solutions, Inc. (Massachusetts)

# EXHIBIT 17

# MICHAEL L. LEETZOW, P.A.
## ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE: 407-489-0606 - MOBILE
    407-302-9970 - OFFICE
FAX:   407-302-9973
E-MAIL: MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

WWW.LEETZOW.COM

November 1, 2005

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road West
#177
Marlborough MA 01752

**Via Facsimile and
Certified Mail, Return
Receipt Requested**

    RE:    Wildlife Solutions, Inc. v. Wildlife Solutions, Inc.

Dear Mr. Farrell:

    We have received the two different document productions (Bates numbered 000000-000072) and your clients' responses to the First Request for Production of Documents and First Set of Interrogatories. Those responses raise several issues that must be clarified, which are enumerated below and separated by Response.

    In those two document productions were documents that were redacted, apparently based on the attorney-client privilege. As a result, a privileged document log must be provided immediately.

Wildlife Solutions' Document Production

    1.    It appears that no search was performed of Mr. Fraine's files. Any relevant documents in Mr. Fraine's possession are under Mr. Reilly's control and any such documents that are responsive to any of our requests or interrogatories must be produced immediately.

    2.    Document 000025 appears to be an email from Mr. Reilly to you in response to a letter from Mr. Fraine. However, the letter from Mr. Fraine that elicited this email was not produced. Please produce the letter from Mr. Fraine and clarify whether the letter referred to in the email was sent to Mr. Fraine. All correspondence and other documents relating to Document 000025 must be produced.

    3.    Document Request No. 3 – no website pages or other materials relating to your clients' websites were produced. This Request would include documents covering the registration of any websites and any searches conducted by your

Mr. Richard J. Farrell, Jr.
November 1, 2005
Page 2

clients to determine available domain names for use by Defendants, as well as
all present and past versions of any websites created by Defendants. Past
versions of websites should be produced in electronic format if available in
order to properly preserve all metadata.

4.      Document Request No. 4 – The response includes only federal registrations,
        but does not indicate if any state papers were submitted. All documents
        relating to state trademark registrations must be produced.

5.      Document Request Nos. 15, 16, 22, & 26 – No website pages or other
        Internet-related materials were produced that have the WILDLIFE
        SOLUTIONS mark on them.

6.      Document Request No. 17 – This request requires that your client provide
        projected expenditures for advertising, not just past expenditures. Please
        provide projected expenditures.

7.      Document Request No. 19 – While documents have been produced regarding
        the correspondence from Wildlife Solutions, Inc. (Florida), those were not
        mentioned in this response. Please confirm that any documents in your
        clients' possession have been produced. See Response to Document Request
        No. 6.

8.      Document Request No. 23 – All price lists and worksheets should have been
        produced as they would be responsive to this request. Please produce those
        documents or confirm that they do not exist.

9.      Document Request No. 24 – Plaintiff does not understand the objection. The
        request is clear and is not overly broad. If the issue is the definition of
        "channels of trade," Plaintiff asserts that the term is well defined in the area of
        trademark law. Plaintiff requests supplemental, responsive answer
        immediately.

10.     Document Request No. 25 – Plaintiff does not understand the objection. The
        request is clear and is not overly broad. If the issue is the definition of "class
        of purchasers," Plaintiff asserts that the term is well defined in the area of
        trademark law. Plaintiff requests a supplemental, responsive answer
        immediately.

11.     Document Request No. 27 – These documents do not appear to be in your
        production. If these documents were produced, provide the appropriate Bates
        ranges for these documents. If they were not produced, please supplement
        your production as promised.

Mr. Richard J. Farrell, Jr.
November 1, 2005
Page 3

### Mr. Reilly's Document Production

1.  Document Request No. 8 – Please provide the request by Mr. Reilly mentioned in the response immediately.

2.  Document Request No. 9 - Any documents that reflect the decision to change from PAC of Hudson to Wildlife Solutions must be produced, and any that are noted in the minutes of PAC of Hudson are under Mr. Reilly's control. Moreover, on www.pacofhudson.com, it appears as if there was simply a name change, rather than a new company formed. Please supplement this response immediately.

3.  Document Request No. 18 –All documents that were discovered during the registration of the website www.wildlifesolutions.biz should have been produced. Please produce such documents immediately or confirm that they do not exist.

4.  Document Request No. 29 – Your objections were directed to "Reilly's Services" and "Reilly's Mark." However, the request was also directed to connections or associations between Reilly and Wildlife Florida. Please provide any such documents and things immediately.

### Wildlife Solutions' Interrogatory Responses

1.  Plaintiff's interrogatories define "Wildlife Massachusetts' Marks" as "Wildlife Massachusetts' marks WILDLIFE SOLUTIONS and MASSACHUSETTS WILDLIFE SOLUTIONS in any stylization." This definition is perfectly clear. Please clarify or withdraw your objection to this definition.

2.  Interrogatory No. 2 – Plaintiff does not understand Defendant's objection regarding the alleged conclusion of law regarding what constitutes a mark. Please clarify.

3.  Interrogatory No. 6 – Please clarify what "locally" means. Each of the Verizon yellow pages books has a specific coverage area and these need to be identified. Defendant's objection that "a list of every place where a Massachusetts corporation may have been marketed, or may be marketed in the future" is misplaced. Plaintiff has not requested a list of every place where a Massachusetts Corporation has marketed, but where Defendant has marketed. Defendant's objection regarding limitation on time or locality is also misplaced. Clearly, the interrogatory request is limited to the time during which Defendant has been offering Wildlife Massachusetts' Services. With

Mr. Richard J. Farrell, Jr.
November 1, 2005
Page 4

respect to the locality limitation, Defendant's use of services anywhere in
United States is relevant in this trademark infringement matter. Plaintiff does
not understand the objection regarding "channels of trade." The term is well
defined in the area of trademark law. Plaintiffs request a supplemental,
responsive answer immediately.

4. Interrogatory No. 7 - Subpart (D) requests the geographic areas in United
States in which products or services have been sold or are likely to be sold.
Defendant's response that it is "ready, willing and able to provide services in
most of Massachusetts, New Hampshire, and Connecticut, but does not have a
strictly delineated service area" is incomplete. Please supplement your
response immediately with a list of those geographic areas where products and
services have been provided. See also #3 above.

