IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE SOLUTIONS, INC.,<br>  a Florida Corporation,<br><br>         Plaintiff,<br><br>v.<br><br>THOMAS J. REILLY<br><br>and<br><br>WILDLIFE SOLUTIONS, INC.,<br>   a Massachusetts Corporation,<br><br>         Defendants. | Civil Action No. 1:05-cv-10180-FDS |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
WILDLIFE MASSACHUSETTS TO PRODUCE A WITNESS
<u>PURSUANT TO FED. R. CIV. P. 30(b)(6) AND FOR SANCTIONS</u>**

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

Of Counsel

Michael Leetzow, Esq. (admitted *pro hac vice*)

Counsel for Wildlife Solutions, Inc., of Florida

## **TABLE OF CONTENTS**

I. DISCOVERY HISTORY ................................................................................................ 1

    A. The Dispute.......................................................................................................... 1

    B. Defendants' Stonewalling Before Suit Was Filed ............................................... 3

    C. Defendants' Continued Stonewalling After Suit Was Filed................................ 4

    D. Wildlife Massachusetts' Failure to Designate and Produce a Prepared Witness for a Rule 30(b)(6) Deposition................................................................................ 6

II. ARGUMENT.................................................................................................................. 12

    A. A Corporate Deponent Must Prepare a Witness to Answer Questions about the Designated Subject Matter.................................................................................. 12

    B. Wildlife Massachusetts' Preparation for its Deposition was Inadequate. ......... 13

    C. Sanctions are Appropriate When a Rule 30(b)(6) Deponent is Unprepared. .... 14

III. CONCLUSION............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.,
   201 F.R.D. 33 (D. Mass. 2001) .................................................................................. 13, 14

Media Svcs. Group, Inc. v. Lesso, Inc.,
   45 F. Supp. 2d 1237 (D. Kan. 1999) ................................................................................ 13

Mosaid Techs., Inc. v. Samsung Elecs. Co. Ltd.,
   348 F.Supp.2d 332 (D.N.J. 2004) .................................................................................... 16

Poole ex. rel. Elliott v. Textron, Inc.,
   192 F.R.D. 494 (D. Md. 2000) ......................................................................................... 14

Starlight Int'l v. Herlihy,
   186 F.R.D. 626 (D. Kan. 1999) ................................................................................. 14, 15

United States v. Taylor,
   166 F.R.D. 356 (M.D.N.C. 1996) .............................................................................. 13, 14

Plaintiff Wildlife Solutions, Inc., a Florida Corporation ("Wildlife Florida") respectfully moves to compel Defendant Wildlife Solutions, Inc., a Massachusetts Corporation ("Wildlife Massachusetts" or "Defendant")[1] to designate, prepare, and produce a knowledgeable witness for the topics listed in its Notice of Rule 30(b)(6) Deposition.  Thomas J. Reilly, who was designated by Wildlife Massachusetts as its representative pursuant to Fed. R. Civ. P. 30(b)(6), and appeared at its deposition on January 17, 2006, had <u>not</u> reviewed the schedule attached to the deposition notice and had <u>not</u> prepared to answer questions about most of the noticed topics.  Mr. Reilly thus proved unable to answer numerous questions in key areas.  Wildlife Massachusetts thus continues to engage in its obstructionist conduct, preventing Wildlife Florida from obtaining discovery to which it is entitled.[2]  The Court should put an end to Defendants' stonewalling.

## I.  DISCOVERY HISTORY

### A.  <u>The Dispute</u>

In this trademark infringement action, Plaintiff Wildlife Florida alleged that Defendant Wildlife Massachusetts has and continues to willfully infringe Plaintiff's federally registered trademark WILDLIFE SOLUTIONS.  (D.I. 1 ¶ 24.)  It is undisputed that Wildlife Massachusetts is using the same mark for the very same services as Wildlife Florida.  Ex. 1 (Def.'s Resp. to Pl.'s First Set of Req. for Admission to Def. Wildlife Massachusetts) at 4.[3]  Wildlife Florida also

---

[1] Thomas J. Reilly, a director of Defendant Wildlife Massachusetts, has also been sued in his personal capacity in this action.  While this Motion is directed to the actions of Wildlife Massachusetts, there are references in this Memorandum to both Mr. Reilly and Wildlife Massachusetts.  Wildlife Massachusetts and Mr. Reilly are collectively referred to as "Defendants."

