IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE SOLUTIONS, INC., a Florida Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. REILLY<br><br>and<br><br>WILDLIFE SOLUTIONS, INC., a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 1:05-cv-10180-FDS |

**DECLARATION OF ADAM J. KESSEL IN SUPPORT OF MOTION TO COMPEL WILDLIFE MASSACHUSETTS TO PRODUCE A WITNESS PURSUANT TO FED. R. CIV. P. 30(b)(6) AND FOR SANCTIONS**

As counsel for Wildlife Solutions, Inc., a Florida Corporation ("Wildlife Florida"), I submit this declaration under penalty of perjury in support of Wildlife Florida's Motion to Compel Wildlife Massachusetts to Produce a Witness Pursuant to Fed. R. Civ. P. 30(b)(6) and for Sanctions:

1. Attached as Exhibit 1 is a copy of Defendant's Response to Plaintiff's First Set of Requests for Admission to Wildlife Massachusetts, dated December 9, 2005.

2. Attached as Exhibit 2 are excerpts from the Deposition Transcript of Wildlife Massachusetts and Thomas J. Reilly from January 17, 2006.

3. Attached as Exhibit 3 is a printout from the United States Patent and Trademark Office website reflecting a federal trademark application for the mark MASSACHUSETTS WILDLIFE SOLUTIONS.

4.  Attached as Exhibit 4 is a copy of a letter sent by certified mail on December 10, 2004 from Wildlife Florida to Defendants as well as the envelope and certified mail receipt for that letter.  This document was marked as Exhibit 8 in Defendants' deposition.

5.  Attached as Exhibit 5 is a copy of an email sent on December 21, 2004 from Wildlife Florida to Defendants.  That email included, as an attachment, the same letter as Exhibit 4.  This document was marked as Exhibit 9 in Defendants' deposition.

6.  Attached as Exhibit 6 is a copy of a letter sent by facsimile on January 19, 2005 from Wildlife Florida to Defendants as well as a confirmation sheet indicating that the transmission was successful.  This FAX included a draft of the complaint that was later filed in this case.  The attached complaint has been omitted from this exhibit in the interest of brevity.  This document (including the draft complaint) was marked as Exhibit 10 at Defendants' deposition.

7.  Attached as Exhibit 7 is a printout of the website at www.pacofhudson.com from March 10, 2005.  This document was marked as Exhibit 4 at Defendants' deposition.

8.  Attached as Exhibit 8 is a copy of the Notice of 30(b)(6) Deposition to Defendant Wildlife Massachusetts dated December 16, 2005.

9.  Attached as Exhibit 9 are printouts from the Internet Archive for the website at http://www.pacofhudson.com.  The first printout is dated December 30, 2003, and the second is dated January 22, 2004.


Dated: January 31, 2006                    /s/ Adam J. Kessel
                                           Adam J. Kessel



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILDLIFE SOLUTIONS, INC.,
A Florida Corporation,
Plaintiff,

v.

Civil Action No. 05-CV-108180-FDS

THOMAS J. REILLY
and
WILDLIFE SOLUTIONS, INC.,
a Massachusetts Corporation,
Defendants.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WILDLIFE MASSACHUSETTS**

The defendant Wildlife Solutions, Inc. of Massachusetts (Wildlife Massachusetts) hereby responds, pursuant to Rule 36 of the Federal Rules of Procedure, to the plaintiff's first set of requests for admission to defendant Wildlife Massachusetts. Wildlife Massachusetts specifically responds using the term "Wildlife Massachusetts" or "Defendant" to mean itself.

**INSTRUCTIONS AND DEFINITIONS**

1. The term "person" or "persons" as used in these requests includes, without limitation, any person or juristic person, as those terms are defined in Section 45 of the Lanham Act, 15 U.S.C. § 1127.

2. As used herein, "Wildlife Florida s Mark" refers to Wildlife Florida s Mark WILDLIFE SOLUTIONS in any stylization.

3. As used herein, "Wildlife Massachusetts Marks" refers to Wildlife Massachusetts marks WILDLIFE SOLUTIONS and MASSACHUSETTS WILDLIFE SOLUTIONS in any stylization.

4. As used herein, "Wildlife Massachusetts Trademark Application" refers to Wildlife Massachusetts U.S. Trademark application for the mark MASSACHUSETTS WILDLIFE SOLUTIONS, filed with the U.S. Trademark Office as Application No.

78/518,184.

5. As used herein, "Wildlife Massachusetts Services" refers to each and every product or service which Wildlife Massachusetts has ever sold, offered for sale, promoted, or rendered under or in connection with Wildlife Massachusetts Marks.

REQUEST FOR ADMISSION NO. 1

Admit that Defendant became aware of Plaintiff's website at www.wildlifesolutions.com before or during the process of obtaining a domain name registration for Defendant s domain name, wildlifesolutions.biz.

Response: Defendant denies the fact as stated above. Defendant became aware of a website at www.wildlifesolutions.com during the process of registering a domain name for Wildlife Solutions, Inc., however, the defendant denies that it had any specific knowledge of who the owner of the site or sites were, or any details about the owners.

REQUEST FOR ADMISSION NO. 2

Admit that Defendant became aware of Plaintiffs domain name wildlifesolutions.com before or during the process of obtaining a domain name registration for Defendant s domain name, wildlifesolutions.biz.

Response: Defendant admits that it became aware that another entity owned the domain name wildlifesolutions.com during the process of registering wildlifesolutions.biz, but denies that it had specific knowledge of who owned the domain or domains.

REQUEST FOR ADMISSION NO. 3

Admit that Defendant has never used the Mark MASSACHUSETTS WILDLIFE SOLUTIONS in commerce (as defined in 15 USC § 1127).

Response: Admitted.

REQUEST FOR ADMISSION NO. 4

Admit that Defendant continues to advertise under the name PAC of Hudson.

Response: Denied.

REQUEST FOR ADMISSION NO. 5

Admit that Defendant put content on the website www.wildlifesolutions.biz only after learning about Plaintiff.

Response:    Denied. Content was not added to the website www.wildlifesolutions.biz after defendant learned about Plaintiff.

REQUEST FOR ADMISSION NO. 6

Admit that Defendant put content on the website www.wildlifesolutions.biz only after the complaint in this litigation was filed.

Response:    Denied.

REQUEST FOR ADMISSION NO. 7

Admit that the federal trademark application for MASSACHUSETTS WILDLIFE SOLUTIONS identifies an individual as the applicant.

Response:    Admitted, but denied that the intent of the applicant was to apply in an individual capacity.

REQUEST FOR ADMISSION NO. 8

Admit that the federal trademark application for MASSACHUSETTS WILDLIFE SOLUTIONS identifies Mr. Thomas Reilly as the applicant.

Response:    Denied that the application was on behalf of Mr. Thomas Reilly. The application was returned to him specifically because it was in the name of WILDLIFE SOLUTIONS but he incorrectly filled out the application with him as the applicant. Admitted that the application identifies Mr. Thomas Reilly as the applicant.

REQUEST FOR ADMISSION NO. 9

Admit that Plaintiff owns U.S. Reg. No. 2,383,071 for the Mark WILDLIFE SOLUTIONS, which covers, among other things, pest control, namely, removal, relocation and prevention of nuisance animals.

Response:    Admitted that the plaintiff owns the U.S. Reg. No. 2,383,071 for the Mark WILDLIFE SOLUTIONS, but denied that the Mark Wildlife Solutions is legally entitled to trademark protection.

REQUEST FOR ADMISSION NO. 10

Admit that Defendant does not have a federal trademark application pending in its own name.

Response:    Admitted.

REQUEST FOR ADMISSION NO.11

Admit that Defendant has used the Mark WILDLIFE SOLUTIONS without Plaintiffs permission.

Response:    Admitted, but the defendant denies that it was required to seek or obtain
            Plaintiff's permission.

REQUEST FOR ADMISSION NO.12

Admit that the document attached to these requests as Exhibit A is a true copy of the website at www.wildlifesolutions.biz showing use of the Mark WILDLIFE SOLUTIONS.

Response:    Admitted.

