IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE SOLUTIONS, INC., <br>   a Florida Corporation, <br><br>        Plaintiff, <br><br> v. <br><br> THOMAS J. REILLY <br><br> and <br><br> WILDLIFE SOLUTIONS, INC., <br>    a Massachusetts Corporation, <br><br>        Defendants. | Civil Action No. 1:05-cv-10180-FDS |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
WILDLIFE MASSACHUSETTS TO PRODUCE A WITNESS
PURSUANT TO FED. R. CIV. P. 30(b)(6) AND FOR SANCTIONS**

Pursuant to this Court's Scheduling Order (D.I. 14 at 3), Plaintiff Wildlife Solutions, Inc. of Florida ("Wildlife Florida") respectfully submits this Reply Brief in support of its Motion to Compel (D.I. 31-33). This Reply addresses the most salient omissions and misstatements in the Opposition brief filed by Defendant Wildlife Solutions, Inc. of Massachusetts ("Wildlife Massachusetts") (D.I. 40).

**Defendants' Continued Failure to Fulfill Their Discovery Obligations**

First, Wildlife Massachusetts continues to withhold documents that are relevant, responsive to Wildlife Florida's requests, and discoverable. For example, Wildlife Massachusetts currently has documents that still have not been produced, despite the fact that counsel for Defendants indicated that they had such documents on January 17, 2006 at their

deposition. 1/17/06 Reilly Tr. at 123, Lines 9-12 (Ex. A).[1]  Although more than a month has passed since that deposition and fact discovery closed three weeks ago, Defendants still have not produced the documents they admitted they had at that time.

Second, Wildlife Massachusetts refuses to produce certain documents despite having no legal basis to do so.  Wildlife Massachusetts states that it "continues to object to a request for customer lists, maintains that it has no obligation to provide customer lists to its competition, and does not have other documentation relevant to 'classes of consumers.'"  (Opp. at 10.)  Wildlife Massachusetts thus admits that (1) it has documents relating to its customer lists and (2) those documents are responsive to Wildlife Florida's discovery requests directed to the "classes of consumers" for Defendants' services, and are thus relevant to this litigation, see Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987), yet Wildlife Massachusetts fails to cite any authority for the proposition that "it has no obligation" to produce responsive, non-privileged, relevant materials.  Defendants' purported concern about the confidentiality of its customer lists was never raised as an objection in its response to Wildlife Florida's discovery requests (Ex. B at 8), and thus any such objection is waived.  E.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required [to respond to the requests] constitutes a waiver of any objection.")  In any event, such concerns are easily overcome by the Court's Protective Order (D.I. 18), which provides that documents containing confidential business information may be designated as "Confidential" or "Confidential – Attorneys Only" as appropriate.  Defendants should be ordered to produce their customer lists and related documents

---

[1] All Exhibits refer to the attached Reply Declaration of Adam J. Kessel unless otherwise indicated.

immediately and should be sanctioned for their baseless refusal to produce such documents earlier.

Third, Wildlife Massachusetts' attempt to excuse its lack of preparation for its 30(b)(6) deposition is without merit. Wildlife Massachusetts admits, *sub silentio*, that its designated witness had not even <u>reviewed</u> the list of topics for the deposition. Contrary to Wildlife Massachusetts' assertions of vagueness, Wildlife Florida had made perfectly clear in prior correspondence what sort of preparation was required for Wildlife Massachusetts to adequately fulfill its obligations under Fed. R. Civ. P. 30(b)(6). <u>Alexander v. FBI</u>, 186 F.R.D. 137, 140 (D.D.C. 1998) (finding designation in notice of deposition sufficient where parties were "well aware of the discoverable issues" in the case). In any event, Defendants did not object to Wildlife Florida's Notice of Deposition, and thus have waived any such objections.