5. Interrogatory Nos. 10 & 13 - please confirm or deny that Defendant also
advertises on the web page www.pacofhudson.com, and any other locations of
advertising.

6. Interrogatory No. 15 - Defendant's answers regarding Affirmative Defense 1
and 2 are insufficient. Defendant must provide a substantive answer to this
contention interrogatory absent a protective order. By signing the Answer,
Defendant must have had some factual basis for asserting both of these
defenses rather than hoping that discovery would provide some support for
these defenses. If there are no facts supporting these affirmative defenses,
then Defendant must say so.

7. With respect to the answer or for Affirmative Defense 6, Defendant must
provide all facts that are in its knowledge or possession. Please note that this
is an interrogatory and not a document request, so any facts in any form must
be provided.

<u>Mr. Reilly's Interrogatory Responses</u>

1. Plaintiff does not understand Defendant's general objection iv. In that
objection, defendant indicated that Wildlife Solutions, Inc. does not own such
a trademark. These interrogatories were directed to Mr. Reilly. Please revise
this objection as required.

2. Interrogatory No. 15 - Defendant's answers regarding Affirmative Defense 1
and 2 are incomplete. Defendant must provide a substantive answer to this
contention interrogatory absent a protective order. By signing the Answer,
Defendant must have had some factual basis for asserting both of these
defenses rather than hoping that discovery would provide some support for

Mr. Richard J. Farrell, Jr.
November 1, 2005
Page 5

these defenses. If there are no facts supporting these affirmative defenses, then Defendant must say so.

3. With respect to the answer or for Affirmative Defense 6, Defendant must provide all facts that are in its knowledge or possession. Please note that this is an interrogatory and not a document request, so any facts in any form must be provided.

We would expect these issues to be resolved by the end of this week, November 4, 2005. Please call if you have any questions.

Sincerely,

Michael L. Leetzow

Cc:    Mr. Steve DeMoor
       Mr. Michael A. Albert

**EXHIBIT 18**

## Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Rich@Farrelllaw.com                                    Marlborough, MA 01752
(508) 358-5411                                         Fax: (508) 358-7787

## FACSIMILE TRANSMITTAL

Recipient:       Michael Leetzow, Esq.

Fax Number:      407-302-9973

From:            Richard Farrell, Jr.

Date:            November 11, 2005

RE:              Wildlife Solutions, Inc.

Pages:           4

Comments:

    I am faxing my response to your letter as to the document requests. As to the Interrogatory issues, I will meet with Mr. Reilly early next week, and have the letter to you by Wednesday. I am also attaching my 'demand' to Attorney Frain.

    If you have any questions, please contact me.

If you do not receive all pages, please call (508) 358-5411

ATTN: The page(s) comprising this facsimile transmission contain confidential information from Richard J. Farrell, Jr. and/or Farrell Law. This information is intended solely for the use by the individual or entity named as the recipient. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone so we may arrange to retrieve this transmission at no cost to you.

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Marlborough, MA 01752
Fax: (508) 358-7787

Rich@Farrelllaw.com
(508) 358-5411

November 10, 2005

Michael Leetzow, Esq.
5213 Shoreline Drive
Sanford, FL 32771

RE:    Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
United States District Court (MA) No. 05-CV-10180 FDS

Dear Atty. Leetzow:

I am in receipt of your letter dated November 1, 2005. I will address your points as appropriate. However, as I noted my client was out of town, and I am 'between trials' and have another scheduled next week, so I will not be able to comply with your timeline. I will work to complete responses as soon as possible, since you are waiting on these to complete your next phase of discovery.

The document which was redacted was only redacted as to references to litigation strategy, hiring of counsel, and communications between Mr. Reilly, Attorney Blodgett and/or myself.

This letter addresses the discovery issues presented with regard to the Document Production. When I have the opportunity to confer personally with my client, I will then forward the responses to your Interrogatory questions under separate cover.

Wildlife Solutions Document Production:

1.  Wildlife Solutions, by Thomas Reilly, requested his file from Attorney Frain. As of this date, Attorney Frain has not produced same. I will send a formal request and/or subpoena to get the contents of his file, and copy you on any such correspondence.

2.  The email to which you refer was a draft of a letter Mr. Reilly was going to send to Mr. Frain. As I do not have Mr. Frain's file, and Mr. Reilly does not have a copy of the letter anymore, I don't have the document to produce at this time.

3.  I am not clear as to what you are saying here. Wildlife is not in "possession" of webpages or searches, and Mr. Reilly certainly can't recreate his 'surfing' pattern from 2 years ago. While I will ask again, it is my understanding that I have been provided with all 'hard copies' of anything responsive to your requests except as noted in this letter. As to the website code, I had previously instructed my client to have a disc made of whatever code he has. I shall forewarn you, however, that it is my understanding that there are no 'previous versions' of these web pages because they were simply updated on a rolling basis. I will get clarification from my client upon his return.

4.  There was no state registration, since it is held by another person.

5.    As I stated, I will produce the code such that my client has it. That being said, I am unclear as to whether you are requesting me to print out hard copies of the website pages or requesting the code. In the event that you are requesting the former, I will object for it being unduly burdensome. The website is available for your inspection and copying already, as it is publicly available.

6.    I will ask my client to clarify when he returns from his vacation.

7.    I did not interpret that request to include the letters from Attorney Leetzow. I will appropriately amend my document response after reviewing your letter with my client.

8.    To the extent that you are requesting price lists and worksheets, they do not exist.

9.    Without waiving any objection, the defendant reiterates that his services are offered to property owners, and the only marketing undertaken by Wildlife Massachusetts currently, and in the prospective future, is the listing in the Verizon Yellow Pages and the website. There are no other documents which are responsive to that request.

10.   Without waiving any objection, the defendant reiterates that his services are offered to property owners, and the only marketing undertaken by Wildlife Massachusetts currently, and in the prospective future, is the listing in the Verizon Yellow Pages and the website. There are no other documents which are responsive to that request.

11.   My client is gathering copies of invoices or like evidence of his expenses for advertising in the Verizon Yellow Pages, and will provide them when he has them.