[2] Currently pending before the Court is another Motion to Compel relating to Defendants' refusal to direct their former counsel to produce allegedly privileged documents despite their repeated explicit waiver of any attorney-client privilege.  (D.I. 22.)  Since that Motion was filed, Defendants have yet again waived the privilege by testifying at length at their deposition as to the communications in question, but they still have not instructed their former counsel to produce the subpoenaed documents.  <u>E.g.</u>, Ex. 2 at 72-74.  It is also noteworthy that, although their alleged privilege is at stake, Defendants have inexplicably failed to assert a position on the issue.  (<u>See</u> D.I. 28.)

[3] All exhibits refer to the attached Declaration of Adam J. Kessel unless otherwise indicated.

alleged that in December 2003, Defendants registered the domain name wildlifesolutions.biz <u>to use in the future</u> for advertising its own services under a mark identical to Plaintiff's federally registered trademark. (D.I. 20 ¶ 16.) Defendants admitted this allegation. (D.I. 21 ¶ 16.) Although there is compelling evidence that Wildlife Massachusetts' use of the mark has increased since it learned of Wildlife Florida's mark (thus demonstrating its willfulness), Wildlife Massachusetts denied that it has increased use of the mark. Ex. 1 at 5.

There is also evidence that Defendants' website at www.wildlifesolutions.biz was inactive until after the complaint was filed thus further establishing Defendants' willful infringement, yet Wildlife Massachusetts denies this as well. <u>Id.</u> at 3. During its deposition, Wildlife Massachusetts was unable to respond to questions on any of these topics because its witness was not prepared.

Wildlife Massachusetts has also asserted at least six affirmative defenses in its Amended Answer.[4] (D.I. 21.) In response to questions about the factual basis for each of the affirmative defenses, Mr. Reilly was also completely unable to testify about the factual basis for any of those affirmative defenses.

Finally, it is apparent that numerous documents, including invoices, advertising materials, and documents relating to Defendants' classes of purchasers (including their customer lists) exist and are in Defendants' custody or control but that Defendants have either refused to produce those documents or failed to investigate their existence. As just one example, Defendants' services are advertised on the website www.massachusettsgoosemanagement.com. Although Defendants own and control that domain name, they never disclosed its existence in any of their

---

[4] Both Defendants have asserted eleven affirmative defenses in total, of which only six are related to Defendant Wildlife Massachusetts alone. The other five affirmative defenses are directed to Mr. Reilly as an individual defendant.

discovery responses much less produce documents related to that website. At the deposition, Mr. Reilly claimed that he "forgot" about that website.[5] Ex. 2 at 92.

      B.    **<u>Defendants' Stonewalling Before Suit Was Filed</u>**

In August 2004, Wildlife Florida learned of Defendants' use of the mark WILDLIFE SOLUTIONS when a third party inquired about the affiliation of Wildlife Massachusetts with Wildlife Florida. (D.I. 20 ¶ 18.) After investigation of Defendants' use of the mark, Wildlife Florida wrote to Defendants in November 2004 and demanded that they cease and desist from their use of the identical mark, confirm receipt of the letter within ten days, and explain the steps they were taking to stop their infringing activity. (D.I. 24 Ex. 2.) Defendants did not respond to that letter and did not know when or if they were going to respond. Ex. 2 (1/17/06 Depo. Tr. of Wildlife Massachusetts) at 108-109.