REQUEST FOR ADMISSION NO. 13

Admit that the Mark WILDLIFE SOLUTIONS as used by Defendant is exactly the same Mark as WILDLIFE SOLUTIONS used by the Plaintiff.

Response:    Denied. Admitted that the words used in the mark are identical, but stylizations of
            the mark are not identical.

REQUEST FOR ADMISSION NO. 14

Admit that the services provided by Defendant and Plaintiff include the removal, relocation and prevention of nuisance animals.

Response:    Admitted.

REQUEST FOR ADME5SION NO.15

Admit that Plaintiff and Defendant both advertise on the internet.

Response:    Admitted.

REQUEST FOR ADMISSION NO. 16

Admit that Plaintiff and Defendant both advertise in yellow pages.

Response: Defendant is without sufficient knowledge to admit or deny this allegation.

REQUEST FOR ADMISSION NO. 17

Admit that the classes of prospective purchasers of Plaintiff's and Defendant's services are of normal intelligence and are not discerning consumers.

Response: Defendant is without sufficient knowledge to admit or deny this allegation, because it is unaware of the plaintiff's "classes of prospective purchasers."

REQUEST FOR ADMISSION NO. 18

Admit that Defendant adopted the Mark WILDLIFE SOLUTIONS knowing of Plaintiff s "Wildlife Florida's Mark."

Response: Denied.

REQUEST FOR ADMISSION NO.19

Admit that Defendant has, since learning of "Wildlife Florida s Mark," increased the use of "Wildlife Massachusetts Marks."

Response: Denied.

Thomas Reilly,
By his attorney:

Dated: December 9, 2005

Richard J. Farrell, Jr.
MA BBO# 638017
197M Boston Post Road West #177
Marlborough, MA 01752
508-358-5411

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by mail on counsel for the defendant, Adam Kessel, at Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, Massachusetts, 02210 on this date.



CERTIFIED ORIGINAL
LEGALINK BOSTON

Volume: I

Pages: 1 to 202

Exhibits: 1 to 22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - x

WILDLIFE SOLUTIONS, INC.,
A Florida Corporation,

Plaintiff,

v.

THOMAS J. REILLY
And
WILDLIFE SOLUTIONS, INC.,
a Massachusetts Corporation,

Defendants.

Civil Action No. 1:05-cv-10180-FDS

- - - - - - - - - - - - - - - - - - - x

30(b)(6) DEPOSITION OF WILDLIFE SOLUTIONS, INC. BY THOMAS J. REILLY, DESIGNEE, and THOMAS J. REILLY, INDIVIDUALLY

January 17, 2005, 10:40 a.m.

Wolf, Greenfield & Sacks, P.C.

Federal Reserve Plaza

Boston, Massachusetts

Reporter: Karen A. Interbartolo, RPR

**Animal Control of Hudson, when did you cease operations of Problem Animal Control of Hudson?**

A. Problem Animal Control of Hudson stopped receiving income in June of 2003 -- or May of 2003, and the accounts for Problem Animal Control of Hudson were closed at the end of December of 2003.

**Q. When did you change the content on pacofhudson.com from PAC of Hudson to something else?**

A. I just don't recall exactly. I could ballpark it to summer of '03.

**Q. And when you changed from PAC of Hudson -- You changed the content from PAC of Hudson to something else; is that correct?**

A. Yes.

**Q. What was the something else that you changed the content to?**

A. That would have been to the corporation, Wildlife Solutions, Inc.

**Q. And when would that change have happened?**

A. After the -- About the time of the incorporation.

**Q. Which would be?**

A. May of -- May 1st of '03. Our incorporation date was -- Actually, the last week of April we

                                                                officially -- The 24th day of April is the date of the incorporation. We officially began doing business on May 1st.

**Q. So you changed the website content relatively quickly?**

A. I believe we did, yes.

**Q. When you have updates to websites that you're responsible for maintaining, do you do them personally?**

MR. FARRELL: Objection.

A. I haven't done any website updates in a couple of years, actually since then. And prior to that, yes, personally, I did it. I did it in -- as a representative of the company, not for any personal reason.

**Q. So if PAC of Hudson no longer exists, why is there still a domain name that is registered with PAC of Hudson -- as PAC of Hudson?**

A. Because it was paid for for an extended period of time and just left up as long as -- It's still there. I can't answer that other than the fact that the registration was paid for in advance.

**Q. Have you renewed the registration of PAC of Hudson since May 1st of 2003?**

A. I don't recall, to tell you the truth. I

really don't.

**Q. And you're currently advertising Wildlife Solutions, Inc. on it?**

A. The company is advertised on it.

**Q. Wildlife Solutions is currently advertised on pacofhudson.com?**

A. That is a website. I don't really know if you'd call it an advertisement. It's a website, more of a statement of our services. It doesn't -- An advertisement would bring in business.

**Q. So, then, why do you have the website at all?**

A. Pretty much for informational purposes for our clientele and for any other Internet users.

**Q. But you don't know exactly when the content was put on it?**

A. Which content?

**Q. The content that's currently on pacofhudson.com.**

A. About the time that the Wildlife Solutions was incorporated, that content was put on there.

**Q. Do you have a date?**

A. I don't have a specific date. I could say a month, May of '03.

**Q. Has that content ever changed on**

**Q. Why was that decision made?**

MR. FARRELL: Objection.

A. I'm not sure how to answer the question.

**Q. Why was the advertising put back onto the pacofhudson.com website after it was taken down?**

MR. FARRELL: Objection.

A. Well, I mean it's -- You know, it's a website. I wouldn't classify it as advertising. Perhaps the answer to that question would be because of -- as a result of false allegations of something. I just don't recall what.

MR. LEETZOW: Mark as Exhibit 3, I believe we're at, a printout of the pacofhudson.com website of March 7th of 2005.

MR. FARRELL: Object to the exhibit.

MR. LEETZOW: On what basis?

MR. FARRELL: Authenticity.

(Exhibit 3 marked
for identification.)

**Q. Mr. Reilly, can you look at Exhibit 3?**

A. Yes.

**Q. Is this a printout from your -- from the website of pacofhudson.com?**

A. It certainly appears to be. It also has the

URL -- the Internet address on the bottom of it. And it is also dated 1/8/2006. This is the content.

**Q. Okay. If you will look at the next-to-the-last page. It says page -- I'm sorry. Page 5 of 7. If you look at the top right-hand corner, it will say page 5 of 7.**

A. Page 5 of 7.

**Q. There's some text in the center. Can you read that for me, please, starting with your name?**

A. "Thomas J. Reilly, PAC of Hudson."

**Q. It says PAC of Hudson. Why does it say PAC of Hudson?**

A. It was never removed.

**Q. And why wasn't it removed?**

A. Couldn't tell you. Typo. That's a typo.

**Q. A typo?**

A. A typo. Yes, a mistake.

**Q. And is that currently on your website today?**

A. Well, this piece of paper is dated 1/8/2006. I would imagine it was printed off the Internet, if all this is true, a couple of days ago.

**Q. Well, this reflects what was there on March 7th of 2005.**

A. I don't know what it reflects. All I know

is --

MR. FARRELL: Objection.

A. -- it's dated 1/8/2006. And that's what it says, yes, it was left on there.

**Q. Is that currently on there today?**

MR. FARRELL: Objection.

A. I don't know.

MR. LEETZOW: I will say right now there are a lot of answers that he doesn't have that clearly fall within the schedule that was given to him as a 30(b)(6), and it appears as though he has not been prepared to answer those questions.

MR. FARRELL: He was prepared to answer the questions. He was given a schedule of documents -- or the schedule of questions.

MR. LEETZOW: Mark this as Exhibit 4.

(Exhibit 4 marked for identification.)

**Q. Do you recognize --**

MR. FARRELL: Objection.

**Q. Do you recognize Exhibit 4?**

A. Yes.

**Q. And what is it?**

A. It is -- It's a piece of paper with some

writing on it.

**Q. What is the image that's printed on that?**

A. The image?

**Q. Yes, the whole thing. What is it? What does it say? Does it appear to be a printout of pacofhudson.com?**

A. Yes, it appears to be a printout of pacofhudson.com, and it has the address, the URL address on the bottom of it. And it has a date on it of 3/10/2005.