Even if Defendants had believed the scope of the 30(b)(6) deposition was unclear, their recourse was to request further guidance on the topics or, if that failed, to seek a protective order pursuant to Fed. R. Civ. P. 26(c), <u>not</u> to send an unprepared witness to the deposition and waste Wildlife Florida's time and money, including the cost to Wildlife Florida of having its counsel fly to Massachusetts and stay overnight in preparation for the deposition. <u>See</u> <u>Commodity Futures Trading Comm'n v. Noble Metals Int.'l, Inc.</u>, 67 F.3d 766, 771 (9th Cir. 1995). Further, Wildlife Massachusetts admits that much of the information sought was in the possession of one of their agents (Opp. at 9-10), Thomas Kashuba, who was not even consulted in preparation for the 30(b)(6) deposition.[2]

---

[2] Prior to Defendants' depositions, they had never even identified Thomas Kashuba, who is apparently the most knowledgeable individual under Defendants' control about Defendants' Internet activities, despite Wildlife Florida's numerous discovery requests (and the schedule of topics for the deposition) directed to those activities. In serving its notice of deposition and list of topics, Wildlife Florida fulfilled its discovery responsibilities. Wildlife

*continued…*

Finally, there are deficiencies in Defendants' document production other than those discussed in its Opposition. In addition to those documents that Defendants claim they no longer have, Wildlife Florida also sent a FAX to Defendants on January 19, 2005, asking for a date certain by which Defendants were to going to change their name. Wildlife Massachusetts also admits in its Opposition that it has not maintained other evidence that is relevant to the litigation, further giving reason to Wildlife Florida to question what other evidence has been destroyed since the Complaint was filed in this litigation.[3]

**Defendants' Unsupported and Irrelevant Claims**

Defendants make numerous unsupported claims that are irrelevant to the merits of this discovery motion. Wildlife Florida will address some of these claims briefly to set the record straight.

Defendants make the puzzling assertion that "[t]his case was filed before the corporation was able to change its corporate name…" (Opp. at 1.) As discussed in its Memorandum in Support of its Motion to Compel (D.I. 32 at 3-4), Wildlife Florida gave Defendants numerous opportunities over a three month period to commit to ceasing their infringing activity, but ultimately Defendants refused to answer Wildlife Florida's phone calls or accept its mailed correspondence, thus leaving Wildlife Florida with no choice but to file this suit. Defendants were, of course, free to cease their infringement of Wildlife Florida's mark <u>after</u> this suit was filed as well, but instead have chosen to continue their willful infringement.

---

Massachusetts could have designated and produced Mr. Kashuba for its 30(b)(6) deposition if he was the most appropriate witness for some of the noticed topics.

[3] Defendants admit (Opp. at 9 n. 10) that they have not kept copies of old websites posted by Defendants or their contractors, several of which were changed multiple times since this action was initiated. In fact, just last week Defendants updated the website at http://www.pacofhudson.com to include an additional use of Wildlife Florida's WILDLIFE SOLUTIONS mark but have not updated their discovery responses or otherwise acknowledged this additional use of Wildlife Florida's mark.

Defendants also state that "[i]t is nearly impossible to discern from the plaintiff's pleadings and arguments what their claim against Mr. Reilly personally is." (Opp. at 1.) In its interrogatory responses, Wildlife Florida made the basis for its claims against Mr. Reilly quite clear. (Ex. C at 4-5.) Namely, Mr. Reilly submitted a sworn declaration to the Trademark Office, punishable under pain of perjury, that he had used the mark MASSACHUSETTS WILDLIFE SOLUTIONS in commerce as an individual. (See D.I. 33 Ex. 3.) He also registered (as an individual) the domain name wildlifesolutions.biz as well as other domains associated with his business. Wildlife Florida has never suggested that "pierc[ing] the corporate veil" is necessary to establish personal liability on the part of Mr. Reilly as there is abundant evidence of direct trademark infringement on his part.