Mr. Reilly's Document Production:

1.    Those documents were produced and numbered 0051-0059.

2.    There are no responsive documents to this request in my clients' custody or control. PAC of Hudson was a sole proprietorship; Mr. Reilly incorporated Wildlife Solutions, Inc. and ceased doing business as PAC of Hudson. However, there were no documents which reflected that change.

3.    There are no such documents in my clients' custody or control.

4.    There are no documents which would be responsive to that request.

Very truly yours,

Richard Farrell

cc: client

# Offices of Farrell Law

Rich@Farrelllaw.com
(508) 358-5411

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Marlborough, MA 01752
Fax: (508) 358-7787

November 10, 2005

Thomas Frain, Esq.
563 Main Street
Bolton, MA 01740

RE:    Wildlife Solutions, Inc. v. Wildlife Solutions, Inc. and Thomas Reilly
       United States District Court (MA) No. 05-CV-10180 FDS

Dear Atty. Frain:

Please be advised that I represent Thomas Reilly and Wildlife Solutions, Inc. with regard to the above captioned federal lawsuit.

You were retained by Mr. Reilly in 2003 to incorporate Wildlife Solutions, Inc. in Massachusetts. As you recall, Mr. Reilly specifically asked you to determine whether the name Wildlife Solutions, Inc. was available and proper for him to incorporate, and you informed him that it was. You filed the Articles of Incorporation with Massachusetts, and billed Mr. Reilly for the Incorporation.

After your incorporation of Wildlife Solutions, Inc., the company proceeded to do business as normal. However, the name "Wildlife Solutions, Inc." was actually the subject of a federally registered Trademark, which you failed to discover. This Trademark predated your filing of the Articles of Incorporation for Wildlife Solutions, Inc. (Massachusetts).

As you may or may not be aware, Wildlife Solutions, Inc. of Florida has filed suit in Federal Court against Wildlife Solutions, Inc. of Massachusetts and Mr. Reilly personally for violation of its registered trademark. As a result of this lawsuit, both defendants have incurred, and are incurring, substantial legal costs to defend this action and take other appropriate actions. Wildlife Solutions, Inc. of Florida has filed extensive discovery in this matter. As you were the Attorney who incorporated Wildlife Solutions, Inc., the plaintiffs have requested all documents which are in your files. Kindly make those documents available to me forthwith so that I may comply with the discovery requests of the plaintiff. If I am not able to produce them in a timely manner, the defendants will incur additional legal fees.

Please contact me immediately to arrange for the delivery of all documents, files or items in your possession which relate to your representation of Mr. Reilly and/or Wildlife Solutions, Inc. Thank you for your anticipated cooperation.

Very truly yours,

Richard J. Farrell

cc:    Wildlife Solutions, Inc.
       Michael Leetzow, Esq.

# EXHIBIT 19

## Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Rich@Farrelllaw.com                                    Marlborough, MA 01752
(508) 358-5411                                         Fax: (508) 358-7787

## FACSIMILE TRANSMITTAL

Recipient:          Michael Leetzow, Esq.

Fax Number:         407-302-9973

From:               Richard Farrell, Jr.

Date:               November 16, 2005

RE:                 Wildlife Solutions, Inc.

Pages:              **4**

Comments:

        I am faxing my response to your letter as to the interrogatories, and have sent by
federal express the remainder of the documents in my clients' custody and control.

        If you have any questions, please contact me.

If you do not receive all pages, please call (508) 358-5411

ATTN: The page(s) comprising this facsimile transmission contain confidential information from Richard
      J. Farrell, Jr. and/or Farrell Law. This information is intended solely for the use by the individual or
      entity named as the recipient. If you are not the intended recipient, be aware that any disclosure,
      copying, distribution or use of the contents of this transmission is prohibited. If you have received
      this transmission in error, please notify us by telephone so we may arrange to retrieve this
      transmission at no cost to you.

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177

Rich@Farrelllaw.com
Marlborough, MA 01752

(508) 358-5411
Fax: (508) 358-7787

November 16, 2005

BY FAX AND FEDERAL EXPRESS

Michael Leetzow, Esq.
5213 Shoreline Drive
Sanford, FL 32771

RE:    Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
United States District Court (MA) No. 05-CV-10180 FDS

Dear Atty. Leetzow:

I am writing in further response to your letter dated November 1, 2005.

On some other matters, the defendant is currently running 4 full page ads which run in excess of $4,000.00 per month. However, next year Wildlife's advertising budget will be dropping considerably because it will cease running the full page advertisements and return to smaller ads. However, because the contracts are ongoing, the defendant has no documents which would reflect this future budgeted expenditures. His current estimate is that his advertising expenditures next year will be approximately $36,000.00.

With regard to the website code, my client's computer which had the code on it crashed, and he has no copies of the actual html code which was posted on the website. The site was created using Notepad, and he intends to download the files and copy them to disc and provide them to you. It is my understanding that the method he will use involves only his browser, and therefore the same code he would save and provide is also available to you presently.

My client went to Attorney Frain's office subsequent to my letter which I copied to you to get whatever documents were in his file. I have enclosed the totality of what he gave to my client, which as you will see consists of three pages. I believe I previously provided the invoices to Wildlife Massachusetts.

I have enclosed the following documents:

| | |
|---|---|
| 73-74 | Documents from Attorney Frain; |
| 75-88 | Verizon Invoices; |
| 89-122 | Business Plan - See below; and |
| 123-125 | Action of Directors. |

In your request for documents to Mr. Reilly, you requested "All documents and things relating to Reilly's decision to change from the mark PAC OF HUDSON and/or PROBLEM ANIMAL CONTROL OF HUDSON to WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS." A similar request was made to Wildlife Solutions, Inc. Both defendants objected (and continue to object) to the document request on the basis that Mr. Reilly

has never used both marks PAC (or its variations) and Wildlife Solutions, and Wildlife Solutions, Inc. never used the mark PAC of Hudson and/or PROBLEM ANIMAL CONTROL OF HUDSON. Without waiving that objection, Mr. Reilly is providing a copy of a business plan predating the incorporation of Wildlife Solutions, Inc. which references the incorporation of Wildlife Solutions, Inc. Also included in that business plan is the "Statement of Sources" for Wildlife Solutions, Inc. reflecting its source of capital as a Bank Loan. In the interests of completeness, the final piece of the business plan includes a summary of services and prices offered by PAC of Hudson shortly before Mr. Reilly incorporated Wildlife Solutions, Inc. Although there are references to an appendix, the only appendix to the business plan actually consists of numbers 114 - 122. As noted above, however, these documents related only to PAC of Hudson and not to Wildlife Solutions, Inc.