Wildlife Florida subsequently called Defendants to follow up on its letter after the ten day period had expired. Defendants indicated that they had spent money changing their name from "PAC of Hudson" to "Wildlife Solutions, Inc.," and requested a license to use the mark. In a subsequent letter, Wildlife Florida denied a license and again demanded that Defendants cease and desist use of the infringing mark and assign the domain name wildlifesolutions.biz to it. (D.I. 24 Ex. 4.) Defendants also did not respond to that letter either, but instead Defendant Reilly filed a federal trademark registration for the mark MASSACHUSETTS WILDLIFE SOLUTIONS on the very same day. Ex. 3.

Despite several more letters (at least two of which Defendant asserts were never received) and phone calls from Wildlife Florida, Defendants refused to respond to any of the

---

[5] In the past few days, the website at www.massachusettsgoosemanagement.com appears to have been inexplicably taken offline.

correspondence or telephone calls and also refused to cease use of Wildlife Florida's mark.[6] Having no other option, Wildlife Florida filed this suit in January 2005 for trademark infringement, counterfeiting, cybersquatting, and unfair trade practices under Mass. Gen. Laws Ch. 93A.  (D.I. 1.)  Wildlife Florida seeks injunctive relief and damages.

### C.  **Defendants' Continued Stonewalling After Suit Was Filed**

Defendants have consistently and continuously refused to address the issues raised in this case in a diligent manner.  Wildlife Florida served discovery requests on Defendants on August 9, 2005.  (See D.I. 24 Ex. 12.)  Defendants failed to provide responses to the discovery requests by the deadline.  (D.I. 24 Ex. 13.)  In response to an inquiry by Wildlife Florida's counsel about the failure to provide responses, Defendants' counsel indicated that he had never received them. Id.  Wildlife Florida granted Defendants additional time to respond to the discovery requests. Id. Shortly before the new deadline, Defendants again requested additional time in which to respond to the discovery requests, and Wildlife Florida once again granted this request.  (D.I. 24 Ex. 15.)

Defendants finally responded to the discovery requests on September 30, and produced documents on October 5 and October 12.  These discovery responses were clearly inadequate. Wildlife Florida wrote to Defendants on November 1, identifying twenty-five areas in which Defendants had failed to properly respond to the discovery requests or to produce responsive documents.  (D.I. 24 Ex. 17.)  In particular, Plaintiff specifically requested information regarding Defendants' websites and all versions of those websites.  Defendants' November 10 response was that they had no "hard copies" of any old websites and that there were no previous versions. (D.I. 24 Ex. 18.)

---

[6] See Ex. 2 at 113-119.  Mr. Reilly testified that he never received a letter sent by certified mail on December 10, 2004, even though it was correctly addressed and was subsequently sent to his proper email address.  Exs. 4 and 5. Mr. Reilly also testified that he never received the facsimile in January 2005, even though it was to the correct FAX number and the FAX confirmation sheet indicates that the FAX transmission was completed.  Ex. 6.

Despite Defendants' denial of the existence of previous versions of their websites, Wildlife Florida is aware of at least two changes in content on one of the two websites that Defendants admitted they control. These changes have occurred during the pendency of this lawsuit. Defendants never produced any documents or provided any information related to those changes, although Mr. Reilly finally admitted to these changes during Defendants' deposition. Ex. 2 at 48-51. Mr. Reilly admitted that the original content on www.pacofhudson.com was taken down for several weeks and a message was posted in its place. The original content was later restored. Ex. 2 at 48-51; Ex. 7.[7] Since Defendants have never produced documents reflecting these changes to their website which are clearly relevant and important in this case, it is clear that Defendants continue to either withhold documents or have engaged in spoliation of evidence.[8]

Wildlife Massachusetts produced a small number of additional documents on November 16, accompanied by a letter purporting to update Defendants' interrogatory responses. (D.I. 24 Ex. 19.) These new documents and interrogatory responses again raised new questions regarding the adequacy of Defendants' search for and production of documents, requiring yet another request for clarification and updates. (D.I. 24 Ex. 24.)