**Q. Is this the message that you had referred to earlier in your testimony?**

A. Yes.

**Q. That you had put up?**

A. Yes.

**Q. And why was this put up?**

A. This was put up as a result of pressure from Attorney Leetzow.

**Q. And what was the intent of this?**

A. I don't recall what the intent of this was.

**Q. Did you put it up?**

A. Yes.

**Q. What was the intent of doing it?**

A. I don't recall, honestly. It's a year ago,

the past couple of years, and -- in the past, however long it's been, year and a half, I don't know, and we've never -- neither of us has ever pursued it in writing or anything other than a couple of telephone conversations. I'm not going to be able to recall the actual conversations.

**Q. Did Mr. Fraine give you any advice about using -- give you personally or as a director or officer or representative of Wildlife Massachusetts --**

MR. FARRELL: Objection. Don't answer.

MR. LEETZOW: I'm sorry. What was the objection?

MR. FARRELL: Advice of counsel. You just asked point blank what he advised him to do.

MR. LEETZOW: And he's waived that privilege.

MR. FARRELL: How so?

MR. LEETZOW: Because he's already talked about what he's done with respect to asking questions about -- He's given a subject matter waiver on Wildlife Solutions and the advice received in incorporating and using that mark.

MR. FARRELL: What I'll do is I'll keep the objection, let you keep asking, let the court

resolve the issue whether privilege is waived or not at the time of trial. Go ahead and answer.

A. I don't recall telling you what Mr. Fraine advised me to do.

**Q. Did he say, This is a problem, or anything to that effect?**

A. Don't recall.

**Q. Did he tell you to stop using the name Wildlife Solutions?**

MR. FARRELL: Objection.

A. I don't recall.

**Q. Did he suggest you try to buy the mark from Mr. Walsh?**

MR. FARRELL: Objection.

A. I don't recall.

**Q. Is there any correspondence between you as a director or representative of Wildlife Massachusetts and Mr. Fraine regarding the continued use of Wildlife Solutions after you learned of Mr. Walsh?**

MR. FARRELL: Objection.

THE WITNESS: Should I answer him?

MR. FARRELL: Yes.

A. The letter in the Exhibit 1 indicates that there was correspondence.

**Q. Was there any other correspondence between you and Mr. Fraine except that which you've produced?**

MR. FARRELL: Objection.

A. There was a phone call which we discussed a few moments ago.

**Q. And you don't remember any advice given to you by Mr. Fraine during that conversation?**

MR. FARRELL: Objection.

A. Well, I think I've already answered, to engage him in conversation, so I guess I contradicted myself.

MR. LEETZOW: Could you read back the last answer?

(Record read.)

**Q. I'm sorry. You contradicted yourself on what?**

A. Yes, I've already answered that question yes, he advised me to engage him in conversation, which I did.

**Q. Did he advise you on anything else?**

MR. FARRELL: Objection.

A. I don't recall.

**Q. You said that your e-mails are automatically deleted within about seven days; is that correct?**

A. It's Tommy's turn. That's where it came from. Okay? It's Tommy's turn to prosper, is what the original thought was behind that.

**Q. And what made you want to register this domain name?**

A. A client who designed websites.

**Q. Who would that client be?**

A. His name -- Thomas Kashuba.

**Q. And who is Thomas Kashuba?**

A. He was a gentleman I met one day when I was doing an inspection at his house.

**Q. And you said he's responsible for you trying to register -- or for you registering this website; is that correct?**

A. He offered to design a website for me.

**Q. And when did he do that?**

A. About that same time.

**Q. And did he design the website for you?**

A. Yes.

**Q. The one that's now currently at wildlifesolutions.biz?**

A. Yes.

**Q. Did he offer to register the name for you?**

A. I think he asked me to register it,

and -- Yes, he asked me to register it. And we had a little bit of money left in the Problem Animal Control account, so we put that on the Problem Animal Control credit card as one of the very last things that we did before the company dissolved.

**Q. So you bought wildlifesolutions.biz with Problem Animal Control funds?**

A. Apparently so, yes.

**Q. And you haven't since December of 2003 updated the registrant of this website?**

A. I don't recall.

**Q. Did you look into it?**

A. I don't recall.

**Q. How many e-mail addresses do you personally have?**

A. I don't recall.

**Q. How many e-mail addresses do you have as a representative of Wildlife Solutions Massachusetts?**

A. One.

**Q. And what would that be?**

A. Wildlifesolutions@charter.net.

**Q. On page 2, the administrative contact's e-mail address is tommyzturn@aol.com?**

A. Mm-hmm.

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 14 of 37

Q. Do you get any other mail except for stuff related to this website at that?

MR. FARRELL: Objection.

A. I don't -- I don't get anything pertaining to this.

Q. Is that a valid e-mail address?

A. Yes.

Q. Do you also get e-mail at pacofhudson@aol.com?

A. Yes, I do get e-mail there.

Q. Do you get e-mail that's related to the business of Wildlife Massachusetts at that e-mail address?

A. No.

Q. Have you ever?

A. No.

Q. Take a look at Exhibit 2, at the second page under administrative contact, comma, technical contact. Does that say, "Reilly, comma, Thomas, pacofhudson@aol.com"?

A. Yes.

Q. And is this the correct "who is" for pacofhudson.com --

MR. FARRELL: Objection.

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 15 of 37

**Q. -- to the best of your knowledge?**

A. To the best of my knowledge.

**Q. Any reason to think otherwise?**

A. I can't recall changing the registrant information, as we discussed earlier.

**Q. And you currently advertise -- And Wildlife Solutions, Inc., that's Wildlife Massachusetts, is advertised on this website?**

A. That's where a lot of company information is posted, yes.

**Q. Any other e-mail addresses that you're aware of?**

A. No.

**Q. Any others that you've officially used for Wildlife Solutions of Massachusetts?**

A. Officially?

**Q. Officially.**

A. I don't recall, no.

**Q. Would you have looked?**

A. Define officially.

**Q. Did you put out any correspondence for which you expect a response related to the business of Wildlife Massachusetts?**

MR. FARRELL: Objection.

A. The website forwards e-mail to wildlifesolutions@charter.net, and it carries the domain name, so it says something at pacofhudson.com. So the only place that there would be another e-mail address would be coming off of that website.

**Q. Does somebody maintain the wildlifesolutions.biz website?**

A. Thomas Kashuba.

**Q. He updates the website?**

A. Yes. I don't think he's ever updated the website. I don't think he's ever done anything to it since it was posted.

**Q. Do you know when it was posted?**

A. Yes. I believe it was, as we discussed earlier, about the same time frame that it was registered or sometime thereafter.

**Q. Do you know of a date when the first contact was posted?**

A. No, I don't recall.

**Q. Did you ask?**

A. No, I did not ask.

**Q. Do you know who you would ask?**

A. I would ask Thomas Kashuba to find out.

**Q. Did you ask Mr. Kashuba to find out?**

A. No.

Q. **Did anybody ask you to ask Mr. Kashuba to find out?**

A. No.

Q. **Do you keep copies of website content that's no longer on the web?**

A. No.

Q. **Do you know if anybody does?**

A. No, I don't know that.

Q. **Did you ask anybody?**

A. No, I didn't ask anybody.

Q. **Have you ever changed the content on wildlifesolutions.biz starting from the first day, whatever date that was that you put up the original content?**

MR. FARRELL: Objection. On behalf of Wildlife Massachusetts?

Q. **Either personally or on behalf of Wildlife Massachusetts.**

A. Change the content? Yes -- No, it was never changed. It was taken down for a period of time.

Q. **Wildlifesolutions.biz was taken down?**

A. Yes.

Q. **When?**

A. I don't think so. I hope not. No.

**Q. Would it surprise you that the answer is yes?**

A. Any other websites that I own or maintain? Yes, that would definitely surprise me as -- Yes.

**Q. I think we're at Exhibit 6. How about Massachusetts Goose Management?**

A. Yes. Massachusetts Goose Management, yes.

(Exhibit 6 marked for identification.)