Defendants' attempt to argue the merits of this case by asserting that the mark WILDLIFE SOLUTIONS is "not distinctive and not proper for trademark protection" (Opp. at 11) is both improper and wrong as a matter of law. Courts categorize trademarks in four classes, in increasing order of distinctiveness and strength: (a) generic; (b) descriptive; (c) suggestive; and (d) arbitrary. I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 39 (1st Cir. 1998). Wildlife Florida's mark WILDLIFE SOLUTIONS is a suggestive mark because it "suggests rather than describes" the services provided.[4] Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 934 (4th Cir. 1995). The Trademark Office agreed that the mark was suggestive, registering the mark without requiring a showing that it had achieved "secondary

---

[4] Even if Defendants' characterization of the mark as descriptive were accurate — which it is not — WILDLIFE SOLUTIONS is certainly a protectable trademark because it has acquired substantial secondary meaning, and thus trademark strength. Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 954 (7th Cir. 1992) (noting "the well-established doctrine that a descriptive term is protectable as a trademark to the extent it has developed secondary meaning"). Wildlife Florida has used the mark in connection with its services at least since 1997. This is more than enough time to establish a strong mark. See Equine Technologies, Inc. v. Equitechnology, Inc., 68 F.3d 542, 547 (1st Cir. 1995) (finding a mark strong after four years of use).

meaning" in the minds of consumers – a necessary showing for registration of a mark that is merely descriptive. See D.I. 1 Ex. A (WILDLIFE SOLUTIONS trademark registration certificates lack the notation "2(f)"); Lone Star, 43 F.3d at 936 & n.15 (lack of notation "2(f)" on registration certificate establishes that the Trademark Office did not require a showing of secondary meaning for registration, and hence that the Trademark Office regarded the mark as suggestive rather than descriptive). See also Equine Technologies, Inc., 68 F.3d at 547 (registration by Trademark Office indicative of strong mark).  A mark which is suggestive is among the most strongly protected by trademark law. Id. at 544.

The length of use of this mark by Wildlife Florida further evidences its strength. Wildlife Florida has been using the mark continuously for nearly nine years. See Equine, 68 F.3d at 547 (finding a mark strong after four years of use). Wildlife Florida's document production demonstrates that its mark is well known in the industry, and widely recognized by consumers. See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989) ("relative renown in its field" adds to a trademark's strength). Further evidence of the strength of the mark comes from the fact that Wildlife Florida has substantial interstate sales in connection with the mark, and spends hundreds of thousands of dollars every year in advertising nationwide to generate and protect its goodwill. See Keds, 888 F.2d at 222 (extensive advertising is evidence of a strong mark).

Accordingly, Defendants' assertion that Wildlife Florida's mark is "not proper for trademark protection" flies in the face of well established trademark law.

**Conclusion**

Wildlife Florida is not requesting relief from this Court to complicate or prolong this litigation. To the contrary, Wildlife Florida has attempted to resolve these discovery issues

without involving the Court and to bring this matter to a close as quickly as possible. It filed its discovery requests as soon as it was possible under the Scheduling Order and has provided timely responses to Defendants' discovery requests. It is the Defendants that have continually failed to update their document responses and interrogatory requests in a timely fashion. Wildlife Florida intends to resolve this case as quickly as possible so that it may recover the goodwill it has lost in its federally registered mark due to Defendants' infringement. The Court should grant Wildlife Florida's motions to compel and deny Defendants' untimely motions to delay the merits of this case.

          WILDLIFE SOLUTIONS, INC.

          By its attorneys,

Dated: February 21, 2006

          /s/ Adam J. Kessel
          Michael A. Albert, BBO # 558566
          malbert@wolfgreenfield.com
          Adam J. Kessel, BBO # 661211
          akessel@wolfgreenfield.com
          WOLF, GREENFIELD & SACKS, P.C.
          600 Atlantic Avenue
          Boston, Massachusetts 02210
          (617) 646.8000 Phone
          (617) 646.8646 FAX

          Of Counsel

          Michael L. Leetzow, Esq. (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

    I hereby certify that this document and its supporting papers filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Adam J. Kessel
Adam J. Kessel