<u>Wildlife Solutions Interrogatories</u>:

1.  I withdraw the objection insofar as those definitions were used in responding to the interrogatories.

2.  Defendant maintains that the determination of what constitutes a "mark" is a legal conclusion, not a factual determination. However, the defendant has stated in its answer that it was first notified of Wildlife Florida's Mark by letter from Attorney Leetzow.

3.  The localities that the Verizon Yellow Pages are currently distributed include the following, although Wildlife Massachusetts does not have full information as to where the Yellow Pages may be additionally distributed: Framingham, Marlboro. Worcester. Shrewsbury and Natick/Wayland, all in Massachusetts. Also, Wildlife Massachusetts maintains a web presence, and cannot be sure what localities persons may have accessed that web page or pages from.

4.  Wildlife Massachusetts has provided services in New Hampshire (in 2004), Massachusetts, and Connecticut (in 2004).

5.  Wildlife Massachusetts does currently maintain the web site at www.pacofhudson.com. As you are also aware, Wildlife Massachusetts also maintains a web site at www.wildlifesolutions.biz.

6.  The defendant maintains that the determination of whether a particular set of words, in this case "Wildlife Solutions," is a matter of law where it has received the advice of counsel that the terms are not susceptible of acting as a trademark or servicemark. With regard to Affirmative Defense #1, the defendant provides multiple solutions to wildlife problems, including trapping and providing certain preventative measures to prevent or eliminate wildlife problems or infestations. The words, as used by the defendant Wildlife Massachusetts, clearly and concisely describe the services provided by the corporation, and are not modified in any way to be creative or unique. With regard to Affirmative Defense #2, the defendant notes that the Trademark Office stated that the words "Massachusetts Wildlife," and therefore presumably "Wildlife," are "merely descriptive of a feature or characteristic of the applicant's services." Bates Stamp #053.

7.  The defendant believes that Wildlife Florida is not operating itself in interstate commerce, but rather has agents in other states providing services in a non-employment capacity.

<u>Mr. Reilly's Interrogatories</u>

1.  Objection iv. contains a typographical or clerical error. The objection should have read: **"Mr. Reilly will adopt definition No. 8 referring to "Reilly's Marks," however, to the extent that this definition includes any type of registered trademark, Mr. Reilly does not own such a trademark.** As will be specifically enumerated further, Mr. Reilly has personally and in his individual capacity never used the mark Wildlife Solutions or Massachusetts Wildlife Solutions, as either or both were used only after the incorporation of Wildlife Solutions, Inc. on April 23, 2003."

2.  The defendant maintains that the determination of whether a particular set of words, in this case "Wildlife Solutions," is a matter of law where it has received the advice of counsel that the terms are not susceptible of acting as a trademark or servicemark. With regard to Affirmative Defense #1, the defendant provides multiple solutions to wildlife problems, including trapping and providing certain preventative measures to prevent or eliminate wildlife problems or infestations. The words, as used by the defendant Wildlife Massachusetts, clearly and concisely describe the services provided by the corporation, and are not modified in any way to be creative or unique. With regard to Affirmative Defense #2, the defendant notes that the Trademark Office stated that the words "Massachusetts Wildlife," and therefore presumably "Wildlife," are "merely descriptive of a feature or characteristic of the applicant's services." Bates Stamp #053.

3.  The defendant believes that Wildlife Florida is not operating itself in interstate commerce, but rather has agents in other states providing services in a non-employment capacity.

Very truly yours,

Richard Farrell

cc: client

# EXHIBIT 20

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Massachusetts

Wildlife Solutions, Inc. (A Florida Corporation)

V.

Wildlife Solutions, Inc. (A Mass. Corporation) et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:05-cv-10180-FDS

TO:  Thomas J. Frain, Esq.
     563 Main Street
     Bolton, MA 01740

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE        Wolf, Greenfield, and Sacks, P.C., 600 Atlantic Ave, Boston, MA 02210 | DATE AND TIME         12/5/2005 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)        Attorney for Plaintiff | DATE   11/18/05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Adam J. Kessel, Esq., Wolf, Greenfield, and Sacks, P.C., Boston, MA 02210, 617-646-8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

COMMONWEALTH OF MASS

Wildlife Solutions, Inc. a FL Company

vs.

Thomas J. Reilly et al.

Case Number:  05cv10180

File No.  W0602.50000US00

I, Paul Nardizzi, being duly sworn, depose and say service of the Subpoena for Thomas J.
Frain was made on 11/21/05 at 1341PM EST by serving Administrative Asst. Nicole
Chase in hand at 536 Main St., Bolton, MA 01740.

Signed under the penalties of perjury on 11/21/05,

*Paul Nardizzi*

Paul Nardizzi
17 Clovelly Lane
Framingham MA 01702

## SCHEDULE A

**Definitions/Instructions**

The definitions contained in D. Mass. Local Rule 26.5 are incorporated by reference as though set forth fully herein. Attention is drawn, in particular (but without limitation), to the definitions provided therein of "document," "communication," and "concerning."

The definition of "document" is specifically supplemented (if necessary) to include documents stored in electronic format and email. All electronic documents should be produced in their original format, preserving all metadata.

"Wildlife Mass." means Wildlife Solutions, Inc. of Hudson, Massachusetts and all its predecessors in interest and other affiliated companies, including "Problem Animal Control" and/or "PAC of Hudson."

"Thomas J. Reilly" means Thomas J. Reilly of West Boylston, Massachusetts.

**Requests**

1. All documents and things concerning Wildlife Mass.

2. All documents and things concerning trademark registrations, either Federal or State, done or attempted for Wildlife Mass.

3. All documents and things concerning trademark searches, either Federal or State, done or attempted for Wildlife Mass.

4. All documents and things concerning any opinion of counsel on any trademark issue, done or attempted for Wildlife Mass.