In a November 23 letter, Defendants indicated that they had produced all relevant documents and information. Id. Defendants, however, had failed to produce information that Wildlife Florida knew should still be in their possession. Wildlife Florida brought this fact to

---

[7] Wildlife Florida notes the tone and content of that message, posted approximately two months after this action was filed, is consistent with Defendants' cavalier attitude regarding this action and complete disregard for Plaintiff's rights in its federally registered mark. See Ex. 7 ("We will be back soon, Bigger better and stronger than ever( dont [*sic*] you just hate lawyers!)").

[8] Defendants could not produce documents and emails that, on their face, should have been in Defendants' possession. Wildlife Florida brought this matter to Defendants' attention in a letter on December 9, 2005. (D.I. 24 Ex. 24.)

Defendants' attention on December 6, 2005. Id. Defendants' failure to provide this information and documentation made clear that that Defendants had not performed adequate searches or made appropriate inquiries in response to the discovery requests. Id.

On December 9, 2005, Wildlife Florida requested once again that Defendants properly update their interrogatory responses and document production. Id. Now, nearly two months later, Defendants have still not provided complete responses and documents, despite the fact the discovery deadline is just one day away and Wildlife Florida has already taken Defendants' depositions. Among other documents that have not yet been produced are invoices, advertising material, and documents relating to Defendants' classes of purchasers (including customer lists). All of these documents are within the scope of Wildlife Florida's discovery requests and the Federal Rules, but have not been produced despite Wildlife Florida's repeated attempts to obtain them.

      **D.**    **Wildlife Massachusetts' Failure to Designate and Produce a Prepared Witness for a Rule 30(b)(6) Deposition**

On December 16, 2005, Wildlife Florida served a Notice of Rule 30(b)(6) Deposition on Wildlife Massachusetts for deposition on January 17, 2006, thus giving Wildlife Massachusetts a full month in which to prepare one or more witnesses. Ex. 8. The deposition notice included a list of seventeen specific topics for examination. Id. Wildlife Massachusetts did not object to the deposition notice or any of the noticed topics; however, its representative at the deposition, Mr. Reilly, failed to prepare in any meaningful way for the deposition and had not even reviewed the list of topics for examination:

> Q: Exhibit 22 is a notice of a Rule 30(b)(6) deposition. And in the second paragraph of that it says, "Wildlife Massachusetts is required to designate consenting persons to testify on its behalf on the subjects listed in the attached Schedule A. Please identify the individual or individuals who will be testifying on behalf of Wildlife Massachusetts prior to January 1, 2006." Would that be you, Mr. Reilly?

> A: Who will be testifying on behalf of Wildlife Massachusetts prior to January 1, 2006?
>
> Q: Are you the consenting person who's testifying on behalf --
>
> A: Yes, I am, but I don't recall testifying prior to January 1st.
>
> ….
>
> Q: And on the very last page of that is a Schedule A. **Have you ever seen this list before?**
>
> A: **No.**

Ex. 2 at 184-185 (emphasis supplied).

Mr. Reilly's <u>only</u> preparation for the Rule 30(b)(6) deposition was to review the answers in the Defendants' Amended Answers to Plaintiff's First Set of Interrogatories:[9]

> Q: Did you look at any documents or consult anyone with respect to Wildlife Massachusetts' business structure?
>
> A: When?
>
> Q: At any time. In preparation for this deposition.
>
> A: Yes.
>
> Q: You did?
>
> A: Yes.
>
> Q: What did you look at?
>
> A: Last night we looked at the --
>
> THE WITNESS: Was it 20 or 19, Richard? Which is the one you just handed him, the amended?
>
> Q: That would be 19 and 20. Those were the ones that he just handed to me.
>
> A: We reviewed those.
>
> Q: Did you look for information on the creation, selection, development, modification, earliest use, continued use, searching, clearance, or evaluation of the marks of Wildlife Solutions?
>
> A: And/or Massachusetts Wildlife Solutions.
>
> Q: Well, let's start with Wildlife Solutions.
>
> A: When?