**Q. Did you register the domain name massachusettsgoosemanagement.com?**

A. I don't remember.

**Q. Do you personally consider this to be a part of Wildlife Massachusetts?**

A. I'm not sure how to answer that question.

**Q. Does Wildlife Massachusetts refer to this website at all?**

A. Does Wildlife Massachusetts refer to this website at all? I don't refer people to it, no.

**Q. Does Wildlife Massachusetts get any clients through it?**

A. It hasn't since the thing was registered. Put it up and forgot all about it.

**Q. So that's why on page 6 it would say,**

witness is not prepared for a 30(b)(6) deposition. Your witness is not prepared.

MR. FARRELL: My witness prepared for the deposition. He's here. If he tells you he doesn't recall, he doesn't recall.

MR. LEETZOW: No. You have an affirmative duty under 30(b)(6) to prepare your witness to answer these questions.

A. Had I --

MR. LEETZOW: This will be taken up with the judge.

A. Well, if I had the notes, I would have produced them in discovery. I don't have the notes.

**Q. Well, we sent you a letter, and that wasn't produced, so I'm having a hard time with this.**

**So you wrote notes down during each of these times that you have here; is that correct**

A. Yes.

**Q. And then you transcribed those notes into this meeting -- these meeting minutes?**

A. Yes.

**Q. And then you think you destroyed those notes?**

A. Discarded them.

**Q. Number 3 says during the third week. Do you**

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 20 of 37

**Q. Look at page 44. Read paragraph 1 under narrative. Read it out loud, please.**

A. It says, "During the first week of November, received a letter from Florida attorney Michael Leetzow informing Wildlife Solutions director Thomas Reilly of a federal trademark violation and giving us ten days to halt the use of the name Wildlife Solutions."

**Q. But that's not really what the letter says, is it?**

A. Not exactly, no.

**Q. Document 28, do you remember if you asked if a license would be available for Wildlife Solutions?**

MR. FARRELL: Objection.

A. I do not -- did not ask if a license was available. I remember asking if something could be worked out and I remember a very, very aggressive phone call. That's what I recall.

**Q. Well, what did you plan on doing with -- As a director of Wildlife Solutions, what were you planning on doing in view of the letter of November 2nd from me about responding back to that letter? Did you ever intend to respond to that letter?**

A. Yes.

**Q. Did you have a time frame?**

A. No.

**Q. So whenever you got around to it?**

A. When I, you know, weighed the options and came to a reasonable decision.

**Q. Did you call a lawyer when you got this letter?**

A. Not the first letter, no. I didn't call a lawyer when I got the first letter.

**Q. And then we talked. And then you got the letter of November 17th, pages 28 and 29; is that right?**

A. Is there a question?

**Q. Yes. And then you got the letter of November 17th of 2004?**

A. I received a letter on November 17th of 2004, yes, I did.

**Q. And the very last sentence on page 29 of that says?**

A. The last --

**Q. The very last sentence.**

A. "Please let me know when you will begin this process."

**Q. Yes. Is there any deadline given there, a date certain for which you needed to finish your**

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 22 of 37

I wouldn't have any idea.

**Q. Did you ask anybody?**

A. No, I did not.

**Q. Did you attempt to ask anybody?**

A. No, I did not.

**Q. Have you ever attempted to ask anybody about deleted e-mails?**

A. No.

**Q. Even in preparation for this deposition?**

A. Even in preparation for this deposition.

**Q. I'll take that as a yes?**

A. Okay.

MR. LEETZOW: Mark that as Exhibit 8, I believe.

(Exhibit 8 marked for identification.)

**Q. Who is this letter addressed to?**

MR. FARRELL: Have you ever seen this?

A. I've never seen this.

**Q. Turn to the very last page.**

MR. FARRELL: I'm going to object to the exhibit for authenticity as well.

**Q. Turn to page 8, the last page. Is either the "refuse" or "refused" your handwriting?**

A. Is what?

**Q. One says "refuse" above the return receipt requested, and there's a "refused" over by where it says, "Postage due."**

A. Yes.

**Q. Are either of those your handwriting?**

A. No.

**Q. Is that your correct address?**

A. Yes.

**Q. On the envelope that's copied there?**

A. Yes. This is the correct address, yes.

**Q. Is there any reason to believe that you would not have received this?**

A. I didn't receive this. If you don't believe me, I don't know what else to tell you.

**Q. You would not have told them that you refused this?**

A. I don't recall.

**Q. Would anybody in your company have refused this?**

A. Don't recall.

**Q. Did you ask anybody if they had refused any correspondence or seen any correspondence?**

A. There's nobody to ask if they received

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 24 of 37

anything addressed to me.

**Q. Was there anybody who was employed on about December 10th of 2004 that might have refused this?**

A. I don't know.

(Interruption.)

A. Could you excuse me for a moment?

MR. FARRELL: Off the record.

(Discussion off the record.)

MR. LEETZOW: I'd like the record to reflect that the last break was due to a telephone call received by Mr. Reilly.

**Q. Is there any reason to believe that you would not have -- this was not presented to Wildlife Massachusetts?**

A. There's no reason to believe that.

**Q. But, since you refused it, or it appears as though it was refused, have you seen the contents of this letter?**

A. I am just looking at this letter for the very first time.

**Q. So you don't have any knowledge of what it says?**

A. No, I do not.

MR. LEETZOW: Exhibit 9.

MR. FARRELL: I'll object to this exhibit, the authenticity as well.

(Exhibit 9 marked for identification.)

Q. I'll represent to you this was an e-mail I sent to you on December 21st after having received Exhibit No. 8 back attaching a copy of that letter, the December 10th letter to you. Do you remember receiving this e-mail?

A. No, I do not.

Q. Is there any reason that you would not have received this e-mail?

A. I don't know.

Q. But tom@pacofhudson.com is a valid address for you?

A. Yes.

Q. Could it be that you ignored it because it was from me?

A. No.

Q. Did you in December of 2004 indicate to anybody at -- or any representative of Wildlife Florida that you either in your personal capacity or as a director of Wildlife Massachusetts were going to refuse any further correspondence from or on behalf of

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/17/2006 Page 26 of 37

**Wildlife of Florida?**

A. No, I don't recall any --

MR. FARRELL: Object.

A. I don't recall anything like that. Re -- I'm sorry.

**Q. Did you not call and leave a message and say that you weren't going to take any more phone calls or faxes?**

A. Oh, okay. Yes, I recall after being bombarded during Christmas vacation week by threatening phone calls from Attorney Leetzow, yes, I did call and don't recall what I said because I was rather upset and frustrated at the time. So I don't -- I remember making a -- leaving a -- an angry message of some sort, yes.

**Q. Had you engaged an attorney at that point?**

A. Yes, I did.

**Q. And you asked them to take care of this for you?**

MR. FARRELL: Objection.

A. I don't recall asking them to take care of anything for me, no. I had a consultation --

MR. FARRELL: Stop your answer. Object to any conversations with this attorney.

Q. Does Wildlife Massachusetts have a fax machine?

A. Yes.

Q. What's that fax number?

A. 508-835-6635.

MR. LEETZOW: We're up to 10.

(Exhibit 10 marked for identification.)

Q. Is that the right fax number on the fax cover sheet on the first page of Exhibit 10?

A. This is.

Q. And if this had been sent to you, would you have received it at that number?

A. If it had been sent to me.

Q. And if you'll look at the very last page, on January 19th at 3:39, fax number 508-835-6635, 15 pages was completed, the very first?

A. 1/19/2005, 15 pages.

Q. It says completed?

A. I have -- If that's what it says there, yes. This was never faxed to my office. I never saw this.

Q. But yet it's the right fax number, and the fax confirmation sheet says that it got to you. If it had come in, who would have received this fax?

A. If it came in, I would have received it. I don't know how you managed this, but I never got this, unless it was lost in the memory of the fax machine. Who knows? I never -- I never received that.

**Q. Okay.**

A. January 19th.

**Q. Did you receive a phone call from Mr. Steve DeMoor on or about the third week of January?**

A. I received a phone call from Steve DeMoor. I don't remember when.

**Q. What did Mr. DeMoor ask you?**

A. I don't recall him asking me anything.

**Q. What was your conversation with Mr. DeMoor?**

A. Mr. DeMoor told me that the term "Wildlife Solutions" was his personal property and I could not use it in any way, shape, or form. I couldn't even say the words "wildlife" or "solutions" in the same sentence. That statement I remember distinctly. I don't remember much of the rest of the conversation.