5. All documents and things concerning Internet domain name registrations for Wildlife Mass.

6. All documents and things concerning Internet domain searches for Wildlife Mass.

960316,1

7.   All documents and things concerning any dispute between you and Wildlife Mass. and/or Thomas J. Reilly.

8.   All communication received from or sent to Thomas J. Reilly and/or Wildlife Mass., concerning a dispute about trademark-related legal services.

9.   All documents and things concerning Wildlife Solutions, Inc. of Orlando, Florida and/or any lawsuit between Wildlife Mass. and Wildlife Solutions, Inc. of Orlando, Florida.

# EXHIBIT 21

# THOMAS J. FRAIN
### ATTORNEY AT LAW
563 MAIN STREET
BOLTON, MASSACHUSETTS 01740
TELEPHONE (978) 779-0749
FACSIMILE (978) 779-0761

Thomas J. Frain
Walter J. Hayes, Jr.

December 2, 2005

VIA FACSIMILE (617) 646-8646
AND FIRST CLASS MAIL

Adam Kessel, Esq.
Wolf, Greenfield, and Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

Re:    Wildlife Solutions, Inc. and Thomas Reilly

Dear Attorney Kessel,

This office is in receipt of your subpoena dated November 18, 2005. As you are aware, this office once represented Mr. Thomas Reilly. In reviewing the documents you are seeking per the subpoena, it appears most, if not all, of the documents you are seeking are subject to attorney client privilege and/or attorney work product.

I have requested instructions from Mr. Reilly concerning the privilege. However, as of the time of this letter, we have not received any definitive statement from Mr. Reilly. Therefore, given the broad scope of the subpoena served upon this office and no instructions from Mr. Reilly concerning the privilege, we are regretfully unable to comply with the subpoena request.

Thank you for your time and attention. Please call with any comments or questions.

Sincerely yours,

Walter J. Hayes, Jr., Esq.

WJH/ibm

Cc:    Richard J. Farrell, Esq., Via Facsimile (508) 358-7787 only

# EXHIBIT 22

**Kessel, Adam**

| | |
|---|---|
| **From:** | Rich [rich@farrelllaw.com] |
| **Sent:** | Monday, December 05, 2005 1:51 PM |
| **To:** | Kessel, Adam |
| **Subject:** | RE: Waiver |

I think maybe we got confused,

I told you that my client would waive privilege there, since he already produced all documents from Frain. I also do not object to your subpoena.

I do not have an executed release, which was my reason for the call to you in the first place.

Attorney Frain sent me a release for my client to sign. I will do so and forward it to everyone.

Rich


> -----Original Message-----
> From: Kessel, Adam [mailto:Adam.Kessel@WolfGreenfield.com]
> Sent: Friday, December 02, 2005 3:18 PM
> To: rich@farrelllaw.com
> Cc: michael@leetzow.com
> Subject: Waiver
>
> Rich:
>
> I am writing to follow up on our conversation earlier today.
> You indicated that your client had waived the attorney-client
> privilege with respect to Thomas Frain, and that you did not object to
> our subpoena.
> You also indicated that your client had released Thomas Frain from any
> privilege claims. Could you please provide me with a copy of any
> letter or other document relating to the release for Thomas Frain?
>
> Regards,
>
> Adam Kessel
> akessel@wolfgreenfield.com
> direct dial 617.646.8360
> Wolf, Greenfield & Sacks, P.C.
> 600 Atlantic Avenue
> Boston, Massachusetts 02210-2206
> 617.646.8000 | 617.646.8646 fax
>
> This e-mail message and any attachments may contain confidential or
> privileged information. If you are not the intended recipient, please
> notify me immediately by replying to this message. Please destroy all
> copies of this message and any attachments. Thank you.
>

# EXHIBIT 23

**Kessel, Adam**

| | |
|---|---|
| **From:** | Rich [rich@farrelllaw.com] |
| **Sent:** | Wednesday, December 07, 2005 3:35 PM |
| **To:** | Kessel, Adam |
| **Subject:** | RE: Waiver |

Adam:

The waiver that Frain wants my client to sign is unacceptable.  I am hashing out an acceptable one with him, and should be done with it today.  I will fax you a copy.

Rich


> -----Original Message-----
> From: Kessel, Adam [mailto:Adam.Kessel@WolfGreenfield.com]
> Sent: Wednesday, December 07, 2005 3:32 PM
> To: Rich
> Cc: Michael L. Leetzow
> Subject: RE: Waiver
>
> Rich:
>
> Have you followed up on the release form yet? We need to know the
> status of this matter.
>
> Thanks,
>
> Adam Kessel
> akessel@wolfgreenfield.com
> direct dial 617.646.8360
> Wolf, Greenfield & Sacks, P.C.
> 600 Atlantic Avenue
> Boston, Massachusetts 02210-2206
> 617.646.8000 | 617.646.8646 fax
>
> This e-mail message and any attachments may contain confidential or
> privileged information. If you are not the intended recipient, please
> notify me immediately by replying to this message. Please destroy all
> copies of this message and any attachments. Thank you.
>
> -----Original Message-----
> From: Rich [mailto:rich@farrelllaw.com]
> Sent: Monday, December 05, 2005 1:51 PM
> To: Kessel, Adam
> Subject: RE: Waiver
>
> I think maybe we got confused,
>
> I told you that my client would waive privilege there, since he
> already produced all documents from Frain.  I also do not object to
> your subpoena.
>
> I do not have an executed release, which was my reason for the call to
> you in the first place.
>
> Attorney Frain sent me a release for my client to sign.  I will do so
> and forward it to everyone.
>
> Rich
>
>
> > -----Original Message-----

1

```
> > From: Kessel, Adam [mailto:Adam.Kessel@WolfGreenfield.com]
> > Sent: Friday, December 02, 2005 3:18 PM
> > To: rich@farrelllaw.com
> > Cc: michael@leetzow.com
> > Subject: Waiver
> >
> > Rich:
> >
> > I am writing to follow up on our conversation earlier today.
> > You indicated that your client had waived the attorney-client
> > privilege with respect to Thomas Frain, and that you did
> not object to
>
> > our subpoena.
> > You also indicated that your client had released Thomas
> Frain from any
>
> > privilege claims.  Could you please provide me with a copy of any
> > letter or other document relating to the release for Thomas Frain?
> >
> > Regards,
> >
> > Adam Kessel
> > akessel@wolfgreenfield.com
> > direct dial 617.646.8360
> > Wolf, Greenfield & Sacks, P.C.
> > 600 Atlantic Avenue
> > Boston, Massachusetts 02210-2206
> > 617.646.8000 | 617.646.8646 fax
> >
> > This e-mail message and any attachments may contain confidential or
> > privileged information. If you are not the intended
> recipient, please
> > notify me immediately by replying to this message. Please
> destroy all
> > copies of this message and any attachments. Thank you.
> >
>
>
>
```