---

[9] Exhibits 19 and 20 in this excerpt refer to the signed Amended Answers to Plaintiff's First Set of Interrogatories to both Defendants and were produced by Defendants on the day of the Rule 30(b)(6) deposition.

Q: In preparation for this deposition.

A: Yes.

Q: And what did you do?

A: We -- Not in preparation for this deposition, no.

Q: With respect to Wildlife Massachusetts Solutions?

A: We did not create, select, develop, modify, earliest use or continued use or search or anything prior to this for Wildlife Massachusetts.

Q: Is there anybody at Wildlife Massachusetts that has any information relating to the adoption, use, or application for the registration by Wildlife Massachusetts of the mark Wildlife Solutions?

A: Anybody who has any information?

Q: Other than you.

A: Other than myself? I can't recall who would have any of that information in the company.

**Q: Did you ask … if anybody had any --**

**A: No.**

Q: -- in preparation for this deposition?

A: As far as the application for registration, no.

**Q: Or the adoption or use?**

**A: No.**

**Q: Did you investigate Wildlife Massachusetts' advertisements and marketing activities and expenses in preparation for today?**

**A: No.**

**Q: Did you attempt to?**

**A: No.**

**Q: Did you ask if anybody had information relevant to?**

**A: No.**

Q: How about Massachusetts – Wildlife Massachusetts' website and other Internet activities?

A: What about them?

**Q: Did you consult anybody?**

MR. FARRELL: Object.

**Q: Say, for example, the first date that you put -- that Wildlife Massachusetts put content on the domain name wildlifesolutions.biz.**

**A: No.**

>**Q: Did you make any attempt to?**
>
>**A: No.**
>
>Q: Would you know who to ask?
>
>A: There wouldn't be anybody to ask.
>
>Q: How about your Internet service provider or the server where your website resides?
>
>A: I would ask them for advice before putting up a website; is that your question?
>
>Q: No.  **Did you talk to them about the date or when information was put on --**
>
>**A: No.**
>
>Q: -- the website?
>
>A: No.
>
>**Q: Did you ask them if they had that information?**
>
>**A: No.**
>
>**Q: Did you think about asking them for that information?**
>
>**A: No.**

Ex. 2 at 185-188 (emphasis supplied).

Wildlife Massachusetts was also unable to provide specific dates of changes to its own websites, even though this information was covered by several topics on the deposition notice. For example, Mr. Reilly testified that he changed the content on www.pacofhudson.com[10] from information relating to the now defunct PAC of Hudson to the new corporation Wildlife Solutions, Inc. in the summer of 2003:

>Q: When did you change the content on pacofhudson.com from PAC of Hudson to something else?
>
>A: I just don't recall exactly.  I could ballpark it to summer of '03.
>
>Q: And when you changed from PAC of Hudson -- You changed the content from PAC of Hudson to something else; is that correct?
>
>A: Yes.
>
>Q: What was the something else that you changed the content to?

---

[10] Mr. Reilly testified that Defendants provide information about Wildlife Massachusetts on two different websites: www.pacofhudson.com and www.wildlifesolutions.biz.  Ex. 2 at 46, 79-82.

> A: That would have been to the corporation, Wildlife Solutions, Inc.
>
> Q: And when would that change have happened?
>
> A: After the -- About the time of the incorporation.
>
> Q: Which would be?
>
> A: May of -- May 1st of '03. Our incorporation date was -- Actually, the last week of April we officially -- The 24th day of April is the date of the incorporation. We officially began doing business on May 1st.
>
> Q: So you changed the website content relatively quickly?
>
> A. I believe we did, yes.

Ex. 2 at 44-45.