**Q. Did he tell you that they were getting ready to file a complaint?**

A. I don't recall him telling me that, no.

**Q. Did he ask you to change your name?**

A. I remember him complaining about attorneys'

cover it.

**Q. Did you talk to anybody at Brown -- at the insurance company?**

A. Yes.

**Q. What did they say?**

A. They showed me the section that they reiterated that it wasn't covered. I don't recall the substance of the conversation.

(Discussion off the record.)

**Q. Exhibit 12, page 24 to 25, it says, "Defendants' Affirmative Defense Six: On information and belief, plaintiff was not operating in interstate commerce at the time its federal application was filed." Why did you include that as an affirmative defense?**

MR. FARRELL: Objection.

A. You're asking me how an attorney's going to defend the case, and I can't answer you. I'm sorry.

**Q. Do you know of any facts either in your personal capacity or as a director of Wildlife Massachusetts that the plaintiff was not engaged in interstate commerce at the time that their federal application was filed?**

A. Do I know personally? I'd have to review the

answers which haven't been produced yet, the -- Excuse me -- the documents from Wildlife Florida, and I don't think we have them.

**Q. But it says, "Upon information and belief, plaintiff was not operating in interstate commerce at the time its federal application was filed." Do you currently have a basis for that defense?**

MR. FARRELL: Objection.

A. I certainly hope so.

**Q. Does Wildlife Massachusetts have one?**

MR. FARRELL: Objection.

A. Do we currently have a basis for that?

**Q. A basis for putting that in as an affirmative defense.**

A. I, again, can't answer how an attorney's going to defend the case.

**Q. Number 11 on page 5 -- page 25, defendant's --**

A. Page 25?

**Q. Page 25. I'm sorry. I spoke softly. It says, "Defendants' Affirmative Defense 11: Defendant Reilly relied upon the advice of counsel in incorporating Defendant Wildlife Solutions, Inc." Did I read that correctly?**

A. That's what it would indicate.

**Q. And so you're appearing here in response to this deposition notice?**

A. I am appearing in response to this deposition.

MR. LEETZOW: Exhibit 22.

(Exhibit 22 marked for identification.)

**Q. Exhibit 22 is a notice of a Rule 30(b)(6) deposition. And in the second paragraph of that it says, "Wildlife Massachusetts is required to designate consenting persons to testify on its behalf on the subjects listed in the attached Schedule A. Please identify the individual or individuals who will be testifying on behalf of Wildlife Massachusetts prior to January 1, 2006." Would that be you, Mr. Reilly?**

A. Who will be testifying on behalf of Wildlife Massachusetts prior to January 1, 2006?

**Q. Are you the consenting person who's testifying on behalf --**

A. Yes, I am, but I don't recall testifying prior to January 1st.

**Q. No, no. That's just -- Is required to designate prior to January 1st.**

A. I was designated prior to January 1st.

**Q. And on the very last page of that is a Schedule A. Have you ever seen this list before?**

A. No.

**Q. Did you look at any documents or consult anyone with respect to Wildlife Massachusetts' business structure?**

A. When?

**Q. At any time. In preparation for this deposition.**

A. Yes.

**Q. You did?**

A. Yes.

**Q. What did you look at?**

A. Last night we looked at the --

THE WITNESS: Was it 20 or 19, Richard? Which is the one you just handed him, the amended?

**Q. That would be 19 and 20. Those were the ones that he just handed to me.**

A. We reviewed those.

**Q. Did you look for information on the creation, selection, development, modification, earliest use, continued use, searching, clearance, or evaluation of the marks of Wildlife Solutions?**

A. And/or Massachusetts Wildlife Solutions.

**Q. Well, let's start with Wildlife Solutions.**

A. When?

**Q. In preparation for this deposition.**

A. Yes.

**Q. And what did you do?**

A. We -- Not in preparation for this deposition, no.

**Q. With respect to Wildlife Massachusetts Solutions?**

A. We did not create, select, develop, modify, earliest use or continued use or search or anything prior to this for Wildlife Massachusetts.

**Q. Is there anybody at Wildlife Massachusetts that has any information relating to the adoption, use, or application for the registration by Wildlife Massachusetts of the mark Wildlife Solutions?**

A. Anybody who has any information?

**Q. Other than you.**

A. Other than myself? I can't recall who would have any of that information in the company.

**Q. Did you ask anybody if anybody had any --**

A. No.

**Q. -- in preparation for this deposition?**

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 34 of 37

A. As far as the application for registration, no.

Q. Or the adoption or use?

A. No.

Q. Did you investigate Wildlife Massachusetts' advertisements and marketing activities and expenses in preparation for today?

A. No.

Q. Did you attempt to?

A. No.

Q. Did you ask if anybody had information relevant to?

A. No.

Q. How about Massachusetts -- Wildlife Massachusetts' website and other Internet activities?

A. What about them?

Q. Did you consult anybody?

MR. FARRELL: Object.

Q. Say, for example, the first date that you put -- that Wildlife Massachusetts put content on the domain name wildlifesolutions.biz.

A. No.

Q. Did you make any attempt to?

A. No.

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 35 of 37

Q. Would you know who to ask?
A. There wouldn't be anybody to ask.
Q. How about your Internet service provider or the server where your website resides?
A. I would ask them for advice before putting up a website; is that your question?
Q. No. Did you talk to them about the date or when information was put on --
A. No.
Q. -- the website?
A. No.
Q. Did you ask them if they had that information?
A. No.
Q. Did you think about asking them for that information?
A. No.
Q. Are you, Mr. Reilly, the only person who did a search for documents and things in response to Wildlife Florida's discovery request for Wildlife Massachusetts?
A. Am I the only person outside of Attorney --
Q. Are you the only person in --
A. Yes.

after the suit was filed. There it is. Put it back. It's there. Not hiding anything. You had a problem with it, took it off. You sued me for taking it off. I put it back on. At this time I had no advice of counsel.

**Q. When did you take it off?**

A. I don't recall the exact date.

**Q. Did you ask anybody?**

A. No, I did not.

**Q. Did you think to ask anybody?**

A. Yes, I did. I made an appointment with an attorney.

**Q. No, no.**

A. No, I didn't --

**Q. Wrong question. My question was did you ask anybody -- not ask anybody about taking it down. Did you ask anybody about when you took it down?**

A. No.

**Q. Did you think about asking anybody in preparation for today when you took it down?**

A. In preparation for today, no.

MR. LEETZOW: That's all the questions I have for now. I do want to leave the deposition open pending resolution of preparation of the witness to

Case 4:05-cv-10180-FDS Document 33-3 Filed 01/31/2006 Page 37 of 37

answer the questions that have been asked and were not able to be answered. And I will reconvene that deposition -- the deposition at that time.

THE WITNESS: Any objection?

MR. FARRELL: Well, I object to leaving it open, and I object that the witness is not prepared to testify on these matters, as I stated earlier.

(Whereupon the deposition was adjourned at 4:47 p.m.)





Trademark Electronic Search System (TESS) http://tess2.uspto.gov/bin/gate.exe?f=doc&state=95sec8.2.1

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Tue Jan 31 04:13:49 EST 2006*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TARR Status | ASSIGN Status | TDR | TTAB Status ***( Use the "Back" button of the Internet Browser to return to TESS)***

Massachusetts
Wildlife Solutions

| | |
|---|---|
| **Word Mark** | MASSACHUSETTS WILDLIFE SOLUTIONS |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Solutions to wildlife issue's including trapping, repair, exclusion, pest control. FIRST USE: 20041117. FIRST USE IN COMMERCE: 20041117 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Design Search Code** | |
| **Serial Number** | 78518184 |
| **Filing Date** | November 17, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Reilly Thomas J INDIVIDUAL UNITED STATES 16 High St West Boylston MASSACHUSETTS 01583 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "wildlife" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Other Data** | The name(s), portrait(s), and/or signature(s) shown in the mark identifies Thomas Reilly , whose consent(s) to register is submitted. |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

1 of 2 1/31/2006 12:37 PM

4

MICHAEL L. LEETZOW, P.A.
ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE: 407-489-0606 - MOBILE
407-302-9970 - OFFICE
FAX: 407-302-9973
E-MAIL: MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

December 10, 2004

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA 01583-1518

Via Certified Mail
Return Receipt Requested

RE: Unauthorized Use of WILDLIFE SOLUTIONS

Dear Mr. Reilly:

I have not heard from you with respect to my requests for you to stop using my client's federally registered mark and name. Now I have learned that you recently filed a trademark application to register the mark "MASSACHUSETTS WILDLIFE SOLUTIONS." We are truly disappointed to have learned about your application. I was hopeful that you would change your name after my telephone call to you in November. However, you appear to be telling us with this application that you will not stop using my client's mark. This is my final letter requesting that you cease and desist using the mark WILDLIFE SOLUTIONS.