2

# EXHIBIT 24



**Wolf Greenfield**
SPECIALISTS IN INTELLECTUAL PROPERTY LAW

**Adam J. Kessel**
akessel@wolfgreenfield.com
direct dial 617.646.8360

October 3, 2005

<u>Via Email and First Class Mail</u>
Mr. Richard J. Farrell, Jr., Esq.
Farrell Law
197M Boston Post Road
West 177
Marlborough, MA  01752

     Re:    Wildlife Solutions (Florida) v. Wildlife Solutions (Massachusetts) and Reilly
           <u>Our File No.:  W0602.50000US00</u>

Dear Mr. Farrell:

     I am writing to acknowledge receipt of your responses to our interrogatories and document requests, which we received by email around 10:30pm on Friday, September 30, 2005. In your responses to our document requests, you committed to produce several specific documents as well as several general categories of documents.  Given that your responses were originally due on September 10, and that we granted an extension for your responses until September 21, and then another extension until the close of business on September 30, we expect that your documents will now be produced promptly.

     Please confirm that you will produce documents by this Friday, October 7.  You can send them to my attention at the Wolf, Greenfield office in Boston, and we will take care of sharing them with lead counsel Michael Leetzow.  Once we receive the documents you have committed to produce, we can set up a time to review the other documents you have committed to making available for inspection at a mutually agreeable time and place.

     Also, please confirm in writing that you consent to the filing of a joint motion to enter the proposed stipulated protective order.  I will prepare a cover motion and file the protective order with your electronic signature once I receive written confirmation.

     If we do not hear otherwise, we will expect to receive your production by the end of this week.  Further, we reserve our rights to object to your responses to our interrogatories and document requests once we have reviewed your initial production.

     Sincerely,

     WOLF, GREENFIELD & SACKS, P.C.

     Adam J. Kessel

cc:  Michael L. Leetzow, P.A.

# MICHAEL L. LEETZOW, P.A.
### ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE:  407-489-0606 - MOBILE
        407-302-9970 - OFFICE
FAX:    407-302-9973
E-MAIL:  MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

WWW.LEETZOW.COM

November 21, 2005

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road West
#177
Marlborough MA 01752

**Via Facsimile and
Certified Mail, Return
Receipt Requested**

    RE:    <u>Wildlife Solutions, Inc. v. Wildlife Solutions, Inc.</u>

Dear Mr. Farrell:

I am writing to address further deficiencies in your discovery responses. A review of the documents produced thus far indicates that relevant documents in your clients' possession have not been produced.

First, the business plan (000089-000122) refers to an appendix, which does not appear to have been produced. Please produce that immediately.

Second, there are references in the business plan to "wildlifepro" software that allows for marketing studies and information. This information is also relevant and responsive to our past document requests and interrogatories. Please produce this information immediately. As we have stated in the past, all electronic files should already have been searched and responsive information produced.

Third, it appears from the invoices that not all of the pages of those Verizon invoices have been produced. Please produce the invoices in their entirety immediately.

Fourth, there are price lists that have been produced that appear to be for PAC of Hudson. Are we to assume from your assurances earlier that there are no such price lists for Wildlife Massachusetts? See, e.g., Doc No. 114. Please produce those documents immediately.

Fifth, we understand that there was a letter sent to Brownyard Claims Management, Inc. apparently with a claim regarding the present litigation. This letter, as well as any other materials relating to any insurance claims made by Reilly or Wildlife Massachusetts regarding this litigation, would be responsive to several of the document requests. Please produce that letter and any other correspondence with the insurance company.

Mr. Richard J. Farrell, Jr.
November 21, 2005
Page 2

Sixth, I have requested a privilege log (or another appropriate document) that is consistent with Fed. R. Civ. P. 26(b)(5) several times. If we do not receive that document by the end of this week, we will consider your clients to have waived any claim of privilege regarding these documents.

Also, it appears as though several of the documents were not produced as they were kept in the usual course of business. Please review the produced documents with your client to make sure that your production complies with the Federal Rules and supplement your production accordingly.

Each time we have received responses to our discovery requests, more issues are raised by those responses. This requires us to request more documents that should have been produced in the first instance. Your clients' apparent inattentiveness (or as you have suggested - a lack of understanding) to the discovery process and the attendant obligations in a relatively straightforward case is prolonging the discovery process. If such behavior continues, we will be forced to bring this to the attention of the Court. We hope that such action is not required.

We expect these issues to be resolved by the end of this week, November 25, 2005. Please call if you have any questions.

Sincerely,

Michael L. Leetzow

Cc:    Mr. Steve DeMoor
       Mr. Michael A. Albert

# Offices of Farrell Law

Rich@Farrelllaw.com
(508) 358-5411

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Marlborough, MA 01752
Fax: (508) 358-7787

November 23, 2005

BY FAX AND FIRST CLASS MAIL TO: 407-302-9973

Michael Leetzow, Esq.
5213 Shoreline Drive
Sanford, FL 32771

RE:    Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
       United States District Court (MA) No. 05-CV-10180 FDS

Dear Atty. Leetzow:

I am writing in response to your letter dated November 21, 2005.

As I stated in my prior letter, the business plan references an Appendix which is not in the possession of my client. The Business Plan is and was in a plain white binder, and I copied and produced each and every page contained in the binder. Any further Appendix is not within the custody or control of my client.

As we discussed by telephone, you stated that the 'wildlifepro' software was somehow responsive to your document requests and/or interrogatories. As an initial matter, I am unclear on what document request and/or interrogatory requests my client's method of maintaining customer lists or databases. As far as producing information, there is none to produce. The software was used for a short time several years ago, but my client abandoned the software when it became clear that the software was essentially non-functional, not user-friendly, and provided him with no benefit that could not be achieved through the use of Quickbooks. My client was forced to delete the data and eventually the entire hard drive as a result of the poor software design, and there is no electronic data to provide. Wildlife Solutions, Inc. stopped using the software in September, 2003, and obviously Mr. Reilly stopped doing business in an individual capacity in April, 2003, and therefore was not using the software.