Past versions of the page on the Internet Archive, however, indicate that the website www.pacofhudson.com was not changed until January 22, 2004, in direct contradiction to Defendant's admittedly uninformed testimony.[11] Ex. 9.

Wildlife Florida believes, with good reason,[12] that the domain name www.wildlifesolutions.biz did not have any content on the website until after the complaint in this suit was filed. The fact that Defendants only posted content to the website after the complaint was filed demonstrates willfulness and intent on Defendants' behalf. Wildlife Massachusetts was not, however, prepared to answer the question and could only guess as to when www.wildlifesolutions.biz first included actual content, even though it has controlled the domain name since its initial registration:

> Q: Does somebody maintain the wildlifesolutions.biz website?
>
> A: Thomas Kashuba.
>
> Q: He updates the website?

---

[11] The Internet archive is a nonprofit organization established to preserve websites by taking regular "snapshots." See http://www.archive.org.

[12] In the complaint, Plaintiff alleged that the domain name www.wildlifesolutions.biz was to be used in the future for advertising. If the domain name had been active at that time, that fact would have been included in that complaint. The same is also true with respect to Wildlife Florida's November 17, 2004 letter to Mr. Reilly. (D.I. 24 Ex. 4.)

> A: Yes. I don't think he's ever updated the website. I don't think he's ever done anything to it since it was posted.
>
> Q: Do you know when it was posted?
>
> A: Yes. I believe it was, as we discussed earlier, about the same time frame that it was registered or sometime thereafter.
>
> **Q: Do you know of a date when the first contact [sic;content] was posted?**
>
> **A: No, I don't recall.**
>
> **Q: Did you ask?**
>
> **A: No, I did not ask.**
>
> **Q: Do you know who you would ask?**
>
> **A: I would ask Thomas Kashuba to find out.**
>
> **Q: Did you ask Mr. Kashuba to find out?**
>
> **A: No.**
>
> **Q: Did anybody ask you to ask Mr. Kashuba to find out?**
>
> **A: No.**
>
> **Q: Do you keep copies of website content that's no longer on the web?**
>
> **A: No.**
>
> **Q: Do you know if anybody does?**
>
> **A: No, I don't know that.**

Ex. 2 at 83-84 (emphasis supplied).

Wildlife Massachusetts was also unable to testify as to the factual basis for any of the affirmative defenses in its Amended Answer:

> Q: Exhibit 12, page 24 to 25, it says, "Defendants' Affirmative Defense Six: On information and belief, plaintiff was not operating in interstate commerce at the time its federal application was filed." Why did you include that as an affirmative defense?
>
> MR. FARRELL: Objection.
>
> A: You're asking me how an attorney's going to defend the case, and I can't answer you. I'm sorry.
>
> Q: Do you know of any facts either in your personal capacity or as a director of Wildlife Massachusetts that the plaintiff was not engaged in interstate commerce at the time that their federal application was filed?

> A: Do I know personally? I'd have to review the answers which haven't been produced yet, the – Excuse me -- the documents from Wildlife Florida, and I don't think we have them.
>
> Q: But it says, "Upon information and belief, plaintiff was not operating in interstate commerce at the time its federal application was filed." Do you currently have a basis for that defense?
>
> MR. FARRELL: Objection.
>
> A: I certainly hope so.
>
> Q: Does Wildlife Massachusetts have one?
>
> MR. FARRELL: Objection.
>
> A: Do we currently have a basis for that?
>
> Q: A basis for putting that in as an affirmative defense.
>
> A: I, again, can't answer how an attorney's going to defend the case.

Ex. 2 at 171-172.

Despite Defendants' intentional and willful infringement of its mark and evasive approach to its discovery obligations, Wildlife Florida has endeavored to resolve this matter without Court intervention. Defendants, however, have done everything in their power to prevent Wildlife Florida from obtaining relevant discovery. Wildlife Florida has attempted to accommodate Wildlife Massachusetts' delays, but those actions have only been met with further stalling. In fact, during the Local Rule 37.1 conference prior to the filing of this Motion, Defendants' counsel stated that they would agree to make Mr. Reilly available again, but that they would "not do [Wildlife Florida's] discovery for [it]." Thus, Wildlife Florida's only option remaining is to seek relief from this Court.