I can only begin to guess as to why you filed your trademark application. Perhaps you were hoping that the U.S. Trademark Office would register your name and you would somehow have a legal argument with respect to my client's request that you cease and desist from using WILDLIFE SOLUTIONS. However, I do not believe that the United States Trademark Office will register your mark. First, your mark incorporates my client's mark, which, as you know, is a federally registered mark. Since your mark will likely cause confusion (and indeed already has) as to the source of services, it will be refused registration by the Examiner in the first Office Action. There are other grounds for refusal and even several technical issues with the application that are also likely to prevent registration. Moreover, it will likely be more than six months before an Examiner will take any action and my client intends to have this matter resolved before that time. Therefore, any intent to rely on your application and any potential registration is misplaced.

As a general matter, the test for determining whether there is trademark infringement. is whether there is a likelihood of confusion between the marks. In applying this test, the courts consider several factors: the strength of the mark; the relatedness of the goods or services at issue; the similarity of the marks at issue; evidence of actual confusion; the

marketing channels used; the likely degree of care exercised by the purchaser; the defendant's intent in selecting the mark; and the likelihood of expansion of the product lines. I will address each of these factors for you.

First, you are using my client's name and are using it in the same channels of trade, for identical as well as closely related services. That use is indefensible as a legal matter, and unacceptable for my client's business as a practical matter.

With respect to evidence of actual confusion, I noted in my last letter that there has been at least one recent instance of actual confusion brought to my client's attention.. Other instances are sure to follow. Therefore, your suggestion that you are in the Northeast and my client is primarily in the Southeast does not assist you. Moreover, my client has intentions of expanding its business to other parts of the country, possibly even to the Northeast. Therefore, the coexistence of the two different companies with the same name for the same services is an impossibility.

As to priority of the marks, my client began use of the name in 1997, long prior to your adoption of the name, and has developed substantial goodwill in and recognition of its name in the industry. In fact, my client spends a significant amount of money every year to advertise its name and services. Under these circumstances, my client cannot allow you to continue your infringing use.

Additionally, you are intentionally infringing my client's mark for at least two reasons. First, my client's federally registered mark provided you with constructive notice of the mark well before your adoption and use of the infringing term. Second, you have not responded to our requests to stop using the federally registered mark and you have filed your own application. Third, I believe that you would have been found my client's website www.wildlifesolutions.com when you were investigating websites, which ultimately resulted in your registration of www.wildlifesolutions.biz in December of last year. That investigation would have revealed that domain names that contained the mark WILDLIFE SOULTIONS were already registered to my client, and a simple visit to the site would have informed you fully and completely about the nature and extent of my client's prior use of the WILDLIFE SOLUTIONS mark and the services to which it was being applied.

If you were not aware, intentional infringement gives rise to presumptions of confusing similarity and secondary meaning, and also is a predicate for recovery of escalated damages and attorneys fees.

We understand that you have already spent some money on updating your www.pacofhudson.com website, advertising, changing your corporate name, etc. However, we believe you did so with complete knowledge of my client's name and activities, and whether you had such knowledge or not, the law is clear that the rights of the senior user, my client, prevail in these circumstances. In my opinion, your conduct constitutes infringement of my client's registered and common law trademark rights in violation of §§ 32 and 43(a) of

Case 4:05-cv-10180-FDS Document 33-5 Filed 01/31/2006 Page 3 of 5

the Lanham Act, and also constitutes statutory and common law unfair competition under the laws of the various state(s) in which your services are offered or sold. Should it prove necessary, my client believes that it would be entitled to a court order requiring you to do the following:

- Immediately halt the advertising, promotion and sale of services under the WILDLIFE SOLUTONS mark or any confusingly similar designation;
- Destroy all inventory of advertising, promotional materials, and other written communications in any form that use or display the infringing mark;
- Remove all images of the infringing mark from any web sites, including those of any third parties subject to your control;
- Provide my client with a full accounting of all sales and profits realized by you under the offending mark, and pay over such profits to my client; and
- Reimburse my client for its costs, expenses and reasonable attorneys fees incurred in pursuing this matter.

You were using a name, PAC of Hudson, that was not an issue with my client's name and registered mark. We do not understand why you cannot return to your previous name and associated goodwill you had built up in that mark. Naturally, you are free to chose another name, but any you choose must bear no similarity to my client's WILDLIFE SOLUTIONS mark. If we can reach agreement on changing your name, my client is prepared to be flexible in terms of waiving claims for damages and attorney fees, and perhaps even providing you with a reasonable period of time to phase out its use of the infringing mark.

If you wish to pursue a resolution on these terms, please contact me by no later than the close of business on December 30, 2004. Should I not hear from you by that date, we will have no choice but to conclude that you intend to continue your intentional infringement of my client's rights, and will take steps accordingly. We sincerely hope that such steps will not be necessary.

Sincerely,

Michael L. Leetzow, Esq.

Cc: Mr. Steve DeMoor,
Wildlife Solutions, Inc.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA 01583-1516

2. Article Number (Transfer from service label): 7004 1160 0004 4905 0065

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

Case 4:05-cv-10 ... 006 Page 5 of 5

Michael L. Leetzow, P.A.
Attorney-at-Law
5213 Shoreline Circle
Sanford, FL 32771

CERTIFIED MAIL

7004 1160 0004 4905 0065

UNITED STATES POSTAL SERVICE

RETURN TO SENDER

01583

U.S. POSTAGE PAID
LAKE MONROE
DEC 10
AMOUNT
$4

- Not Deliverable As Addressed
  Unable To Forward
- Insufficient Address
- Moved, Left No Address
- Unclaimed
- Refused
- Attempted - Not Known
- No Such Street
- Number
- Vacant
- Illegible
- Box Closed - No Order
- Returned For Better Address
- Postage Due

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA 01583-1518

Refused

RETURN RECEIPT REQUESTED

refused

TA 12/11



## Michael L. Leetzow

**From:** Michael L. Leetzow [leetzowm@bellsouth.net]
**Sent:** Tuesday, December 21, 2004 8:43 AM
**To:** 'Tom@PACofHudson.com'
**Subject:** WILDLIFE SOLUTIONS
**Importance:** High

**Tracking:**

| Recipient | Read |
|---|---|
| 'Tom@PACofHudson.com' | |
| 'sdemoor@wildlifesolutions.com' | Read: 12/21/2004 10:15 AM |

Mr. Reilly:

I strongly urge you to read the letter that you refused to accept last week and to show it to an attorney. I have attached it for your convenience. Please call me if you wish to discuss this matter or else my client will have no alternative but to sue you in federal district court to stop you from using WILDLIFE SOLUTIONS. This will be our last correspondence to you before we file suit.

Michael L. Leetzow, P.A.
5213 Shoreline Circle
Sanford, Florida 32771
michael@leetzow.com
(407) 302-9970
(407) 302-9973 Fax
(407) 489-0606 Mobile
www.leetzow.com

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (407-302-9970) or by electronic mail michael@leetzow.com), and delete this message and all copies and backups thereof. Thank you.
==================================================

6

Case 4:05-cv-10180-FDS Document 33-

5243 Shoreline Circle
Sanford, Florida 3277
Phone: 407-489-0606 - Mobile
407-302-9970 - Office
Fax: 407-302-9973
E-mail: michael@leetzow.com

| To: | Mr. Tom Reilly | From: | Michael L. Leetzow |
|---|---|---|---|
| Fax: | 508-835-6635 | Pages: | 15 |
| Phone: | 508-835-6610 | Date: | January 19, 2005 |
| Re: | Wildlife Solutions/Complaint | CC: | |

☑ Urgent ☑ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

● Comments:

Mr. Reilly:

Please see attached letter and complaint for trademark infringement to be filed in US District Court for the District of Massachusetts.