With regard to the Verizon Invoices, Wildlife Solutions has provided all of the invoices that it possesses.

The price lists that you refer to were a part of the business plan - for PAC of Hudson - drafted in 2003. They are not used by Wildlife Solutions, and Wildlife Solutions currently maintains no price lists.

I am enclosing the claim sheet sent to Brownyard Claims Management. You were copied on the response from them. Please note, the fax to Brownyard was 16 pages, which included the complaint in this case.

Page 1 of 2

It is unclear what concern you are raising regarding the production "as they are kept in the usual course of business." I have obtained responsive documents from the files of my client, copied them, and sent copies to you. I have sent them in the manner they were kept, with the documents sequentially numbered. As to the document request each is responsive to, I have set forth in the Response what documents were possessed, and specified what I have provided. If you have a specific issue or question, please let me know so I can address it.

With regard to the redacted document, referring to the Federal Rules of Civil Procedure, I restate the following information: (A) the type of document was corporate minutes (B) dated May 1, 2005, (C) the document was authored by the President of Wildlife Solutions, Inc., Thomas Reilly, with a business address of 45 Sterling Street, #27, (D) the only persons to 'receive' such document are myself and now you as attorney for Wildlife Florida in this document production, (E) the redacted subject matter was referencing retaining counsel regarding the instant litigation and the advice of counsel, encompassing both Gerry Blodgett, Esq. and myself, and (F) Wildlife Massachusetts has the document at its offices.

If you have any further questions, please contact me.

Very truly yours,

Richard Farrell

cc: client

11/23/2005 WED 21:25 FAX 508 358 7787      Law Office                                    ☑003

FROM :wildlif                    FAX NO. :5099356635          Nov. 23 2005 12:56AM  P1

# BROWNYARD

16 Pages

914 395.
0200

CLAIMS MANAGEMENT, INC.

21 Maple Avenue, Box CN9175 • Bay Shore, NY 11706-9175
Call Toll Free (800) 645-5820 • in NY (531) 666-5050 • Fax: 831-665-8086 • http://www.brownyard.com

## CLAIM / INCIDENT REPORT FORM

(Use this form to report a claim against your company or an employee arising out of the operation of your business.)

1. Company Name: Wildlife Solutions Inc. Contact: Thomas Reilly

2. Address: NEW → 45 Sterling Rd #27 West Boylston MA 01583
   NO.      STREET            CITY        STATE    ZIP

3. Phone No.: 508 835 6610 Fax No.: 835 6635 Email Address: Pacos Hudson @ aol.com
                                                             US Dist Court

4. Date, time, place of incident: Jan 28 2005  548:
                                  DATE       TIME    PLACE OF INCIDENT

5. Brief description of incident: Federal Trade Mark infringement

6. Did anyone prepare a report/statement concerning incident? ☒ Yes ☐ No  (If so, please attach copy)

7. Name & address of any witness: _____

8. Date first learned of incident: _____ What source? _____

9. Name & address of claimant/injured party: Wildlife Solutions Inc. of Florida

10. Did you receive correspondence from claimant or an attorney? ☒ Yes ☐ No  (If so, please attach copy)

11. Did you receive legal suit papers? ☒ Yes ☐ No  (If so, when and how did they come to you?) _____

    _____ (Attach the originals to this form)

12. Date of this report: 3/2/05   By: Thomas Reilly
    Print Name and Position: Thomas Reilly   President
                            NAME                POSITION

> **INSTRUCTIONS: Please give this form to your insurance broker immediately.** He or she must file the
> appropriate standard ACORD "Notice" form(s) with Brownyard Claims Management, Inc. with the original
> copy of this Claim/Incident Report Form.
>
> (copy this form for future claims)

## MICHAEL L. LEETZOW, P.A.
### ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE: 407-489-0606 - MOBILE
           407-302-9970 - OFFICE
FAX:    407-302-9973
E-MAIL: MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

WWW.LEETZOW.COM

December 6, 2005

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road West
#177
Marlborough MA 01752

**VIA FACSIMILE**

      RE:    Wildlife Solutions, Inc. v. Wildlife Solutions, Inc.

Dear Mr. Farrell:

    In your November 23, 2005 letter, you represented that your clients have finally produced all responsive Documents and Things in their possession. There remain, however, responsive documents that have not been produced. For example, your clients received letters in December 2004 and January 2005 that are responsive to several document requests and have not been produced. There is also at least one email addressed to Mr. Reilly that was not produced.

    The failure to produce these documents is unacceptable. It suggests that no search of your clients' files and computers was performed in response to the discovery requests. Again, please confirm that your clients have searched all appropriate locations (including any computers) for any and all relevant documents. If these documents, and all other relevant documents, are not produced by the end of this week, including assurances that your clients' computers were searched for relevant materials, we may be forced to seek relief from the Court.

    Please call if you have any questions.

Sincerely,

Michael L. Leetzow

Cc:   Mr. Steve DeMoor
      Mr. Michael A. Albert

# Offices of Farrell Law

Richard J. Farrell, Esq.
197M Boston Post Road West #177
Rich@Farrelllaw.com
(508) 358-5411

Marlborough, MA 01752
Fax: (508) 358-7787

December 8, 2005

BY FAX AND FIRST CLASS MAIL TO: 407-302-9973

Michael Leetzow, Esq.
5213 Shoreline Drive
Sanford, FL 32771

RE:    Wildlife Solutions, Inc. (FL) v. Wildlife Solutions, Inc. (MA)
       United States District Court (MA) No. 05-CV-10180 FDS

Dear Atty. Leetzow:

I am in receipt of your latest letter regarding discovery production by my client.

We once again appear to have discovery problems, and I don't know what more I can do. You are writing that there are supposed "letters in December 2004 and January 2005" that were not produced, as well as at least one email.

I forwarded your letter to Mr. Reilly. He maintains that he has reviewed his personal files and those of Wildlife Solutions, Inc., and has produced all responsive documents and things in his possession (with the exception of the website disc, which I have not gotten from him yet). There may very well have been letters or emails sent to either Wildlife or Mr. Reilly, but they are no longer in the possession of either party. Mr. Reilly further informs me that he does not retain email from a year ago. I instructed Mr. Reilly to look for that email, and he told me that he no longer has it.