## II.  ARGUMENT

### A.  A Corporate Deponent Must Prepare a Witness to Answer Questions about the Designated Subject Matter.

The law is well established that an individual appearing as a corporate deponent has an affirmative obligation to educate himself as to the matters regarding the corporation pursuant to Fed. R. Civ. P. 30(b)(6). <u>See</u>, <u>e.g.</u>, <u>Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.</u>,

201 F.R.D. 33, 36 (D. Mass. 2001). See also Media Svcs. Group, Inc. v. Lesso, Inc., 45 F. Supp. 2d 1237, 1253 (D. Kan. 1999) (Rule 30(b)(6) imposes a duty upon the named business entity to prepare its selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know); United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (same). The reason for this requirement is to "make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial[,]" since "[t]his would totally defeat the purpose of the discovery process…" Taylor, 166 F.R.D. at 362. This is true even though the preparation for a 30(b)(6) deposition may be burdensome. Id.

Despite this requirement, Mr. Reilly answered many questions directed to topics included in the Notice of Deposition with "I can't recall" or "I don't know." He also admitted several times in the deposition that he did not inquire, investigate, or otherwise prepare to testify about topics that were listed on the Notice of Deposition. As noted above, Mr. Reilly was totally unprepared to testify on at least the following topics that were listed in the Notice of Deposition:

> The creation, selection, development, modification, earliest use, continued use, searching, clearance, or evaluation of the marks WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.
>
> The adoption, use, and/or application for registration by Wildlife Massachusetts of the marks WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS, including federal and state registrations.
>
> Wildlife Massachusetts' advertisements and marketing activities and expenses.
>
> Wildlife Massachusetts' website and other Internet activities.
>
> The factual basis for each of the Affirmative Defenses in Defendants' Amended Answer.

**B.     Wildlife Massachusetts' Preparation for its Deposition was Inadequate.**

Rule 30(b)(6) also requires that the identified deponent "testify to matters known or reasonably available to the organization." Matters that are "reasonably available" to the

organization are those that are under the control of the organization, which are those that the party has the "right, authority, or practical ability to obtain[.]"  See, e.g., Calzaturficio, 201 F.R.D. at 38-39.  Clearly, the information related to each of the topics for which Mr. Reilly could not answer questions are within the control of Wildlife Massachusetts.  Wildlife Massachusetts simply did not prepare its designee for the deposition as required.

Despite the clear failure to prepare for the deposition, Wildlife Massachusetts' counsel stated during the deposition that the witness prepared for the deposition, because "[h]e's here," and, "if he tells you he doesn't recall, he doesn't recall."  Ex. 2 at 105.  The case law and Rule 30(b)(6) make clear that mere attendance at a deposition with whatever details the deponent happens to remember at the time is not adequate preparation.  See, e.g., Calzaturficio, 201 F.R.D. at 39 ("If the originally designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty.") (quoting Poole ex. rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 504-05 (D. Md. 2000)).

**C.     Sanctions are Appropriate When a Rule 30(b)(6) Deponent is Unprepared.**

Sanctions are appropriate under Rule 37(d) where a party or person designated under Rule 30(b)(6) fails "to appear before the officer who is taking the deposition, after being served with proper notice."  Fed. R. Civ. P. 37(d).  Producing an unprepared witness is tantamount to a failure to appear at a deposition.  Calzaturficio, 201 F.R.D. at 39.  See also Starlight Int'l v. Herlihy, 186 F.R.D. 626, 639 (D. Kan. 1999) ("The court may find lack of preparation at a deposition to be a failure to appear."); Taylor, 166 F.R.D. at 363.