Sincerely,

Michael L. Leetzow

NOTICE: This facsimile message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (407-302-9970) or by electronic mail (michael@leetzow.com), and destroy this facsimile message and all copies thereof. Thank you.

Case 4:05-cv-10180-FDS Document 33-7 Filed 01/31/2006 Page 2 of 3

MICHAEL L. LEETZOW, P.A.
ATTORNEY-AT-LAW

5213 SHORELINE CIRCLE
SANFORD, FLORIDA 32771
PHONE: 407-489-0606 - MOBILE
407-302-9970 - OFFICE
FAX: 407-302-9973
E-MAIL: MICHAEL@LEETZOW.COM

INTELLECTUAL PROPERTY
PATENT PREPARATION
& PROSECUTION
COUNSELING

January 19, 2005

Mr. Thomas J. Reilly
Wildlife Solutions, Inc.
16 High Street
West Boylston, MA 01583-1518

**Via Facsimile**

RE: Unauthorized Use of WILDLIFE SOLUTIONS

Dear Mr. Reilly:

My client has attempted to be reasonable in enforcing its trademark WILDLIFE SOLUTIONS. However, you have refused to open a dialog to establish a timeline as to when you will change your name – if you are willing change it at all. Therefore, as a result of your refusal to communicate a date as to when you would change your name, you have left my client no other options.

I have attached to this letter a complaint that will be filed in Boston, Massachusetts on Friday, January 28, 2005, if you do not inform me in writing by close of business on Thursday, January 27, 2005, that you will cease and desist from using the name Wildlife Solutions. That means you will agree to change your name in all documents, correspondence, web pages, bank accounts, telephone directories, etc. within two months.

If I do not hear from you or your attorney in writing by 5:00 pm next Thursday that you will agree to change your name within two months, this complaint will be filed. If you cause my client to file this complaint, settlement will be more complicated.

Sincerely,

Michael L. Leetzow, Esq.

Attachment: Complaint

Cc: Mr. Steve DeMoor,
Wildlife Solutions, Inc.

Case 4:05-cv-10180-FDS Document 33-7 Filed 01/31/2006 Page 3 of 3

HEWLETT® PACKARD **hp officejet series**

Page 1
Wedn ay, January 19, 2005 3:49:15 PM

***Sent***

| Date | Duration | Name | Fax Number | Pages | Status |
|---|---|---|---|---|---|
| 1/19/2005 3:39 PM | 8:27 | | 15088356635 | 15 | Completed |
| 1/10/2005 10:45 AM | 1:54 | | 17038729306 | 5 | Completed |
| 1/6/2005 10:42 AM | 1:09 | | 17037464000 | 3 | Completed |
| 12/27/2004 10:08 AM | 1:14 | | 17037464000 | 3 | Completed |
| 12/9/2004 12:03 PM | 1:11 | | 13866716069 | 3 | Completed |
| 12/3/2004 3:08 PM | 0:37 | | 4073211344 | 2 | Completed |



# Wildlife Solutions Inc.



**Welcome to Wildlife Solutions Inc.**
**formerly known as Problem Animal Control or PAC of Hudson**
**We are a licensed and insured Wildlife Management Service**
**Proudly serving Metrowest and Central Massachusetts communities.**


**Thanks to an eccentric little man in a land far away, this site will be under construction for a brief time**
**We will be back soon,**
**Bigger better and stronger than ever( dont you just hate lawyers!)**


      "Buy traps,trap supplies,trapping supplies,live traps,buy live traps,buy
safegaurd traps,squirrel traps,raccoon traps,beaver traps,moles,mole control,mole traps,mole
trapping,Bats, bat control, bat trapping, squirrel, squirrel control, squirrel trapping, beaver,
beaver control, beaver trapping, flow control, skunk, skunk control, skunk trapping, pest control,
intergrated pest managment, animal, animal control, animal trapping, raccoon, animals, wildlife,
animals, animal, animal damage, professional trapping, professional trapping solutions, animal
rights, animal information,Wildlife damage control, wildlife damage, source for animal damage
control, trapping, wildlife, nuisance wildlife, animal damage,information resource, animal
information, wildlife information, urban wildlife, raccoon trapping, raccoon control, mole, mole
control, mole trapping, fox, coyote, deer, geese, opossum, opossum trapping, opossum control,
muskrat, muskrat trapping, muskrat control ,bird control, bird managment, trap, live trap,
Massachusetts animal control, Massachusetts animal trapping, Eastern Massachusetts animal,
Metro west Massachusetts animal,pigeon,sparrow,starling, livetrap,problem amimal control,
problem animal, pest animal, wildlife, nuisence wildlife, problem wildlife,Animal repellent,animal
trap



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE SOLUTIONS, INC., a Florida Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. REILLY<br><br>and<br><br>WILDLIFE SOLUTIONS, INC., a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 1:05-cv-10180-FDS |

**NOTICE OF RULE 30(b)(6) DEPOSITION**

Please take notice that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff Wildlife Solutions, Inc. of Florida ("Wildlife Florida") will take the deposition of Defendant Wildlife Solutions, Inc. of Massachusetts ("Wildlife Massachusetts") on Wednesday, January 18, 2005 at 9am at Wolf, Greenfield & Sacks, P.C., 600 Atlantic Ave., Boston, MA 02210. The deposition will be recorded by stenographic means.

Pursuant to Fed. R. Civ. P. 30(b)(6), Wildlife Massachusetts is required to designate consenting persons to testify on its behalf on the subjects listed in the attached Schedule A. Please identify the individual or individuals who will be testifying on behalf of Wildlife Massachusetts prior to January 1, 2006.

Case 4:05-cv-10180-FDS Document 33-9 Filed 01/31/2006 Page 2 of 3

Dated: December 16, 2005

By: [signature]

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
Wolf, Greenfield & Sacks, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: 617-646-8000
Fax: 617-646-8646

Of Counsel

Michael Leetzow (admitted *pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for Defendants by mail and email to:

Mr. Richard J. Farrell, Jr.
Farrell Law
197M Boston Post Road
West 177
Marlborough, MA 01752

December 16, 2005

[signature]
Adam J. Kessel

**SCHEDULE A**

1. Wildlife Massachusetts' business structure.

2. The creation, selection, development, modification, earliest use, continued use, searching, clearance, or evaluation of the marks WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.

3. The adoption, use, and/or application for registration by Wildlife Massachusetts of the marks WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS, including federal and state registrations.

4. Any dispute, opposition, inter partes proceeding, or litigation involving the marks WILDLIFE SOLUTIONS and/or MASSACHUSETTS WILDLIFE SOLUTIONS.

5. Wildlife Massachusetts' knowledge of Wildlife Florida and Wildlife Florida's marks.

6. Wildlife Massachusetts' sales, profits, costs, and pricing structure.

7. Wildlife Massachusetts' advertisements and marketing activities and expenses.

8. Any potential or actual confusion between the marks or services of Wildlife Massachusetts on the one hand and those of Wildlife Florida on the other, and/or vice-versa.