He represents that he has produced all responsive documentation, including responsive Wildlife documentation contained on his computer. Obviously, he produced information from the computer when he produced the Quickbooks data. When you served your requests, I gave my clients a copy of your requests. I instructed Mr. Reilly to produce his personal documentation as requested and not objected to, and to do the same for Wildlife Massachusetts.

The tenor of your letters would indicate that you believe my clients to be hiding something. I have sent a copy of every document that you asked for, and have responded each time to your letters as comprehensively as possible. If you believe that the Court will be of assistance, then you are entitled to seek relief, but that will not cause my client to suddenly possess all sorts of documents that it simply doesn't have.

Page 1 of 2

As to another matter, I trust that all of my document requests (which were missing from my fax to you) were included in the hard copies sent to you.

If you have any questions, please contact me.  Thank you.

Very truly yours,

Richard Farrell

cc: client

# MICHAEL L. LEETZOW, P.A.
### ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE:  407-489-0606 - MOBILE
          407-302-9970 - OFFICE
FAX:   407-302-9973
E-MAIL:  MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

WWW.LEETZOW.COM

December 9, 2005

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road West
#177
Marlborough MA 01752

**VIA FACSIMILE**

RE:   Wildlife Solutions, Inc. v. Wildlife Solutions, Inc.

Dear Mr. Farrell:

I am in receipt of your facsimile dated yesterday, but which was faxed very early this morning. As indicated in your letter, we do seem to be having discovery "issues." We do not know if your clients are trying to hide something or if they are just not taking this matter seriously, but there are several matters that must be addressed promptly.

First, in your letter you admit that your clients have destroyed evidence and documents relevant to this case. It disturbs us to know that your clients have violated their affirmative duty to preserve relevant evidence and documents. I trust that you have advised your clients of their obligation to preserve evidence and documents relevant to this matter. Please confirm that they are aware of this obligation and that there will be no further destruction of evidence or documents of any kind. Please let us know if other documents or evidence (in any form) may have been destroyed at any time and the nature of that evidence.

Second, while we do not want to assume that your clients are hiding anything, we are aware of material that is responsive to our document requests and interrogatories that has not been identified and/or produced by your clients. For example, Interrogatory No. 10 asks for "each type of publication, whether in hard copy or electronic media, in which Wildlife Massachusetts advertises Wildlife Massachusetts' Services." We know of at least one website where "Thomas Reilly's Wildlife Solutions" are advertised – www.aaanimalcontrol.com. It is unlikely that this information was included on the website without your clients' knowledge or permission. Please produce all documents and things related to www.aaanimalcontrol.com, and any other responsive information immediately.

Since we are now aware that your clients have destroyed evidence and have not produced material that is clearly relevant and responsive to our requests, the tone of the

Mr. Richard J. Farrell, Jr.
December 9, 2005
Page 2

letters should be quite understandable. We will be addressing this issue further in the near future.

      We also request that the information that has been provided in your letters regarding the discovery issues (e.g., November 16, 2005) be incorporated into properly amended interrogatory responses. While the information may be provided in your letters, your clients have not signed them under penalty of perjury. Additionally, your clients' interrogatory responses need to be updated since they amended their Answers to the Complaint. As only one example, the interrogatories request that your clients state the basis for each of their affirmative defenses. Since there are new affirmative defenses, the basis for the new affirmative defenses need to be provided immediately. Similarly, other interrogatories and document requests may also need to be updated.

      We look forward to receiving the new information.

Sincerely,

Michael L. Leetzow

Cc:    Mr. Steve DeMoor
       Mr. Michael A. Albert

# MICHAEL L. LEETZOW, P.A.
### ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE:  407-489-0606 - MOBILE
          407-302-9970 - OFFICE
FAX:    407-302-9973
E-MAIL:  MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

WWW.LEETZOW.COM

December 22, 2005

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road West
#177
Marlborough MA 01752

**VIA FACSIMILE**

     RE:   Wildlife Solutions, Inc. v. Wildlife Solutions, Inc.

Dear Mr. Farrell:

     It has been almost two weeks since we requested that your clients update their interrogatory responses and document productions with the matters raised in my letter of December 9, 2005.  Please let us know when we can expect your updated answers.

     We have received your clients' responses to our requests for admissions.  In those responses, your clients admitted that they advertised on the internet, but no invoices or other documentation relating to this advertising was produced.  Such documents are clearly responsive to several document requests and interrogatories.  Please provide this information immediately.

     Further in this regard, please also confirm that the invoices that we have received from Verizon are for your client Wildlife Solutions (no name appears on the invoices).  The reason that we once again inquire as to these particular invoices is that they appear to be inconsistent with your responses to the Requests for Admissions.  Your clients denied having increased advertising since learning about my client's mark, but there appear to be new territories that were added in March 2005 (Natick) and June 2005 (Shrewsbury-Wbro-Nbro).  Please clarify that the answers in the responses are correct, that the invoices are incorrect, or otherwise explain the apparent inconsistency.

Mr. Richard J. Farrell, Jr.
December 22, 2005
Page 2

We look forward to receiving these overdue documents and responses immediately.

Sincerely,

Michael L. Leetzow

Cc:    Mr. Steve DeMoor
       Mr. Michael A. Albert

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE: 407-489-0606 - MOBILE
       407-302-9970 - OFFICE
FAX:   407-302-9973
E-MAIL: MICHAEL@LEETZOW.COM



MICHAEL L. LEETZOW, PA

# Fax

| **To:** | Richard J. Farrell, Esq. | **From:** | Michael L. Leetzow, Esq. |
|---|---|---|---|
| **Fax:** | 508 358 7787 | **Pages:** | 3 |
| **Phone:** | 508 358 5411 | **Date:** | 12/22/2005 |
| **Re:** | Letter Re: Discovery Responses | **CC:** | |

☐ **Urgent**    ☒ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● Comments:

Please see the attached letter.

NOTICE: This facsimile message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (407-302-9970) or by electronic mail (michael@leetzow.com), and destroy this facsimile message and all copies thereof. Thank you.