The Court also has the authority to sanction Defendant for inadequate preparation of a Rule 30(b)(6) designee based on the lack of good faith, prejudice to the opposing side and disruption of the proceedings.  Taylor, 166 F.R.D. at 363.

In this case, the designated witness, Mr. Reilly, was unprepared as he did not even review <u>the topics that were identified</u>, much less make an effort to educate himself on those topics. This is clear from his testimony and the number of times he was unable to answer or couldn't recall. As a result, Wildlife Florida was unable to obtain information that is in the possession and control of Wildlife Massachusetts due to a lack of preparation on the part of its designated representative, Mr. Reilly. Wildlife Massachusetts' lackluster preparation for the deposition certainly evidences "lack of good faith, prejudice to the opposing side, and disruption of the proceedings." <u>Id.</u>

Accordingly, the Court, pursuant to Fed. R. Civ. P. 37(d), has the discretion to "make such orders in regard to the failure as are just." Such discretion includes sanctioning Defendant Wildlife Massachusetts for sending an unprepared witness, as well as Mr. Reilly in his individual capacity as an unprepared Rule 30(b)(6) representative since Mr. Reilly is also a party to the litigation. <u>Starlight Int'l</u>, 186 F.R.D. at 639.

Wildlife Florida would prefer that Defendant and Mr. Reilly be ordered to designate and prepare an appropriate witness for a continuation of the deposition.[13] Wildlife Florida also requests that the Court order Defendants to reimburse it for its costs and attorney fees in preparing this motion and for the continued deposition of an adequately prepared witness. In the alternative, the Court should exclude Defendants from offering any evidence or testimony regarding the topics on which Mr. Reilly was unprepared.

Finally, the Court should order Defendants to produce withheld documents, including all advertising, invoices, and documents relating to Wildlife Massachusetts' classes of purchasers

---

[13] Plaintiff did not close the deposition of Mr. Reilly due to his inability to answer questions on topics in the schedule attached to the deposition notice. Ex. 2 at 199-200.

(including its customer lists). If Wildlife Massachusetts has, in fact, destroyed relevant documents since it anticipated this litigation, the Court should enter an evidentiary sanction that those documents would have been favorable to Wildlife Florida. See Mosaid Techs., Inc. v. Samsung Elecs. Co. Ltd., 348 F.Supp.2d 332, 339-340 (D.N.J. 2004) (granting an adverse inference and attorney fees as a result of defendants' failure to preserve potentially relevant evidence).

### III. CONCLUSION

For the above-stated reasons, the Court should grant Wildlife Florida's motion and order Wildlife Massachusetts to designate and adequately prepare a representative to answer questions regarding the subject matter in its Notice of Deposition. Alternatively, the Court may order that the subject matters which Defendant, through Mr. Reilly, was not able to testify, shall be considered established against Defendants.

In addition, the Court should award Wildlife Florida's its attorney fees and costs in preparing this motion pursuant to Fed. R. Civ. P. 37(d) and any attorney fees and costs in continuing the deposition of Defendant's witness.

Finally, because fact discovery is scheduled to end on February 1, the Court should order Defendants to produce withheld documents and permit Wildlife Florida to take additional discovery past that deadline. Defendants should not be permitted to use their stonewalling to their strategic and evidentiary advantage.

<table>
<tr><td></td><td>WILDLIFE SOLUTIONS, INC.</td></tr>
<tr><td></td><td>By its attorneys,</td></tr>
<tr><td>Dated: January 31, 2006</td><td>  /s/ Adam J. Kessel<br>Michael A. Albert, BBO # 558566<br>malbert@wolfgreenfield.com<br>Adam J. Kessel, BBO # 661211<br>akessel@wolfgreenfield.com<br>WOLF, GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue<br>Boston, Massachusetts 02210<br>(617) 646.8000 Phone<br>(617) 646.8646 FAX</td></tr>
</table>

Of Counsel

Michael L. Leetzow, Esq. (admitted *pro hac vice*)