9. The channels of trade for Wildlife Massachusetts' goods and services.

10. The classes of purchasers of Wildlife Massachusetts' goods and services.

11. Wildlife Massachusetts' website and other Internet activities.

12. Wildlife Massachusetts' search for documents and things in response to Wildlife Florida's discovery requests.

13. Wildlife Massachusetts' document retention policies.

14. Wildlife Massachusetts' dispute with Thomas J. Frain, Esq.

15. The relationship between Wildlife Massachusetts and PAC of Hudson and/or Problem Animal Control of Hudson.

16. The factual basis for each of the Affirmative Defenses in Defendants' Amended Answer.

17. The geographic scope of services provided or likely to be provided by Wildlife Massachusetts.



# Problem Animal Control of Hudson

**Welcome toProblem Animal Control-**
**Serving Hudson Mass, Fitchburg, Leominster and surrounding Communities.**
**We are a licensed and insured wildlife removal service**
**offering live trapping and alternative solutions for your animal problems.**

***About Us***

**As our business contunues to grow along with the continuing issue of urban sprawl**
**The nonexistence of furbearer trapping in our state causes a continuing need to coexist with wildlife,**
**We at Problem Animal Control continue to work with state and local agencies to provide not only immediate but also long term and non lethal means of controlling our non- human neighbors using integrated management solutions.**

**These include cultural, physical and simple common sense solutions.**

**We offer the following services**

***Live trapping***

***Beaver control***

***Canada goose control***

***Bat control***

***Chimney covers***

**We offer *Bat and Bird* population management**

**We Provide solutions for all urban wildlife and we are an information resource for animal damage control *Squirrel, Skunk, Raccoon, groundhog/woodchuck, Opossum,fox, coyote, flying squirrels, geese starlings sparrows, beaver,bats muskrat and others***

***Chimney repairs, flu caps tree pruning services and odor removal***

***Due to the fact that Animal control in our state is HIGHLY REGULATED
And covered by many sections of Mass General Law chapter 131
And by the Mass Code of Regulations Title 321
And with the amount of disease related to wildlife
The liability of a homeowner who willingly hires someone who is
Not licensed or insured to practice Problem Animal Control would be unquestioned.
You certainly would not hire an unlicensed Electrician-
Or a painter who carried no insurance for his workers.***

***Please keep in mind only individuals are licensed
not companies, insist on seeing a persons Animal control permit!***

***And be aware that is unlawful for you to transport wildlife in many states
including Massachusetts
You must in fact liberate or destroy the animal on site.***

***We at PAC of Hudson take these laws very seriously.
We will remove trapped animals for you
and offer only humane treatment.
Please take a moment and wade through some of the laws,
codes and disease related to this industry***

***We are also capable of performing repairs to structures caused by Problem animals, having associates in all aspects of the building trades***

***We also understand that there are certain Animals protected by Federal law And we offer solutions for the needs of land owners: suffering damage from resident and migratory Geese,***

***farmers and homeowners suffering Damage to property, loss of crops and livestock to whitetail deer, beaver or coyotes***

**Thomas J Reilly**
**PAC of Hudson**
**1-800-887-7656**

***Is a member of***



**National Trappers Association**

Bat Conservation International

ASSABET VALLEY
CHAMBER OF COMMERCE

Web-Stat hit counter

**"Buy traps,trap supplies,trapping supplies,live traps,buy live traps,buy safegaurd traps,squirrel traps,raccoon traps,beaver traps,moles,mole control,mole traps,mole trapping,Bats, bat control, bat trapping, squirrel, squirrel control, squirrel trapping, beaver, beaver control, beaver trapping, flow control, skunk, skunk control, skunk trapping, pest control, intergrated pest managment, animal, animal control, animal trapping, raccoon, animals, wildlife, animals, animal, animal damage, professional trapping, professional trapping solutions, animal rights, animal information,Wildlife damage control, wildlife damage, source for animal damage control, trapping, wildlife, nuisance wildlife, animal damage,information resource, animal information, wildlife information, urban wildlife, raccoon trapping, raccoon control, mole, mole control, mole trapping, fox, coyote, deer, geese, opossum, opossum trapping, opossum control, muskrat, muskrat trapping, muskrat control ,bird control, bird managment, trap, live trap, Massachusetts animal control, Massachusetts animal trapping, Eastern Massachusetts animal, Metro west Massachusetts animal,pigeon,sparrow,starling, livetrap,problem amimal control, problem animal, pest animal, wildlife, nuisence wildlife, problem wildlife,Animal repellent,animal trap**

# Wildlife Solutions Inc.

**Welcome toWildlife Solutions Inc.**
**formerly known as Problem Animal Control or PAC of Hudson**
**We are a licensed and insured Wildlife Management Service**
**Proudly serving Metrowest and Central Massachusetts communities.**

***About Us***

**As urban sprawl continues its march through Massachusetts woodlots**
**The need for wildlife management service for the general public is at an all time high**
**The nonexistence of furbearer trapping in our state causes a continuing need to coexist with wildlife**
**The trained staff at Wildlife solutions inc.continue's to work with state and local agencies to provide not only immediate but also long term and non lethal means of controlling our non- human neighbors using integrated management solutions.**

**These include cultural, physical and simple common sense solutions.**



**We chose the name Wildlife "Solutions" for a reason**
**Our company mission is not just to come and simply trap wildlife**
**We feel that it is far more important to address the reasons behind the human wildlife conflict and put them to rest**
**We also feel that we owe it to our wild neighbors to make all efforts to assure the situation does not arise again**

**Therefore we have chosen to offer the following services and solutions**
***Live trapping***

***Beaver control***

***Canada goose control***

***Bat control***

***Chimney covers***

**We offer *Bat and Bird* population management**

**We Provide solutions for all urban wildlife and we are an information resource for animal damage control *Squirrel, Skunk, Raccoon, groundhog/woodchuck, Opossum,fox, coyote, flying squirrels, geese starlings sparrows, beaver,bats muskrat and others***

***Chimney repairs, flu caps tree pruning services and odor removal***

*Due to the fact that Animal control in our state is HIGHLY REGULATED
And covered by many sections of Mass General Law chapter 131
And by the Mass Code of Regulations Title 321
And with the amount of disease related to wildlife
The liability of a homeowner who willingly hires someone who is
Not licensed or insured to practice Problem Animal Control would be unquestioned.
You certainly would not hire an unlicensed Electrician-
Or a painter who carried no insurance for his workers.*

*Please keep in mind only individuals are licensed
not companies, insist on seeing a persons Animal control permit!*

*And be aware that is unlawful for you to transport wildlife in many states
including Massachusetts
You must in fact liberate or destroy the animal on site.*

*We at PAC of Hudson take these laws very seriously.
We will remove trapped animals for you
and offer only humane treatment.
Please take a moment and wade through some of the laws,
codes and disease related to this industry
Laws*

*We are also capable of performing repairs to structures caused by
Problem animals, having associates in all aspects of the building trades*

***We also understand that there are certain Animals protected by Federal law And we offer solutions for the needs of land owners: suffering damage from resident and migratory Geese,***

***farmers and homeowners suffering Damage to property, loss of crops and livestock to whitetail deer, beaver or coyotes***

**Thomas J Reilly**
**PAC of Hudson**
**1-800-887-7656**

***Is a member of***

**National Trappers Association**



Wildlife Solutions Inc.                                    http://web.archive.org/web/20040122163708/http://pacofhudson.com/



## Bat Conservation International



# ASSABET VALLEY
## CHAMBER OF COMMERCE

Bridging the communities of
Berlin, Bolton, Hudson, Maynard & Stow

Web-Stat hit counter

"Buy traps,trap supplies,trapping supplies,live traps,buy live traps,buy safegaurd traps,squirrel traps,raccoon traps,beaver traps,moles,mole control,mole traps,mole trapping,Bats, bat control, bat trapping, squirrel, squirrel control, squirrel trapping, beaver, beaver control, beaver trapping, flow control, skunk, skunk control, skunk trapping, pest control, intergrated pest managment, animal, animal control, animal trapping, raccoon, animals, wildlife, animals, animal, animal damage, professional trapping, professional trapping solutions, animal rights, animal information,Wildlife damage control, wildlife damage, source for animal damage control, trapping, wildlife, nuisance wildlife, animal damage,information resource, animal information, wildlife information, urban wildlife, raccoon trapping, raccoon control, mole, mole control, mole trapping, fox, coyote, deer, geese, opossum, opossum trapping, opossum control, muskrat, muskrat trapping, muskrat control ,bird control, bird managment, trap, live trap, Massachusetts animal control, Massachusetts animal trapping, Eastern Massachusetts animal, Metro west Massachusetts animal,pigeon,sparrow,starling, livetrap,problem amimal control, problem animal, pest animal, wildlife, nuisence wildlife, problem wildlife,Animal repellent,animal trap